TIGERS EYE TRADING, LLC, SENTINEL ADVISORS, LLC, TAX MATTERS PARTNER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14510–05.    Filed February 13, 2012.

The stipulated decision in this Son of BOSS TEFRA partnership-level case, entered by the Court Dec. 1, 2009, was agreed to by R and the tax matters partner (TMP) of Tigers Eye Trading, LLC (Tigers Eye), with concurrence of participating partner (P), a partner other than TMP. The first decision paragraph specifies that the partnership items of ordinary loss, other deductions, distributions of property, and capital contributions were reduced to zero as determined in the notice of final partnership administrative adjustment (FPAA) issued to Tigers Eye. The second decision paragraph, determining that the FPAA is correct, includes the determinations that Tigers Eye is disregarded for Federal income tax purposes, outside basis is reduced to zero, and a 40% penalty applies to any gross valuation/basis misstatement. The third and fourth decision paragraphs respectively determine that the 40% gross valuation misstatement penalty under I.R.C. sec. 6662(b)(3), (e), and (h) applies to any underpayment of tax attributable to overstating the capital contributions claimed to have been made to the purported partnership and a 20% penalty for negligence or substantial underpayment under I.R.C. sec. 6662 applies to any additional underpayment of tax attributable to the partnership item adjust-

ments other than the claimed capital contributions. On Jan. 12, 2010, the Court of Appeals for the D.C. Circuit, to which this case would be appealable, issued *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649 (D.C. Cir. 2010) (*Petaluma II*), *aff'g in part, rev'g in part and remanding* 131 T.C. 84 (2009) (*Petaluma I*). In *Petaluma II* the Court of Appeals for the D.C. Circuit held that outside basis is not a partnership item that the Tax Court had jurisdiction to determine in the partnership-level proceeding and remanded the case on the applicability of penalties. On Jan. 19, 2010, P filed a motion for leave to file a motion to revise the stipulated decision and lodged the motion to revise. On Dec. 30, 2010, the Court granted the motion for leave nunc pro tunc as of Jan. 19, 2010, and as of that date filed the motion to revise. In the motion to revise P asks the Court to revise the stipulated decision to conform to the jurisdictional limits on the authority of the Tax Court established in *Petaluma II*. On Dec. 15, 2010, this Court issued *Petaluma FX Partners, LLC v. Commissioner*, 135 T.C. 581 (2010) (*Petaluma III*), on appeal (D.C. Cir. Mar. 8, 2011), holding that for this Court to have jurisdiction over a penalty at the partnership level, *Petaluma II* requires that the penalty be computable without partner-level proceedings to determine affected items, leading at least potentially to only a computational adjustment to the partners' returns. *Id.* at 586–587. After *Petaluma II* and *Petaluma III* were issued, the Supreme Court issued *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. \_\_\_\_, 131 S. Ct. 704 (2011). In *Mayo Found.*, the Supreme Court made clear that courts must defer to regulations that interpret the Internal Revenue Code unless they fail to meet the two-step standard of *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–843 (1984). In the recently issued opinion in *Intermountain Ins. Serv. of Vail, LLC v. Commissioner*, 650 F.3d 691 (D.C. Cir. 2011), *rev'g and remanding* 134 T.C. 211 (2010), *supplementing* T.C. Memo. 2009–195, the Court of Appeals for the D.C. Circuit held that, prior caselaw to the contrary notwithstanding, the Tax Court must defer to a regulation unless it holds the regulation invalid under *Chevron*. *Held*: The motion to revise the stipulated decision will be denied; the jurisdictional limitations established in *Petaluma II* were based on a concession by the Government that does not apply in the case at hand; the applicability of the accuracy-related penalties determined by the stipulated decision in the case at hand is sustained by the decision's adoption of adjustments to partnership items that are related to said penalties. *Held*, *further*, because Tigers Eye filed a partnership return for 1999, the TEFRA procedures apply with respect to 1999 to Tigers Eye and its items and to TMP, P, and other persons holding an interest in

Tigers Eye, and the Tax Court has jurisdiction to determine that Tigers Eye does not exist and is not a partnership for Federal income tax purposes. *See* I.R.C. sec. 6233; sec. 301.6233–1T(a), (c), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6779, 6795 (Mar. 5, 1987). *Held*, *further*, because Tigers Eye does not exist and is not a partnership for Federal income tax purposes, the Court has jurisdiction to make determinations with respect to all items of Tigers Eye that would be partnership items, as defined in I.R.C. sec. 6231(a)(3) and sec. 301.6231(a)(3)–1, Proced. & Admin. Regs., if Tigers Eye had been a partnership, including the nature and character of those items. *See* I.R.C. sec. 6233; sec. 301.6233–1T(a), (c), Temporary Proced. & Admin. Regs., *supra*. *Held*, *further*, because Tigers Eye is disregarded for Federal income tax purposes, it acted as a nominee and agent for P and others who participated in the transactions at issue and Tigers Eye's items are of that nature and character. *Held*, *further*, the determination that Tigers Eye is disregarded as a partnership for Federal income tax purposes serves as a basis for a computational adjustment reflecting the disallowance of any loss or credit claimed by P or any other purported partner with respect to Tigers Eye, and the Court has jurisdiction to determine that all items of Tigers Eye that purported to be partnership items are adjusted to zero. *See* I.R.C. sec. 6233; sec. 301.6233–1T(a), Temporary Proced. & Admin. Regs., *supra*. *Held*, *further*, items of Tigers Eye that are necessary for maintaining its books and records as nominee-agent acting on behalf of the purported partners and providing information to them are entity/partnership items that the Court has jurisdiction to decide in this partnership/entity-level proceeding. *See* sec. 301.6231(a)(3)–1(a)(4), Proced. & Admin. Regs. *Held*, *further*, because Tigers Eye conducted the transactions as nominee-agent for P, P's basis in the distributed property is Tigers Eye's cost basis in the property, which P concedes is the amount of the distributions shown on the Schedule K–1, Partner's Share of Income, Credits, Deductions, etc., Tigers Eye issued to P; Tigers Eye's cost basis in the distributed property is an entity/partnership item that this Court has jurisdiction to decide in this proceeding. *See* sec. 301.6231(a)(3)–1(a)(4), (c)(3)(iii), Proced. & Admin. Regs. *Held*, *further*, in accordance with *Mayo Found.* and *Intermountain*, we must apply the TEFRA regulations that satisfy the *Chevron* standard and are not bound to follow a contrary holding of *Petaluma II* to the extent those regulations were not specifically considered and applied by the Court of Appeals in deciding the issue. *Held*, *further*, *Petaluma II* notwithstanding, outside basis is an entity/partnership item related to contributions and distributions that Tigers Eye needed to determine for purposes of maintaining its books and

records and providing information to its purported partners that the Court has jurisdiction to decide in the partnership/entity-level proceeding. *See* sec. 301.6231(a)(3)–1(a)(4), Proced. & Admin. Regs. *Held*, *further*, sec. 301.6231(a)(3)–1(a)(4), Proced. & Admin. Regs., is valid under the two-step *Chevron* standard. *Held*, *further*, the ordinary loss and other deductions reduced to zero by the first decision paragraph flowed directly through to the purported partners' returns, and R may compute and assess the deficiencies related to the adjustments of those partnership items to zero without issuing a statutory notice of deficiency; under *Petaluma II*, this Court has jurisdiction in this partnership-level proceeding to determine applicability of penalties to the underpayments of tax resulting from the adjustments to zero of the ordinary loss and other deductions that flowed directly through to the purported partners' individual returns. *Held*, *further*, the adjustment of the ordinary loss to zero is attributable to overstating the capital contributions claimed to have been made to the purported partnership; pursuant to the stipulated decision the 40% gross valuation misstatement penalty and the 20% negligence penalty apply respectively to the underpayments of tax resulting from the adjustments of the loss and other deductions to zero. *Held*, *further*, the overstatement of the purported partners' bases in the distributed property is attributable to claiming that capital contributions were made to the purported partnership; the underpayment of tax resulting from the overstatement of basis in the distributed property (distributed property loss deficiency) is attributable to the reduction to zero of capital contributions claimed to have been made to the purported partnership that is disregarded for Federal income tax purposes; this Court has jurisdiction in this partnership-level proceeding to determine in the stipulated decision that the 40% gross basis misstatement penalty applies to the distributed property loss deficiency. *Held*, *further*, there will be a gross misstatement of basis in the distributed property if the misstatement exceeds four times the amount of the distributions shown on the Schedule K–1 issued to the purported partner; the 40% penalty will apply to any underpayment of tax attributable to claiming basis in the property that is more than four times the amount of the distributions shown on the Schedule K–1 issued to the purported partner.

*Felix B. Laughlin* and *Mark D. Allison*, for petitioner.

*David D. Aughtry*, *Hale E. Sheppard*, and *William E. Buchanan*, for participating partner.

*James E. Gray*, for respondent.

CONTENTS

Page

Background .................................................................................... 77
Discussion ..................................................................................... 88
I.   Introduction: Complexity of Income Tax Treatment of Partners
        and Partnerships ...................................................... 88
   A.   Overview of Subchapter K .......................................... 88
   B.   TEFRA ......................................................................... 88
        1.   In General ........................................................... 88
        2.   TEFRA Penalty Litigation Structure Before TRA 1997 ....... 89
        3.   TEFRA Penalty Litigation Structure After TRA 1997 ......... 90
   C.   Attempted Exploitation by Tax Shelter Promoters of Com-
        plex Interactions and Disconnects of Subchapter K Sub-
        stantive Rules and TEFRA Procedural Rules ....................... 92
II.   Jurisdiction Under TEFRA When Entity Filing Partnership
        Return Is Not a Partnership or Does Not Exist ....................... 95
   A.   TEFRA Procedures Apply When Entity That Filed Partner-
        ship Return Is Not a Partnership or Does Not Exist:
        Sections 6226(f) and 6233 ....................................... 95
   B.   Jurisdiction To Determine Items of Disregarded Entity:
        Section 301.6233–1T(a) and (c), Temporary Proced. &
        Admin. Regs., 52 Fed. Reg. 6779, 6795 (Mar. 5, 1987) ......... 97
   C.   Jurisdiction To Determine Applicability of Any Penalty That
        Relates to Adjustment of Entity Item: Section 6226(f) ......... 100
III.   Jurisdiction To Enter Stipulated Decision as Written With
        Respect to Partnership Items ................................... 100
   A.   Provisions of the Stipulated Decision ............................. 100
   B.   Disregard of Tigers Eye .............................................. 102
   C.   Items of Tigers Eye .................................................. 102
   D.   First Decision Paragraph ............................................ 103
        1.   Partnership Loss and Deductions ........................... 104
        2.   Contributions and Distributions ............................ 104
           a.   Items Related to Contributions .......................... 104
           b.   Items Related to Distributions .......................... 106
        3.   Adjustment of Items to Zero ................................ 107
   E.   Second Decision Paragraph .......................................... 107
        1.   Basis in Property Distributed by Disregarded Entity ........... 108
        2.   Outside Basis .................................................. 109
           a.   *Petaluma* Superseded by *Mayo Found.* and *Inter-
                mountain*: TEFRA Regulations Must Be Applied ......... 110
           b.   Determination of Outside Basis: General Rule Under
                Section 705(a) ....................................... 112
           c.   Determination of Outside Basis: Alternative Rule Under
                Section 705(b) ....................................... 114
           d.   Outside Basis Is a Partnership Item ................... 115
              i.   Required To Be Taken Into Account Under Subtitle A ... 115

    ii.   More Appropriately Determined at the Partnership Level: Outside Basis Determined Under the General Rule ......................................................................... 116

    iii.  More Appropriately Determined at the Partnership Level: Outside Basis Determined Under Alternative Rule .................................................................. 118

    iv.  More Appropriately Determined at the Partnership Level: Outside Basis When the Partnership Is Disregarded .................................................... 118

  e.  Misapplication of *Dial USA, Inc. v. Commissioner* ............ 119

  f.  Validity of the Regulation Under the *Chevron* Two-Step Standard ............................................................... 124

  g.  Outside Bases of Tigers Eye's Purported Partners Are Partnership Items ............................................................ 126

IV.  Jurisdiction To Enter Stipulated Decision as Written With Respect to Application of Penalties ......................................... 128

  A.  Items Adjusted in the Stipulated Decision and the Application of Accuracy-Related Penalties Thereto Within the Jurisdictional Limitations of *Petaluma II* ............................. 130

  1.  40% Gross Basis Misstatement Penalty ................................ 131

  2.  20% Negligence Penalty .......................................................... 133

  3.  Conclusion ................................................................................. 134

  B.  *Petaluma II* Notwithstanding, Jurisdiction To Determine the 40% Penalty Applies to the Overstatement of the Basis of the Distributed Property ......................................................... 134

  1.  Applicability of the 40% Penalty to the Overstatement of the Basis of the Distributed Property ................................. 134

  2.  *Petaluma III*: The Court Was Bound by the Law of the Case and the Rule of Mandate To Follow *Petaluma II* Dicta on Lack of Jurisdiction Over Outside Basis ............. 136

  3.  TRA 1997: The Tax Court Has Jurisdiction To Determine Applicability of Penalties That Relate to Adjustment of Partnership Items ............................................................. 139

V.  Conclusion ...................................................................................... 143

## OPINION

BEGHE, *Judge*: Following entry of a stipulated decision on December 1, 2009, this Son of BOSS[1] case remains before this Court on a motion to revise the decision. The motion was

---

[1] The Son of BOSS tax shelter was described by the Internal Revenue Service (IRS) as a "listed transaction" in Notice 2000–44, 2000–2 C.B. 255, 256. In Announcement 2004–46, 2004–1 C.B. 964, the IRS announced a settlement initiative for taxpayers to resolve transactions described in Notice 2000–44, *supra*, and similar Son of BOSS transactions, with penalties topping out at 20% of the deficiencies. Within a year thereafter, the IRS announced that the settlement initiative had resulted in the collection of more than $3.2 billion of Federal income taxes and reduced penalties from more than 1,000 taxpayers. *See* "Son of BOSS Settlement Initiative Reaps $3.2 Billion, With More Expected, IRS Says", TM Weekly Report (BNA), 24 TMWR 467 (Mar. 28, 2005) (Tax Shelters).

filed by participating partner A. Scott Logan Grantor Retained Annuity Trust I, A. Scott Logan, Trustee, a partner other than the tax matters partner. We refer to the trustee in his individual capacity as Mr. Logan and to the trust as Logan Trust I or participating partner.

Participating partner argues that the stipulated decision upholds adjustments in the final partnership administrative adjustment (FPAA) and applies accuracy-related penalties that exceed this Court's jurisdiction under section 6226(f),[2] thereby overstepping the jurisdictional limits under the TEFRA[3] statute and regulations,[4] as established by the Court of Appeals for the D.C. Circuit in *Petaluma FX Partners, LLC v. Commissioner*,[5] 591 F.3d 649 (D.C. Cir. 2010) (*Petaluma II*), *aff'g in part, rev'g in part and remanding on penalty issues* 131 T.C. 84 (2008) (*Petaluma I*). On December 15, 2010, this Court responded to the remand on penalty issues with its reviewed Opinion (7–5, with two dissenting opinions), *Petaluma FX Partners, LLC v. Commissioner*, 135 T.C. 581 (2010) (*Petaluma III*), and on March 8, 2011, the Commissioner filed a notice of appeal.[6] Participating partner argues that under the *Golsen*[7] rule the Court's jurisdiction to decide the issues in dispute in this partnership-level proceeding is controlled by *Petaluma II*, so that the Court must

---

[2] Unless otherwise stated, all section references are to the Internal Revenue Code (Code) in effect for 1999, the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3] Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97–248, sec. 402, 96 Stat. at 648, as amended by the Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. No. 105–34, sec. 1238, 111 Stat. at 1026.

[4] Sec. 301.6231(a)(6)–1T(a), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3840 (Jan. 26, 1999); *see also* sec. 301.6231(a)(6)–1(a)(1), Proced. & Admin. Regs.

[5] In most Son of BOSS cases—as in the case at hand in *Petaluma FX Partners, LLC v. Commissioner*, 135 T.C. 581 (2010) (*Petaluma III*), *on remand from Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649 (D.C. Cir. 2010) (*Petaluma II*), *aff'g in part, rev'g in part and remanding on penalty issues* 131 T.C. 84 (2008) (*Petaluma I*)—the taxpayers contributed money and offsetting long and short foreign currency options to a partnership and reported multi-million-dollar losses on the sale of property that they claimed was distributed to them in liquidation of their partnership interests.

[6] *Appeal docketed*, No. 024717–05 (D.C. Cir. Mar. 8, 2011). We note that *Petaluma II* has already been followed by the Court of Appeals for the Federal Circuit in *Jade Trading, LLC, v. United States*, 598 F.3d 1372, 1379–1380 (Fed. Cir. 2010) (*Jade Trading II*), *aff'g in part, rev'g in part and remanding on penalty issues* 80 Fed. Cl. 11 (2007) (*Jade Trading I*), *remanded to* 98 Fed. Cl. 453 (2011) (*Jade Trading III*), *aff'd*, 451 Fed. Appx. 954 (Fed. Cir. 2012), and by the unpublished summary order of another panel of the Court of Appeals for the D.C. Circuit in *LKF X Invs., LLC, v. Commissioner*, 106 A.F.T.R. 2d (RIA) 2010–5003, 2010–1 U.S. Tax Cas. (CCH) para. 50,488 (D.C. Cir. 2011), *aff'g in part, rev'g in part and remanding on penalty issues* T.C. Memo. 2009–192.

[7] *Golsen v. Commissioner*, 54 T.C. 742 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).

vacate and revise the stipulated decision to conform to the jurisdictional limits imposed by *Petaluma II*. [8]

We observe that the limiting holdings in *Petaluma II* were the result of a concession by the Government that the Court of Appeals accepted without any discussion of the applicable regulations. In an opinion issued after *Petaluma II* was filed, *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. ___, 131 S. Ct. 704 (2011), the Supreme Court emphatically reminded lower courts that they must defer to regulations that satisfy the two-step *Chevron* [9] standard. More recently, in *Intermountain Ins. Serv. of Vail, LLC v. Commissioner*, 650 F.3d 691 (D.C. Cir. 2011), *rev'g and remanding* 134 T.C. 211 (2010), *supplementing* T.C. Memo. 2009–195, the Court of Appeals for the D.C. Circuit held that the deference given to regulations under *Mayo Found.* required the Court to apply the definitions of statutory terms provided in valid TEFRA regulations rather than follow earlier caselaw. In accordance with *Mayo Found.* and *Intermountain*, this Court must apply the TEFRA regulations, unless we hold them to be invalid, rather than follow the holding in *Petaluma II* in which the Court of Appeals did not specifically consider and apply the regulations.

Under the assumption that this Court was bound by the holdings of the Court of Appeals in *Petaluma II*, in respondent's response to participating partner's motion to vacate and revise the decision, respondent made the same concession as the Government made in *Petaluma II*.

Subject-matter jurisdiction relates to a court's statutory or constitutional power to hear a given type of case. *United States v. Cotton*, 535 U.S. 625, 630 (2002); *United States v. Morton*, 467 U.S. 822, 828 (1984); *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000). The Supreme Court has held that "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Cotton*, 535 U.S. at 630. "[S]ubject matter jurisdiction is an unwaivable sine qua non for the exercise of federal

---

[8] Tigers Eye Trading, LLC, was dissolved before the petition was filed; pursuant to sec. 7482(b) the proper venue for an appeal would be the Court of Appeals for the D.C. Circuit. When the tax matters partner filed the petition (in its capacity as a notice partner, *see Barbados #6 Ltd. v. Commissioner*, 85 T.C. 900, 903–905 (1985)), Mr. Logan was a resident of Florida and the place of business of the tax matters partner was in New York. The business address of Tigers Eye Trading, LLC, before its dissolution was in New York.

[9] *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–843 (1984).

judicial power". *Curley v. Brignoli, Curley & Roberts, Assocs.*, 915 F.2d 81, 83 (2d Cir. 1990). Moreover, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

Whether a court has subject matter jurisdiction to adjudicate the merits of a controversy is a question of law. *Taylor v. Voss*, 271 U.S. 176, 186 (1926) ("a petition for revision will lie to bring up for review the question of law whether the court of bankruptcy has jurisdiction to adjudicate the merits of such controversy in a summary proceeding"); *Adkison v. Commissioner*, 592 F.3d 1050, 1052 (9th Cir. 2010) ("Whether the Tax Court has subject matter jurisdiction is a question of law and thus reviewed de novo"), *aff'g* 129 T.C. 97 (2007); *United States v. Moore*, 443 F.3d 790, 793 (11th Cir. 2006). The meaning of a statutory term is also a question of law. *Crane v. Commissioner*, 331 U.S. 1, 15 (1947) (Tax Court's determinations of statutory terms "announced rules of general applicability on clear-cut questions of law").

Neither the Supreme Court nor an appellate court is bound to accept the Government's concession that the court below erred on a question of law. *Orloff v. Willoughby*, 345 U.S. 83, 88 (1953). Similarly, the Tax Court need not accept a party's concession on a question of law, particularly when to do so would strip the Court of its jurisdiction. *See Charlotte's Office Boutique, Inc. v. Commissioner*, 121 T.C. 89, 102 (2003), *aff'd*, 425 F.3d 1203 (9th Cir. 2005).

The *Golsen* rule does not apply where the precedent from the Court of Appeals constitutes dicta or contains distinguishable facts or law. *See, e.g.*, *Hefti v. Commissioner*, 97 T.C. 180, 187 (1991) (dictum not controlling), *aff'd*, 983 F.2d 868 (8th Cir. 1993); *Metzger Trust v. Commissioner*, 76 T.C. 42, 72–74 (1981) (factual distinctions render *Golsen* rule not squarely on point), *aff'd*, 693 F.2d 459 (5th Cir. 1982); *Kueneman v. Commissioner*, 68 T.C. 609, 612 n.4 (1977) (distinct legal question not governed by the *Golsen* rule), *aff'd*, 628 F.2d 1196 (9th Cir. 1980). As we stated in *Lardas v. Commissioner*, 99 T.C. 490, 493–495 (1992), the *Golsen* rule applies only where the "clearly established" position of a Court of Appeals signals "inevitable" reversal upon appeal.

In *Petaluma II* the Government conceded that outside basis was an affected item but argued that the Tax Court had jurisdiction to decide an affected item where its elements consisted entirely of partnership items. The Court of Appeals agreed that outside basis was an affected item but rejected the Government's elements argument. The Court of Appeals did not decide (1) whether under section 301.6231(a)(3)– 1(a)(4) and (c)(3)(iii), Proced. & Admin. Regs., outside basis is a partnership item because it is an item related to contributions and distributions necessary for maintaining its books and records and providing information to the purported partners; (2) whether outside basis was an entity item under section 301.6233–1T(a) and (c), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6779, 6795 (Mar. 5, 1987); (3) whether the basis in the property distributed by an entity that is disregarded as a partnership for Federal income tax purposes is an entity item under section 301.6233–1T(a) and (c), Temporary Proced. & Admin. Regs., *supra*; or (4) whether section 301.6231(a)(3)–1(a)(4) and (c)(3)(iii), Proced. & Admin. Regs., and section 301.6233–1T(a) and (c), Temporary Proced. & Admin. Regs., *supra*, are valid.

The Court of Appeals for the D.C. Circuit recognizes its "obligation to explore any promising avenue to * * * [the inferior court's] jurisdiction, whether or not suggested by the parties". *Ass'n of Am. Med. Colleges v. Califano*, 569 F.2d 101, 111 (D.C. Cir. 1977); *see also Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000) ("the issue of subject matter jurisdiction is one we are required to consider, even if the parties have ignored it or, as here, have switched sides on the issue"). Because the Court of Appeals did not consider the precise issue we decide herein, *Golsen* does not apply. *See Read v. Commissioner*, 114 T.C. 14 (2000), *aff'd without published opinion sub nom. Mulberry Motor Parts, Inc. v. Commissioner*, 273 F.3d 1120 (11th Cir. 2001); *Estate of Branson v. Commissioner*, 113 T.C. 6, 34 (1999), *aff'd*, 264 F.3d 904 (9th Cir. 2001).

Accordingly, we reject respondent's concession and apply the applicable regulations, authorized by sections 6231(a)(3) and 6233, and hold that this Court has jurisdiction to enter the stipulated decision as written, even to the extent it adjusts outside basis to zero and applies the 40% gross basis misstatement penalty under section 6662(h) to the deficiency

that results from the overstatement of the purported part-
ners' bases in distributed property. Therefore we shall deny
participating partner's motion to vacate and revise the deci-
sion.

## *Background*

Entry of the stipulated decision in this 1999 taxable year
Son of BOSS case was preceded by our opinion in *Tigers Eye
Trading, LLC v. Commissioner*, T.C. Memo. 2009–121 (*Tigers
Eye I*). [10] *Tigers Eye I* was preceded by extensive discovery
and motion practice, [11] the lodging of expert reports on the

[10] In *Tigers Eye I* we denied, on the authority of *New Millennium Trading, LLC v. Commis-
sioner*, 131 T.C. 275 (2008), participating partner's partial summary judgment motion to invali-
date sec. 301.6221–1T(c) and (d), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3838 (Jan.
26, 1999). We thereby denied Mr. Logan and Logan Trust I the right in this partnership-level
proceeding to interpose their partner-level good faith/reasonable cause defenses under sec.
6664(c) to the accuracy-related penalties. We also granted respondent's motion in limine to ex-
clude participating partner's expert witness report on the reliability of a tax opinion on which
Mr. Logan, Logan Trust I, and Mr. Logan's two other grantor trusts (collectively, Logan Trusts)
claim to have relied in preparing their 1999 Federal income tax returns.

In *Tigers Eye I* respondent also contended that Curtis Mallet Prevost Curt & Mosle (Curtis
Mallet)—the law firm that issued the tax opinion on which Mr. Logan and participating partner
claim to have relied in taking their 1999 Federal income tax return positions—was a promoter
of the transaction. In *Tigers Eye I* we also expressed the view that this promoter contention
raised a partnership-level issue that the Court could address at the trial; we also set forth our
views on the legal standard for determining promoter status. In *106 Ltd. v. Commissioner*, 136
T.C. 67, 77–81 (2011), the Court, notwithstanding that in *Tigers Eye I* we had expressed those
views in dicta, adopted and applied those views in holding that the law firm that had issued
the tax opinion in the Son of BOSS transaction in that case was a promoter of the transaction
whose opinion could not be reasonably relied upon in good faith by the partnership or the tax-
payer.

*Tigers Eye I* concluded with an Afterword that deplored the inefficiency and waste of judicial
and party resources caused by the apparent splitting of the accuracy-related penalty cause of
action under TEFRA as amended by TRA 1997. That inefficiency and waste are exemplified by
the motions we have had to deal with in *Tigers Eye I* and by the continuing controversies in
*Petaluma*, the case at hand, and other Son of BOSS cases over whether the accuracy-related
penalties must or can be determined at the partnership level or the partner (individual tax-
payer) level.

We noted in *Tigers Eye I* that the IRS has initiated a response to the observed problems, rely-
ing on its authority under sec. 6231(c) to promulgate regulations with respect to special enforce-
ment areas if it determines that treating certain items as partnership items under TEFRA will
interfere with the effective and efficient enforcement of the revenue laws. The IRS has proposed
regulations, Notice of proposed rulemaking, sec. 301.6231(c)–9(c), Proposed Proced. & Admin.
Regs., 74 Fed. Reg. 7205 (Feb. 13, 2009), which, when and if promulgated, would enable the
Commissioner to convert partnership items to nonpartnership items in partnership cases involv-
ing listed transactions; invoking this procedure would have the salutary effect of providing for
"one-stop shopping" through application of the traditional deficiency procedures to both defi-
ciencies and accuracy-related penalties in such transactions. *See* 1 William S. McKee et al., Fed-
eral Taxation of Partners and Partnerships, para. 10.02[4], at 10–16 (4th ed. 2007). We also
noted that the proposed regulations would not provide relief in the case at hand or the myriad
other pending Son of BOSS cases. The proposed regulations have not been finalized.

[11] Including participating partner's motion for partial summary judgment "regarding confirma-
Continued

actual and expected financial consequences of the transaction, and the lodging and later filing of two extensive stipulations of fact.[12] The undisputed factual material thereby made available enables us to describe the operative facts of the transaction. The extensive and detailed facts set forth in *Tigers Eye I* are incorporated herein by this reference. In addressing the pending motion, we take account of additional indisputable facts and repeat only the most pertinent facts set forth in *Tigers Eye I*.

The subject transaction was one of a number of such transactions promoted by Sentinel Advisors, LLC (Sentinel),[13] the tax matters partner, using a limited liability company— Tigers Eye Trading, LLC (Tigers Eye), in the case at hand— treated as a partnership for income tax purposes, as the vehicle needed to create the claimed basis step-ups that were the transaction's reason for being.[14]

---

tion of Code and caselaw as to contingent obligations". Participating partner sought a ruling that *Helmer v. Commissioner*, T.C. Memo. 1975–160, requires a holding that "a contingent obligation such as the Sold Euro Option each of the Logan Trusts sold to AIG falls short of a fixed 'liability' for section 752 and other federal income tax purposes". By order dated August 5, 2008, we denied the motion for a variety of reasons.

[12] On December 1, 2010, the day the stipulated decision was entered, the Court deemed moot and discharged its order to show cause in response to respondent's Rule 91(f) motion to show cause why proposed facts in evidence (embodied in a proposed third stipulation of facts and Exhibits 145–J through 155–J) should not be accepted as established.

[13] Among the cases of Sentinel-promoted Son of BOSS transactions that have been filed in the Court of Federal Claims are *Jade Trading I*; *Evergreen Trading, LLC v. United States*, 80 Fed. Cl. 122 (2007), to which *Nussdorf v. Commissioner*, 129 T.C. 30 (2007), is related; and *K2 Trading Ventures, LLC v. United States*, 101 Fed. Cl. 365 (2011), to which *Asuma Trading Ventures, LLC v. Commissioner*, *infra*, is related. Other cases of Sentinel-promoted transactions filed in this Court include *Sterling Trading Opportunities, LLC v. Commissioner*, No. 12361–05, and *Topaz Trading, LLC v. Commissioner*, No. 12629–05 (stip. decs. entered June 24, 2008); *New Millennium Trading, LLC v. Commissioner*, No. 3439–06 (filed Feb. 16, 2006); *Asuma Trading Ventures, LLC v. Commissioner*, No. 26772–06 (filed Dec. 27, 2006); *Sapphire Traders, LLC v. Commissioner*, No. 19067–09 (filed Aug. 10, 2009); *Eagle Trading Opportunities, LLC v. Commissioner*, No. 9733–05 (stip. dec. entered Jan. 23, 2009); *Pinnacle Trading Opportunities, LLC v. Commissioner*, No. 19291–05 (filed Oct. 14, 2005); and *Oak Leaf Trading, LLC v. Commissioner*, No. 1896–06 (stip. dec. entered July 29, 2008). Stipulated decisions in *Sterling* and *Topaz* are virtually identical to each other and to the decision in the case at hand in adjusting to zero the same four items, in not expressly making an outside basis adjustment (which was expressly made in the FPAA), in providing that the 40% penalty applies to underpayments of tax attributable to overstating capital contributions, and in providing that 20% negligence or substantial understatement penalties apply to any additional underpayments. See also *Diebold v. Commissioner*, T.C. Memo. 2010–238, in which Sentinel appears to have played a facilitating role in creating artificial losses claimed on the sale of corporate assets, resulting in a deficiency in Federal corporation income tax and accuracy-related penalties not contested by the selling corporation.

[14] Although the parties have stipulated the correctness of the determinations in the FPAA, including that the existence of Tigers Eye was not established as a fact and that the transactions in which it claimed to have participated should be disregarded in full, we use the terms "partnership", "partner", and related terms for convenience.

During 1999 Mr. Logan realized a multimillion-dollar long-term capital gain on his sale to a large Canadian financial services holding company of his stock interest in a corporation he had cofounded to act as a distributor of variable annuities.

Tigers Eye was a Delaware limited liability company formed in late September 1999, ostensibly to engage in foreign currency trading but in reality to generate paper losses to offset taxpayers' otherwise taxable capital gains. On October 1, 1999, the Logan Trusts each acquired a pair of offsetting long and short foreign currency options through AIG, which they then contributed along with cash to become partners in Tigers Eye on October 9, 1999. The Logan Trusts inflated their adjusted bases in Tigers Eye to reflect their contributions of the long options without reducing those bases to reflect Tigers Eye's assumption of their obligations under the short options. The basis inflation is premised on (1) treating each purchased option separately from each sold option, (2) each purchased option's having a basis equal to the gross premium in the hands of both the Logan Trusts and Tigers Eye, (3) treating the assignment to and assumption by Tigers Eye of the contingent obligation to satisfy the sold option separately from the purchased option for purposes of section 752, and (4) disregarding the contingent obligation to satisfy the sold option in determining outside basis in the partnership under the authority of *Helmer v. Commissioner*, T.C. Memo. 1975–160.

An unrelated entity, the Batts Group, also acquired interests in offsetting foreign currency options through AIG that were transferred to Tigers Eye and also received other property in liquidation of its interest in Tigers Eye.[15] We refer to participants in offsetting options transactions with partnerships such as the offsetting option transactions of the Logan Trusts and the Batts Group with Tigers Eye as option partners. In addition to Sentinel, the tax matters partner, which contributed $3,000 cash, Tigers Eye also had as a partner a foreign entity, Banque Safra-Luxembourg (Banque Safra), which contributed $58,000 cash. Neither Sentinel nor Banque Safra had any financial interest in the option trans-

---

[15] The Batts Group settled its case with the IRS without any court proceeding. In the following description and discussion we will for the most part ignore the role of the Batts Group.

actions, and neither has a stake in the outcome of this proceeding.

During December 1999 Sentinel caused Tigers Eye to unwind or terminate the paired options at a net loss. [16] Sentinel through Tigers Eye used the remaining cash contributions to purchase foreign currency (euro) and shares of listed stock (Xerox Corp.) that were purportedly distributed to the Logan Trusts in liquidation of their purported partnership interests. The Logan Trusts claimed that they had hugely inflated bases in Tigers Eye that attached to the foreign currency and stock Tigers Eye transferred to them (sometimes referred to herein as the distributed property). They sold the currency and stock before yearend 1999 and claimed huge losses that flowed through to Mr. Logan's 1999 Federal income tax return. Mr. Logan used the claimed losses on the sales of the foreign currency to offset his ordinary income, and he used the claimed short-term losses on the sales of the Xerox Corp. stock to offset most of the multimillion-dollar long-term capital gain he realized on the sale of his stock interest in the annuity distribution business. [17]

On April 14, 2000, Tigers Eye filed a Form 1065, U.S. Partnership Return of Income, for its 1999 taxable year. On March 7, 2005, respondent issued an FPAA to the Tigers Eye partners.

The FPAA comprises (1) Letter 1830, Notice of Final Partnership Administrative Adjustment, (2) Form 870–PT, Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional

---

[16] Ignoring the various fees paid by the Logan Trusts and Mr. Logan to participate in the transaction, the total outlay of the Logan Trusts to purchase their interests in the options and to make their cash contributions was approximately $400,000. What is important for the claimed basis inflation in the case at hand is that the premium on each option exceeded $9 million and the exercise price of each option exceeded $200 million. However, the net premium the Logan Trusts paid for each purchased option was only $95,003 more than the premium received or receivable for the offsetting sold option. The net premium that Tigers Eye received from AIG on the unwinding of each pair of options was $40,044.68, resulting in a total loss of $164,875 to the Logan Trusts on the unwinding of the options (($95,003 × 3 = $285,009) − ($40,044.68 × 3 = $120,134.04) = $164,874.96).

[17] As compared with their total $400,000 outlay to acquire their interests in the paired options and make their cash capital contributions, *see supra* note 16, the Logan Trusts received foreign currency and shares of Xerox Corp. having combined cost and value of approximately $230,000, of which approximately $14,000 was attributable to the foreign currency. The Logan Trusts claimed an ordinary loss that they flowed through to Mr. Logan of approximately $1.7 million on the sale of the foreign currency; Mr. Logan and the Logan Trusts claimed an aggregate basis of more than $27 million in the Xerox Corp. shares, resulting in claimed losses of more than $26 million on their sales.

Amounts, including a Schedule of Adjustments, and (3) an "Exhibit A—Explanation of Items", setting forth respondent's other adjustments or determinations.

The Schedule of Adjustments adjusted to zero the following five items:

|  |  |  |
|---|---|---|
| A. | Capital Contributions (Sched. M–2, line 2) | $698,595 |
| B. | Distributions of Property other than Money (Sched. M–2, line 6b) | 365,446 |
| C. | Outside Partnership Basis | 24,500,059 |
| D. | Other Deductions (Sched. K, line 11) | 11,314 |
| E. | Ordinary Income, Other Income (Loss) (Sched. K, line 7) | (242,186) |

Items A, B, D, and E are each identified as the adjustment of a line item on the Tigers Eye 1999 Form 1065. Item C (Outside Partnership Basis) is not such an item and does not correspond to any line item on the partnership return. Unlike the item A, B, D, and E amounts, each of which is identified as the adjustment of a line item on the Tigers Eye 1999 Form 1065, the item C amount does not appear on the partnership return or on the Schedules K–1, Partner's Share of Income, Credits, Deductions, etc., of the partnership return and sent to the partners.

Only two of the foregoing adjustments were to items appearing on the partnership return that directly flowed through to the returns of the Logan Trusts and thence to Mr. Logan's individual return. These two adjustments change to zero two items that appeared on Schedule K of the partnership return: "Other Deductions" of $11,314 (appearing on line 11, Schedule K, page 3, of the partnership return) and the negative amount "($242,186)" reported for "Ordinary Income, Other Income (Loss)" (on line 7, Schedule K, Partners' Shares of Income, Credits, Deductions, etc., page 3, of the partnership return). These line items were described in greater detail in Statements 1 and 2 of the return, reproduced below.[18] Statement 1, which attributes the nega-

---

[18] Statements 1 and 2 reported as follows:

Continued

tive figure –257,857 to "ORDINARY LOSS FROM SEC. 988 TRANS-ACTIONS", thereby indicates that this negative figure included the net loss claimed by Tigers Eye on the termination or unwinding of the contributed paired options, as well as the results of other foreign currency transactions. [19]

The partnership return Schedules K–1 for the Logan Trusts show that their respective shares of the entries on lines 7 and 11 of Schedule K were a loss of $52,583 and other deductions of $2,136, respectively, for a total loss of $157,749 and total other deductions of $6,408 that flowed from the partnership return through the returns of the Logan Trusts to Mr. Logan's 1999 Federal income tax return. [20] Indeed, the Form 1041, U.S. Income Tax Return for Estates and Trusts, for each of the Logan Trusts reports a $55,278 nonpassive loss from partnerships, which is within $600 of the $54,719 sum of the items allocated to each Logan Trust on lines 7 and 11. Mr. Logan's 1999 individual Federal income tax return, in three separate schedules entitled "1999 income from passthroughs", shows a loss of $55,278 from "SCHEDULE

| SCHEDULE K | OTHER INCOME (LOSS) | STATEMENT 1 |
|---|---|---|
| DESCRIPTION | | AMOUNT |
| NONPORTFOLIO SHORT–TERM CAPITAL GAIN (LOSS) | | 5,354 |
| INTEREST INCOME | | 1,617 |
| WITHDRAWAL FEES | | 8,700 |
| ORDINARY LOSS FROM SEC. 988 TRANSACTIONS | | –257,857 |
| TOTAL TO SCHEDULE K, LINE 7 | | –242,186 |

| SCHEDULE K | OTHER DEDUCTIONS | STATEMENT 2 |
|---|---|---|
| DESCRIPTION | | AMOUNT |
| OPERATING EXPENSES | | 11,314 |
| TOTAL TO SCHEDULE K, LINE 11 | | 11,314 |

[19] Respondent's proposed third stipulation of facts and Exhibits 145–J through 155–J, the subjects of respondent's Rule 91(f) motion, *see supra* note 12, would have conclusively established that the option spreads were terminated at a net loss during December 1999 and that the loss was included in the "ORDINARY LOSS FROM SEC. 988 TRANSACTIONS" that was claimed on the partnership return. Our conclusion that the contributed paired options were terminated or unwound during December 1999 is supported by the fact that Tigers Eye's final return for the year 2000, which showed Sentinel and Banque Safra to be the only partners, also showed relatively small amounts of remaining assets (much less than the aggregate capital contributions of the Logan Trusts and the Batts Group), liabilities, and capital at the beginning of the year, and relatively small losses and income from dispositions of assets and winding-up operations.

[20] The differences between these figures and the gross amounts shown on Statements 1 and 2, *see supra* note 18, that were adjusted to zero by the FPAA were attributable to the Batts Group's participation in Tigers Eye.

E ACTIVITY INCOME (LOSS)" for each of the Logan Trusts ($55,279 loss for Logan Trust II) for total "SCHEDULE E INCOME OR (LOSS) FROM ESTATES OR TRUSTS STATEMENT 21 NONPASSIVE LOSS OF" $165,835.

Statement 6 on the partnership return, "PARTNERS' CAPITAL ACCOUNT SUMMARY", shows "Capital Contributed" and "Withdrawals" (the latter is identical to "Distributions of Property Other Than Money") totaling $698,595 and $365,446, respectively, that were also adjusted to zero by the FPAA.

The "Capital Contributions" of $698,595 shown by the partnership return and zeroed out by the FPAA (and the stipulated decision) was the sum of the cash contributed by all the partners plus the net value of the paired options that the Logan Trusts and the Batts Group had ostensibly contributed to the partnership; this net value was arrived at by netting the premiums on the long and short options. This partnership return reporting differed from the inflated bases claimed by the Logan Trusts through the tax shelter [21] in that the option partners claimed bases in their partnership interests that included the premiums on the long options (amounting to more than $27 million, *see supra* note 17) without reduction or offset for the liabilities represented by the premiums on the short options.

The "Withdrawals" ("Distributions of Property Other Than Money") of $365,446 zeroed out by the FPAA was the book value (the aggregate purchase price/cost) of the foreign currency and corporate shares purchased by Sentinel through Tigers Eye on behalf of the Logan Trusts and the Batts Group for distribution to them. [22] The Logan Trusts' share of

[21] Capital contributions are to be reported by a partnership at fair market value rather than the cost or adjusted basis of the contributed property to the contributing partners, which is the "inside basis" of such property to the partnership under sec. 723. Secs. 1.704–1(b)(2)(iv)(b), 1.705–1(a)(1), Income Tax Regs.; *see also Interhotel Co. v. Commissioner*, T.C. Memo. 2001–151; *Mitchell v. Commissioner*, T.C. Memo. 1997–382 n.5. Because of the short time (less than 1 month) between the option partners' purchases of the option spreads and their contribution to Tigers Eye, it seems likely that there was little difference between the purchase prices of the option spreads and their fair market values when contributed to Tigers Eye. In any event, the determination that Tigers Eye is not a partnership for Federal income tax purposes and the adjustment of capital contributions to zero by both the FPAA and the stipulated decision has had the effects of denying the purported partnership any bases in the paired options and of disallowing any partnership loss claimed by Tigers Eye for 1999 on the termination or unwinding of the paired options and on any other foreign currency transactions.

[22] Under sec. 732(a)(1) the basis of property (other than money) distributed to a partner in a nonliquidating distribution is its cost to the partnership or its "inside basis", whereas, under sec. 732(b), the basis of such property distributed to a partner in liquidation is an amount equal

Continued

this cost amounted to approximately $230,000. *See supra* note 17. The aggregate inflated "outside" bases claimed by the Logan Trusts on the sales of foreign currency and Xerox Corp. stock were more than 118 times greater than (11,800% of) the withdrawals/distribution amounts reported on the partnership return.

The "EXHIBIT A—Explanation of Items" made the following additional adjustments or determinations: (1) Tigers Eye's existence as a partnership had not been established as a fact; (2) Tigers Eye had no business purpose other than tax avoidance, lacked economic substance, and was an economic sham so that Tigers Eye and the transactions in which it claimed to have participated should be disregarded in full; and (3) Tigers Eye had been formed or availed of, within the meaning of section 1.701–2, Income Tax Regs., for a principal purpose of improperly reducing the partners' Federal income tax liabilities.

The Explanation of Items went on to make alternative adjustments or determinations premised on regarding Tigers Eye as a partnership that had received the paired foreign currency options as contributions and assignments from the option partners (the Logan Trusts and the Batts Group) and thereafter distributed foreign currency and listed shares of stock to them in liquidation of their partnership interests. In that regard, the Explanation of Items determined that (1) the partners "have not established [under section 723] adjusted bases in their respective partnership interests in amounts greater than zero"; (2) "the purported partners of Tigers Eye did not enter into the option positions and Tigers Eye did not purchase the foreign currency or [listed] stock with a profit motive for purposes of section 165(c)(2)"; and (3) the obligations under the sold options should be netted against the purchased options so that "any * * * claimed increases in the outside bases in Tigers Eye resulting from the contributions of the sold [sic "purchased"] options should be disallowed". The alternative adjustments described in this paragraph have been rendered inapplicable by the stipulated decision's adoption of the primary adjustments disregarding

_____

to the distributee partner's interest in the partnership; i.e., its "outside basis". Under sec. 988 and preexisting law, *see Nat'l-Standard Co. v. Commissioner*, 80 T.C. 551, 558 (1983), *aff'd*, 749 F.2d 369 (6th Cir. 1984), foreign currency is generally considered property other than money for Federal income tax purposes.

the partnership described in the immediately proceeding paragraph.

Finally, the Explanation of Items determined at the partnership level that accuracy-related penalties to be imposed at the individual taxpayer level apply "to all underpayments of tax attributable to adjustments of partnership items of Tigers Eye Trading, LLC". The Explanation of Items went on to state:

The penalty shall be imposed on the components of underpayment as follows:

A. a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Sections 6662 (a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

B. a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulation as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.

C. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

D. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code.

Sentinel, the tax matters partner, filed the petition in this case but claims to have no direct financial interest in its outcome. Mr. Logan, as trustee of Logan Trust I,[23] sought and was granted leave to participate in this proceeding as participating partner. Mr. Logan, through his counsel, has wielded the laboring oar and called the shots for the taxpayer interests in this proceeding.[24]

[23] Participating partner had originally filed a refund suit (to recover a deposit of $18,898.93) in the Court of Federal Claims, *Tigers Eye Trading, LLC v. United States*, No. 05–00864–LAS (filed Aug. 4, 2005), contemporaneously with petitioner's filing of the petition in the case at hand. After the United States filed a motion to dismiss for lack of jurisdiction by reason of the pendency of the case at hand, *see* sec. 6226(b)(2), participating partner began proceedings to participate in the case at hand. This Court granted leave and recognized Logan Trust I's status as participating partner, *see* this Court's order of Mar. 9, 2007, and the case in the Court of Federal Claims was dismissed per order (Mar. 20, 2007). We would observe that Mr. Logan's deposit in the Court of Federal Claims case was an admission that the FPAA adjusted partnership items on the Tigers Eye 1999 partnership return such that Mr. Logan's Federal income tax liability was increased thereby. *See* sec. 301.6226(e)–1T (a)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6788 (Mar. 5, 1987); *see also* sec. 301.6226(e)–1(a)(1), Proced. & Admin. Regs.

[24] On Oct. 6, 2009, after the filing of *Tigers Eye I*, participating partner filed a motion and supporting memorandum for partial summary judgment regarding inapplicability of sec.

Continued

Within a week before the scheduled trial, [25] the Court was gratified to receive the stipulated decision document signed by respondent's counsel, by Sentinel, through Ari Bergmann, trustee of the Bergmann Revocable Trust, tax matters partner of Sentinel, tax matters partner of Tigers Eye, and by Sentinel's counsel. Participating partner through counsel indicated no objection to entry of the decision. The decision provides as follows:

ORDERED AND DECIDED: That the following statement shows the adjustments to the partnership items of Tigers Eye Trading, LLC, for the taxable year 1999:

| Partnership Item | As Reported | As Determined |
|---|---|---|
| Ordinary Income, Other Income (Loss) | ($242,186) | $-0- |
| Deductions, Other Deductions | $11,314 | $-0- |

6662(h). In the motion and supporting memorandum, participating partner conceded that the loss on the sale of the distributed stock and foreign currency was not allowed under sec. 465(b)(4) because it exceeded the amount at risk. The motion and memorandum and subsequent filings made clear that by conceding the at-risk issue participating partner intended to take the sec. 6662(h) 40% gross basis misstatement penalty out of play at both the partnership and partner/individual levels. In attempting so to do, participating partner cited and relied on the opinion of the Court of Federal Claims in *Alpha I, L.P. v. United States*, 84 Fed. Cl. 622, 634 (2008). In orders dated November 6 and 18, 2009, respectively, we denied the motion for partial summary judgment and explained our view, citing *Hambrose Leasing 1984–5 Ltd. P'ship v. Commissioner*, 99 T.C. 298 (1992), and *Russian Recovery Fund, Ltd. v. United States*, 81 Fed. Cl. 793 (2008), that at risk under sec. 465 is a partner-level issue on which the Court lacks jurisdiction to accept a concession in a partnership-level proceeding such as the case at hand.

The importance of the 40% penalty to both the IRS and taxpayers in Son of BOSS cases is shown by the repeated attempts by taxpayers to use concessions to take the penalty out of play. *See, e.g.*, *Bergmann v. Commissioner*, 137 T.C. 136 (2011), and Chief Counsel Notice CC–2012–001 (Oct. 5, 2011), opposing the allowance of concessions to avoid imposition of valuation misstatement penalties. *See* 199 Daily Tax Rept. (BNA) K–6 (Oct. 14, 2011). In a status report filed November 13, 2009, in the case at hand respondent provided a list, with docket numbers, of more than 40 Son of BOSS cases pending in the Tax Court in which respondent was asserting both sec. 465 at risk (as an alternative position) and the 40% gross basis misstatement penalty. In a previous filing, respondent had asserted that the aggregate amount of the 40% penalties being asserted in such cases amounted to approximately $130 million, of which the 40% penalties in five still-pending Sentinel-promoted Son of BOSS cases amounted to approximately $41 million.

[25] Participating partner's counsel informed the Court, in filings of October 26 and November 2, 2009, and in a recorded telephone conference of November 5, 2009, that participating partner would not participate in the trial that had been set for a special session scheduled to commence on November 30, 2010, in Washington, D.C. Participating partner's counsel stated that it would be futile and prohibitively expensive to have a trial in the partnership-level proceeding. Instead, participating partner had decided to "pursue reasonable cause in the refund action consistent with this Court's ruling that it lacks jurisdiction over that reasonable cause". In the preamble of our order of November 18, 2009, we urged participating partner to reconsider not participating in the trial; we ordered participating partner and petitioner to file a status report by November 29, 2009, "informing the Court whether they intend to participate in the trial of this case".

| _Partnership Item_ | _As Reported_ | _As Determined_ |
|---|---|---|
| Distributions of Property other than Money | $365,446 | $-0- |
| Capital Contributions | $698,595 | $-0- |

It is determined that the notice of final partnership administrative adjustment dated March 7, 2005, which is the subject matter of this case, is correct.

It is determined that a 40 percent gross valuation misstatement penalty under I.R.C. § 6662(a); (b)(3), (e) and (h) applies to any underpayment of tax attributable to overstating the capital contributions claimed to have been made to the purported partnership.

It is determined that a 20 percent penalty applies to any additional underpayment of tax attributable to the foregoing partnership item adjustments other than the capital contributions claimed to have been made to the purported partnership, as such underpayment is attributable to negligence or disregard of rules or regulations under I.R.C. § 6662(a), (b)(1) and (c) or a substantial understatement of income tax under I.R.C. § 6662(a), (b)(2) and (d).

On November 25, 2009, the Court issued an order striking the case from the November 30, 2009, Washington, D.C., special trial session. On December 1, 2009, the Court entered the stipulated decision.

The Court's gratification from receipt and entry of the stipulated decision was short lived. On January 12, 2010, the Court of Appeals for the D.C. Circuit issued _Petaluma II_. One week later, on January 19, 2010, participating partner filed the motion for leave to file a motion to revise the stipulated decision and lodged the motion to revise decision. On November 30, 2010, the Court granted leave and the motion to revise decision was filed.[26] Participating partner asserts that the Court must vacate and revise the stipulated decision

---

[26] By October 2010 respondent became concerned that if the stipulated decision were not vacated, it would have already become final (on March 1, 2010) and the one-year period of limitations under sec. 6229(d) for making computational adjustments and assessing any resulting deficiency and accuracy-related penalties and/or issuing an affected items notice of deficiency would expire on March 1, 2011. On November 30, 2010, we granted the motion for leave nunc pro tunc as of the date it had been filed, January 19, 2010, and ordered the lodged motion to revise decision to be filed as of that date. As a result, the 90-day period for appeal of the stipulated decision under Fed. R. App. P. 13 does not commence to run until the motion to revise is granted or denied and the one-year period of limitations under sec. 6229(d) is thereby extended. _See Nordvik v. Commissioner_, 67 F.3d 1489, 1492 (9th Cir. 1995), _aff'g_ T.C. Memo. 1992–731; _Simon v. Commissioner_, 176 F.2d 230 (2d Cir. 1949); _Stewart v. Commissioner_, 127 T.C. 109, 117 (2006).

because it exceeds the jurisdictional limitations imposed by *Petaluma II*.

## *Discussion*

I. *Introduction: Complexity of Income Tax Treatment of Partners and Partnerships*

### A. *Overview of Subchapter K*

A partnership is not taxed as an entity, and its items of income and loss flow through to its partners. Sec. 701. Partnerships are required to file annual information returns reporting the partners' distributive shares of income, deductions, and other partnership items. Sec. 6031. The individual partners report their distributive shares of the partnership items on their Federal income tax returns. Secs. 701–704.

The substantive law governing the income taxation of partners is in subchapter K of chapter 1 of the Code (subchapter K). Subchapter K creates a detailed and complex system of rules for characterizing transactions between the partnership and the partners, computing and/or characterizing partnership income, assets, and liabilities, allocating those items among the partners, and determining and making adjustments to a partner's basis (cost for tax purposes under section 1012 except as otherwise provided in subchapter K) in the partnership for his share of those items. The purpose of subchapter K is "to permit taxpayers to conduct joint business (including investment) activities through a flexible economic arrangement without incurring an entity-level tax." Sec. 1.701–2(a), Income Tax Regs.

### B. *TEFRA*

#### 1. *In General*

The unified audit and litigation procedural rules applicable to partnerships and their partners were enacted by Congress in the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97–248, sec. 402, 96 Stat. at 648, and amended by Congress in the Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. No. 105–34, sec. 1238, 111 Stat. at 1026.[27] The TEFRA procedures are set forth in subchapter C

---

[27] TEFRA as amended by TRA 1997 is an egregious example of "hyperlexis", *see* Bayless Man-

of chapter 63 of the Code. Under the TEFRA procedures all partnership items, the proper allocation of those partnership items among the partners, and the applicability of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item are determined in a single partnership-level proceeding. Sec. 6226. The determinations of partnership items in partnership-level proceedings are binding on the partners and may not be challenged in subsequent partner-level proceedings. *See* secs. 6230(c)(4), 7422(h).

2. *TEFRA Penalty Litigation Structure Before TRA 1997*

Before Congress enacted TRA 1997, any penalty, addition to tax, or additional amount (collectively, penalty) related to adjustment of a partnership item or items in a TEFRA proceeding at the partnership level was generally treated as an affected item that required a factual determination in a subsequent proceeding at the partner level. *See N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 744 (1987); sec. 301.6231(a)(5)–1T(d), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987). Before Congress enacted TRA 1997, the Tax Court lacked jurisdiction in a partnership-level proceeding to decide the applicability of partnership-item penalties. *See N.C.F. Energy Partners v. Commissioner*, 89 T.C. at 744. Rather, partnership-item penalties were determined at the partner level as affected items in a deficiency proceeding after the related partnership-level proceeding had been completed. Procedurally, this made sense, inasmuch as the ultimate liability of each individual partner depended, almost invariably, upon his ability to sustain his individual reasonable cause/good faith defenses under section 6664(c), irrespective of whether the application of the penalty origi-

ning, "Hyperlexis: Our National Disease", 71 Nw. U. L. Rev. 767 (1977), and is discussed in the tax context in Bayless Manning, "Hyperlexis and the Law of Conservation of Ambiguity", 36 Tax Law. 9 (1982), and Gordon D. Henderson, "Controlling Hyperlexis—The Most Important 'Law and * * *'", 43 Tax Law. 177 (1989). *See also* Richard M. Lipton, "We Have Met the Enemy and He is Us: More Thoughts on Hyperlexis", 47 Tax Law. 1 (1993); Walter D. Schwidetzky, "Hyperlexis and the Loophole", 49 Okla. L. Rev. 403 (1996). We would suggest that TEFRA as amended by TRA 1997 has gone beyond the conservation of ambiguity described by Henderson, *supra*, at 184–186, to its exponential augmentation. See generally Sidney I. Roberts, et al., "A Report on Complexity And the Income Tax", 27 Tax L. Rev. 325 (1972), on the operation of "Gresham's Law of Tax Practice", describing the role of tax practitioners who disregard professional standards of care, exemplified more recently by those who acted as promoters of Son of BOSS transactions.

nated from misconduct or failure of care at the partnership or individual level.

3. *TEFRA Penalty Litigation Structure After TRA 1997*

TRA 1997 sec. 1238 made a comprehensive set of procedural amendments to the regime for the determination of penalties under TEFRA:

(1) By amending section 6221, TEFRA's introductory jurisdictional provision, to require the applicability of any partnership-item penalty to be determined at the partnership level ("Except as otherwise provided in this subchapter, the tax treatment of any partnership item (and the applicability of any penalty * * * which relates to an adjustment to a partnership item) *shall be determined at the partnership level*" (emphasis added));

(2) by amending and expanding section 6226(f), on the scope of judicial review by the Tax Court, the Court of Federal Claims, or Federal District Courts with which a petition to review an FPAA is filed, i.e., in a partnership-level proceeding, to provide that such court "*shall have jurisdiction to determine*" not only all partnership items and their allocations among partners but also "*the applicability of any penalty * * * which relates to an adjustment to a partnership item*" (emphasis added);

(3) by amending section 6230(a)(2)(A)(i) to deprive the Tax Court of jurisdiction to determine partnership-item penalties in a partner-level deficiency proceeding ("(A) Subchapter B [sections 6211–6216 titled "Deficiency Procedures in the Case of Income, Estate, Gift and Certain Excise Taxes"] shall apply to any deficiency attributable to—(i) affected items which require partner-level determinations (other than penalties * * * that relate to adjustments to partnership items)");

(4) by adding section 6230(c)(1)(C), which allows a partner to file a claim for refund on the ground that "the Secretary erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item"; and

(5) by amending section 6230(c)(4) to make conclusive the partnership-level determination regarding the applicability of any partnership-item penalty, but allowing the partner to

assert any "partner-level" defenses in the refund claim. This amendment was added to and continued the provision of section 6230(c)(4) that makes conclusive partnership-level adjustments of partnership items that result in computational adjustments without the need for an affected items notice of deficiency, but also allows those adjustments to be challenged in a refund suit.

In its report underlying the amendments, the House Committee on Ways and Means provided the following explanation:

### Present Law

Partnership items include only items that are required to be taken into account under the income tax subtitle. Penalties are not partnership items since they are contained in the procedure and administration subtitle. As a result, penalties may only be asserted against a partner through the application of the deficiency procedures following the completion of the partnership-level proceeding.

### Reasons for Change

Many penalties are based upon the conduct of the taxpayer. With respect to partnerships, the relevant conduct often occurs at the partnership level. In addition, applying penalties at the partner level through the deficiency procedures following the conclusion of the unified proceeding at the partnership level increases the administrative burden on the IRS and can significantly increase the Tax Court's inventory.

### Explanation of Provision

The bill provides that the partnership-level proceeding is to include a determination of the applicability of penalties at the partnership level. However, the provision allows partners to raise any partner-level defenses in a refund forum.

[H.R. Rept. No. 105–148, at 594 (1997), 1997–4 C.B. (Vol. 1) 319, 915–916.]

The foregoing recitation of these TRA 1997 amendments to TEFRA and their legislative history displays the common theme that unites them. The recitation makes clear that the applicability of the accuracy-related penalty or penalties that relate to the adjustment of partnership items would henceforth be determined in the partnership-level proceeding to determine the validity of the adjustments to partnership items by the FPAA. No longer would application of accuracy-related penalties be determined at the partner level by the resolution of a partner-level affected-items deficiency proceeding. Nevertheless, for all the reasons discussed in the

Afterword to *Tigers Eye I*, *see supra* two concluding paragraphs of note 10, the TRA 1997 changes have spawned many controversies concerning proper application of the TEFRA procedural rules, particularly in Son of BOSS cases, including the case at hand.

### C. *Attempted Exploitation by Tax Shelter Promoters of Complex Interactions and Disconnects of Subchapter K Substantive Rules and TEFRA Procedural Rules*

The substantive and procedural rules applicable to the income taxation of partners and partnerships are "distressingly complex and confusing".[28] *Rhone-Poulenc Surfactants and Specialties, L.P. v. Commissioner*, 114 T.C. 533, 539–540 (2000) (citing *Foxman v. Commissioner*, 41 T.C. 535, 551 n.9 (1964), *aff'd*, 352 F.2d 466 (3d Cir. 1965)). That complexity has proven to be easily exploited, and consequently, entities classified as partnerships have become the vehicles of choice in creating and operating abusive tax shelters. The difficulty of applying the TEFRA partnership provisions in tax shelter cases is evidenced—in addition to *Petaluma* and the case at hand—by the opinions of the various trial courts and the Courts of Appeals to which the cases were appealed. *See, e.g.*, *Jade Trading, LLC v. United States*, 598 F.3d 1372, 1379–1380 (Fed. Cir. 2010) (*Jade Trading II*), *aff'g in part, rev'g in part and remanding on penalty issues* 80 Fed. Cl. 11 (2007) (*Jade Trading I*), *remanded to* 98 Fed. Cl. 453 (2011) (*Jade Trading III*), *aff'd*, 451 Fed. Appx. 954 (Fed. Cir. 2012); *LKF X Invs. LLC v. Commissioner*, 106 A.F.T.R. 2d (RIA) 2010–5003, 2010–1 U.S. Tax Cas. (CCH) para. 50,488 (D.C. Cir. 2010), *aff'g in part, rev'g and remanding on penalty issues* T.C. Memo. 2009–192; *RJT Invs. X v. Commissioner*, 491 F.3d 732 (8th Cir. 2007); *Desmet v. Commissioner*, 581 F.3d 297 (6th Cir. 2009), *aff'g in part and remanding Domulewicz v. Commissioner*, 129 T.C. 11, 22 (2007), *remanded to* T.C. Memo. 2010–177; *New Millennium Trading, LLC v. Commissioner*, 131 T.C. 275, 279 (2008); *Hambrose Leasing 1984–5 Ltd. P'ship v. Commissioner*, 99

---

[28] A partnership is simultaneously considered to be an aggregation of individual partners (the "aggregate theory") and a separate entity (the "entity theory"). The mixing of the aggregate and entity theories by the substantive and procedural laws applicable to the income taxation of partners and partnerships is a primary source of uncertainty in the application of those laws. *Rhone-Poulenc Surfactants and Specialties, L.P. v. Commissioner*, 114 T.C. 533, 539–540 (2000).

T.C. 298 (1992); *Alpha I, L.P. v. United States*, 93 Fed. Cl. 280, 326 (2010); *Russian Recovery Fund, Ltd. v. United States*, 81 Fed. Cl. 793 (2008).

    Abusive tax shelters are complex financial artifices which exploit two fundamental weaknesses in the federal tax system: (1) the complexity of the internal revenue laws and (2) the government's inability by conventional means to identify quickly and challenge abusive tax schemes. By exploiting these weaknesses, tax shelter promoters precipitated a proliferation of abusive tax shelters and huge revenue losses to the federal government.

       \*    \*    \*    \*    \*    \*    \*

  \* \* \* Congress could not draft provisions that anticipated every colorable interpretation for fabricating a tax shelter. New tax shelter techniques continued to develop unhindered by legislative efforts at containment.

  [D. French Slaughter, "The Empire Strikes Back: Injunctions of Abusive Tax Shelters After TEFRA", 3 Va. Tax Rev. 1, 6 (Summer 1983); fn. refs., citations, and quotation marks omitted.]

The above quotation was not only an accurate description of past and present ills as of the time it was published—1983— but also a forecast of future developments, as exemplified by the Son of BOSS transactions that are central to the formation of the limited liability companies of Tigers Eye in the case at hand and Petaluma in the *Petaluma* case; they are a variation of the "bond and options sales strategy", which the Commissioner regards as an abusive tax shelter, *see* Notice 2000–44, 2000–2 C.B. 255, 256; *supra* note 1, and this Court has repeatedly so held, *see, e.g.*, *Carpenter Family Invs., LLC v. Commissioner*, 136 T.C. 373, 375 (2011); *3K Invs. Partners v. Commissioner*, 133 T.C. 112, 113 n.2 (2009); *see also Kligfeld Holdings v. Commissioner*, 128 T.C. 192, 194 (2007).

  Taxpayers attempted to exploit the complexity of partnership substantive tax law by using Son of BOSS transactions to inflate artificially the basis of property ostensibly distributed by a partnership to the purported partners in liquidation of their partnership interests. Those attempts exploited the complexity of the TEFRA partnership procedural rules to impede the Government's ability to identify quickly and challenge abusive Son of BOSS transactions and to avoid the

proper imposition of the accuracy-related penalties. [29] As a result of those attempts, a disproportionate number of cases under TEFRA have been devoted to procedural, jurisdictional, and statute of limitations questions. [30] The diversion of resources from the determination and collection of liabilities for taxes, penalties, and interest has been substantial. *See supra* note 1.

Application of the TEFRA provisions is the most "distressingly complex and confusing" in tax shelter cases such as the case at hand and *Petaluma* where the Commissioner takes and sustains the primary position in the FPAA (and the parties agree or the taxpayer concedes) that an entity purporting to be a partnership is to be disregarded on grounds of sham or lack of economic substance. In such cases the entity is not a partnership for Federal income tax purposes, the persons holding interests in the entity are not partners, their interests in the entity are not interests in a partnership, and the transactions between the entity and the interest holders are not transactions between a partnership and its partners. Consequently, the substantive provisions of subchapter K simply do not apply to the entity, the persons holding interests in the entity, or their transactions with the entity and among themselves. However, pursuant to section 6233(a) and (b), the TEFRA procedural provisions applicable to partnerships do apply "to the extent provided by regulations" to an entity that has filed a partnership return and to the persons holding an interest in the entity even if it is not a partnership for Federal income tax purposes or even "if it is determined that there is no such entity". Sec. 301.6233–1T(c), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6795 (Mar. 5, 1987).

---

[29] TEFRA, particularly as revised by TRA 1997, is fiendishly complicated. Significant procedural problems arise from the complexity introduced by two levels of proceedings under TEFRA as amended by TRA 1997—the partnership level and the partner level. There are situations in which the two levels fail to fit perfectly together or the Commissioner's auditing agents are unable to discern which positions are properly raised at the partnership level in the FPAA or during the partnership-level court proceeding rather than at the partner level in a "free-standing" notice of deficiency (issued without regard to any FPAA), an affected items notice of deficiency, or during the attendant court proceedings, and vice versa. These situations have allowed or created the potential for taxpayers to escape liabilities for tax deficiencies and penalties that would have been due if the Commissioner had asserted the correct arguments and positions at the correct level. *See, e.g.*, *Domulewicz v. Commissioner*, 129 T.C. 11 (2007), *aff'd sub nom. Desmet v. Commissioner*, 581 F.3d 297 (6th Cir. 2009), *remanded to* T.C. Memo. 2010–177.

[30] See, for example, cases cited *infra* note 37 on proper application of the six-year statute of limitations under secs. 6229(c)(2) and 6501(e)(1)(A) to substantial omissions from gross income.

The complexity of the TEFRA provisions in a case where an entity purporting to be a partnership is disregarded as such begins with sections 6226(f) and 6233, which govern the Tax Court's jurisdiction in partnership-level proceedings. Our jurisdiction to enter the stipulated decision as written also begins with those statutory provisions.

II. *Jurisdiction Under TEFRA When Entity Filing Partnership Return Is Not a Partnership or Does Not Exist*

   A. *TEFRA Procedures Apply When Entity That Filed Partnership Return Is Not a Partnership or Does Not Exist: Sections 6226(f) and 6233*

Generally, in partnership-level proceedings we have jurisdiction under section 6226(f) to determine all partnership items of the partnership for the partnership taxable year to which the FPAA relates, and we are not limited to the partnership items adjusted in the FPAA. Sec. 301.6226(f)–1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6788 (Mar. 5, 1987). We also have jurisdiction to determine the proper allocation of those partnership items among the partners and the applicability of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item. Sec. 6226(f).

The TEFRA procedures and our jurisdiction in TEFRA proceedings are not limited to partnership items of valid business entities recognized as partnerships for Federal tax purposes. Pursuant to section 6233 and the regulations promulgated thereunder, if an entity that has filed a partnership return is determined not to be a partnership or not to exist, the TEFRA partnership procedures (statutory and regulatory) will apply to the entity, its items, and persons holding an interest in the entity. Sec. 301.6233–1T(a), (c), Temporary Proced. & Admin. Regs., *supra*. In such a case, the Court has jurisdiction to make the determinations that the entity is not a partnership and/or that it does not exist as well as determinations with respect to all items of the entity that would be partnership items, as defined in section 6231(a)(3) and section 301.6231(a)(3)–1, Proced. & Admin. Regs., if the entity had been a partnership. Sec. 301.6233–1T(a), (c), Temporary Proced. & Admin. Regs., *supra*.

Generally, a valid business entity having two or more owners is taxed as either a corporation or a partnership. However, an entity that merely acts as nominee and agent for its owners may be disregarded as a separate business entity. *Cf. Commissioner v. Bollinger*, 485 U.S. 340, 344–345 (1988). In such a case, the Court may determine that the entity does not exist and is neither a corporation nor a partnership, but the TEFRA procedures will still apply in accordance with section 6233(b) and section 301.6233–1T(c), Temporary Proced. & Admin. Regs., *supra*.

When Congress enacted the TEFRA procedures and the Secretary first promulgated the temporary regulations, there were frequent controversies over whether an unincorporated business entity with two or more owners (often a limited partnership) was properly classified as a corporation or a partnership for Federal tax purposes under section 301.7701–2, Proced. & Admin. Regs., in effect at that time. Section 301.6233–1T(a), Temporary Proced. & Admin. Regs., *supra*, focuses on the resolution of such controversies and, if the entity is properly taxable as a corporation, gives the Court jurisdiction in the TEFRA proceeding to determine the taxable income of the corporation, which will also "serve as a basis for a computational adjustment reflecting the disallowance of any loss of credit claimed by a purported partner with respect to that entity."[31] However, the procedures under section 6233 are not limited to controversies regarding the proper classification of an entity as a corporation or as a partnership. Section 6233(b) and section 301.6233–1T(c), Temporary Proced. & Admin. Regs., *supra*, give the Court jurisdiction in the partnership-level proceeding to determine that an entity that filed a partnership return does not exist.[32] If the Court determines that the entity does not exist or is deemed court to exist, the non-

---

[31] Controversies involving the proper classification of a multimember business entity were virtually eliminated in 1996 when the Secretary issued new classification regulations, sec. 301.7701–3, Proced. & Admin. Regs., commonly referred to as the "check-the-box" regulations. Under the "check-the-box" regulations a business entity with two or more members is classified as a partnership for Federal income tax purposes, absent an election to be treated as a corporation. Sec. 301.7701–3(a) and (b), Proced. & Admin. Regs.

[32] That situation might arise, for example, where an entity purporting to be a legal entity under State law, such as a limited liability company or a limited partnership, was never formed under State law. It could also arise where, as in *Petaluma* and the case at hand, the entity, although legally formed under State law, is deemed not to exist for Federal income tax purposes because it is a sham, has no real business purpose, and merely acts as nominee and agent for its owners. *Cf.*, *e.g.*, *Commissioner v. Bollinger*, 485 U.S. 340, 344–345 (1988).

existent or disregarded entity will be treated as an entity that filed a partnership return, and section 301.6233–1T(a), Temporary Proced. & Admin. Regs., *supra*, will apply. The Court must then determine whether the entity is nonetheless a partnership for Federal income tax purposes.[33] If the Court determines that it is not, the Court has jurisdiction to make determinations with respect to all items of the entity that would be partnership items, as defined in section 6231(a)(3) and section 301.6231(a)(3)–1, Proced. & Admin. Regs., if the entity had been a partnership.

B. *Jurisdiction To Determine Items of Disregarded Entity: Section 301.6233–1T(a) and (c), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6779, 6795 (Mar. 5, 1987)*

Section 6233 provides that if a partnership return is filed for a taxable year but it is determined that no partnership exists, the TEFRA procedures still apply to the entity, its items, and persons holding an interest in the entity, to the extent provided in the regulations. In such a case, the TEFRA temporary regulations applicable to Tigers Eye's 1999 taxable year provide that the Court may make determinations with respect to all items of the entity (entity items) that "would be partnership items, as defined in section 6231(a)(3) and the regulations thereunder [section 301.6231(a)(3)–1, Proced. & Admin. Regs.], if * * * [it] had been a partnership". Sec. 301.6233–1T(a), Temporary Proced. & Admin. Regs., *supra*. Further, the TEFRA temporary regulations provide:

Paragraph (a) of this section shall apply where a partnership return is filed for a taxable year but it is determined that there is no entity for such taxable year. For purposes of applying paragraph (a) of this section, the partnership return shall be treated as if it was filed by an entity. [Sec. 301.6233–1T(c), Temporary Proced. & Admin. Regs., *supra*.]

*See also* sec. 301.6233–1(a), (d), Proced. & Admin. Regs., *supra* (applicable for taxable years beginning on or after October 4, 2001).

---

[33] For example, a limited partnership or limited liability company that does not legally exist because it was not properly formed under State law might nonetheless be deemed to be a general partnership because the partners or members have conducted transactions as general partners of the purported entity.

A partnership item is an item that is (1) required to be taken into account under any provision of subtitle A, governing income taxes, and (2) identified by the Secretary in the regulations as "more appropriately determined at the partnership level". Sec. 6231(a)(3).[34] In section 301.6231(a)(3)–1, Proced. & Admin. Regs., the Secretary identified the items that are "more appropriately determined at the partnership level than at the partner level and, therefore, are partnership items".

Section 301.6231(a)(3)–1(a)(1)(i), Proced. & Admin. Regs., provides that partnership items include the partnership aggregate and each partner's share of items of income, gain, loss, deduction, or credit of the partnership. Partnership items also include "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." Sec. 301.6231(a)(3)–1(b), Proced. & Admin. Regs.

The existence of a valid partnership is a partnership item. First, it must be taken into account in computing a purported partner's income taxes. " 'When filling out individual tax returns, the very process of calculating an outside basis, reporting a sales price, and claiming a capital loss following a partnership liquidation presupposes that the partnership was valid.' " *Petaluma II*, 591 F.3d at 653 (quoting *RJT Invs. X v. Commissioner*, 491 F.3d at 736). Second, the existence of a valid partnership "is a sine qua non for determining the amount and characterization of all other partnership items." *Id.* The legal and factual determinations underlying the Court's determination that the entity is not a partnership and/or does not exist will determine the character of the items of income, credit, gain, loss, and deduction of the entity. Thus the legal or factual determination that establishes the existence or nonexistence of a partnership is an item that the Secretary has identified as being more appropriately decided at the partnership level than at the partner level. *Id.*

---

[34] Sec. 6231(a)(3) defines the term "partnership item" as follows:

(3) PARTNERSHIP ITEM.—The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

The determination that an entity is not a partnership because it is an association taxable as a corporation or because it was merely the nominee or agent for its owners is such a legal or factual determination and is a "partnership item" that the Court has jurisdiction to decide in the partnership-level proceeding. The classification of the entity as a corporation or as a nominee-agent will determine the character of the items of income, credit, gain, loss, and deduction of the entity. Thus, if the Court determines that the entity that filed a partnership return is not a partnership but is an association taxable as a corporation, entity items would include amounts taxable to the entity as a corporation. Sec. 301.6233–1T(a), Temporary Proced. & Admin. Regs., *supra*. If the Court determines that an entity is a nominee-agent for the purported partners, the items of the entity will be directly attributable to them.

"[D]etermining whether there is a valid partnership necessarily controls whether there can be partnership income, partnership gain, partnership losses, and so forth." *Petaluma II*, 591 F.3d at 653. If the Court has determined that an entity that filed a partnership return is not a partnership and/or does not exist, there is no partnership income, partnership gain, or partnership loss. The items of the entity are not properly characterized as those of a partnership. The regulations provide that the Court's determination that an entity that filed a partnership return is not a partnership and is taxable as a corporation "will serve as a basis for a computational adjustment reflecting the disallowance of any loss or credit claimed by a purported partner with respect to that entity". Sec. 301.6233–1T(a), Temporary Proced. & Admin. Regs., *supra*. Because that section of the temporary regulation also applies to entities that do not exist, the determination that the entity is deemed not to exist and is not a partnership for Federal tax purposes will also serve as a basis for a computational adjustment reflecting the disallowance of any loss or credit claimed by a purported partner with respect to that entity. Notably, the regulation does not limit the computational adjustment to the disallowance of the purported partner's share of "partnership loss or credit" that flowed through to his return from the partnership return; the regulation extends the permissible computational adjustment to the disallowance of "*any* loss or credit claimed

by a purported partner *with respect to that entity*". (Emphasis added.) Such a loss or credit, because it would be "with respect to that entity", would include a loss claimed on the sale or liquidation of the partner's purported partnership interest in the entity or on his sale of property purportedly distributed to him in liquidation of his partnership interest in the entity. Thus the Court has jurisdiction in the partnership-level proceeding to determine that items of the entity that purport to be partnership items do not exist and to adjust all such items to zero so that a computational adjustment can be made to reflect the disallowance of any loss or credit claimed by a purported partner with respect to the entity.

C. *Jurisdiction To Determine Applicability of Any Penalty That Relates to Adjustment of Entity Item: Section 6226(f)*

If the Court determines that an entity that filed a partnership return is not a partnership, the TEFRA provisions, including section 6226(f), apply. Sec. 301.6233–1T(a), Temporary Proced. & Admin. Regs., *supra*. Pursuant to section 6226(f) the Court has jurisdiction to determine the applicability of any penalty that relates to an adjustment to a partnership item.

III. *Jurisdiction To Enter Stipulated Decision as Written With Respect to Partnership Items*

A. *Provisions of the Stipulated Decision*

The first decision paragraph in the stipulated decision gives specific effect to four of the five scheduled adjustments made by the FPAA: Loss, Other Deductions, Distributions of Property Other Than Money, and Capital Contributions, omitting any reference to "Outside Partnership Basis". The $242,186 loss and the $11,314 of other deductions flowed directly through to the purported partners' returns. The deficiencies resulting from those adjustments do not require any facts to be determined in a partner-level proceeding. Therefore respondent may assess those deficiencies and the penalties applicable thereto without sending a statutory notice of deficiency.

The third and fourth decision paragraphs apply accuracy-related penalties to any underpayment of tax attributable to the specified adjustments of partnership items made by the first decision paragraph. The third decision paragraph applies the 40% gross valuation (basis) misstatement penalty to the portion of any underpayment attributable to the gross valuation misstatement, as provided by section 6662(a), (b)(3), (e), and (h), attributable to overstating the capital contributions claimed to have been made to the purported partnership. The fourth decision paragraph provides that any additional underpayment of tax that may be attributable to the adjustments to zero of the loss, other deductions, and distributions is attributable to negligence or disregard of rules or regulations under section 6662(a), (b)(1), and (c) or a substantial understatement of income tax under section 6662(a), (b)(2), and (d) and applies the 20% penalty to that underpayment.

By the second decision paragraph stating that the FPAA is correct the parties adopt and incorporate all determinations made in the FPAA, including the initial FPAA determination that Tigers Eye is disregarded for Federal income tax purposes. Notwithstanding that the first and third decision paragraphs omit any reference to "Outside Partnership Basis", the parties agree that the second decision paragraph, in determining that the FPAA is correct, implicitly upholds the FPAA's adjustment of outside partnership basis to zero and the application of the 40% penalty to the portion of any underpayment attributable to the gross valuation misstatement as provided by section 6662 (a), (b)(3), (e), and (h). Consequently, the 40% penalty will apply to the portion of the underpayment attributable to the gross misstatement of basis in the distributed property (the basis participating partner claimed was its outside basis in its partnership interest in Tigers Eye). [35]

---

[35] This interpretation of the stipulated decision, agreed to by the parties before the Court of Appeals for the D.C. Circuit issued *Petaluma II*, is consistent with the holding of *Petaluma I* that the Court has jurisdiction in the partnership-level proceeding to determine outside basis and the applicability of penalties thereto, and the positions taken by the parties in addressing participating partner's motion to revise the stipulated decision.

B. *Disregard of Tigers Eye*

By the second decision paragraph of the stipulated decision, the parties have agreed and the Court has decided that the FPAA that is the subject matter of this case is correct. The decision upholds the initial FPAA determination that the partnership is a sham, lacks economic substance, and is disregarded for Federal income tax purposes. Thus, the stipulated decision reflects the parties' agreement that for Federal income tax purposes Tigers Eye does not exist and is not a partnership. Pursuant to section 6233 and the regulations thereunder, we have jurisdiction to make those determinations as well as determinations with respect to all items of Tigers Eye that would be partnership items, as defined in section 6231(a)(3) and section 301.6231(a)(3)–1, Proced. & Admin. Regs., if it had been a partnership. Pursuant to section 301.6233–1T(a) and (c), Temporary Proced. & Admin. Regs., *supra*, the TEFRA procedures apply to Tigers Eye, its items, and all persons holding interests in Tigers Eye, and the Court has jurisdiction under section 6226(f) to determine the applicability of any penalty that relates to an adjustment to an item of Tigers Eye. That conclusion is consistent with the holding of the Court of Appeals in the *Petaluma* case. *Petaluma II*, 591 F.3d at 652–654; *Petaluma I*, 131 T.C. at 92–97.

C. *Items of Tigers Eye*

The Court has jurisdiction to make determinations with respect to all of Tigers Eye's items, including the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, and deduction related to the transactions conducted by Tigers Eye. *See* sec. 301.6233–1T(a), (c), Temporary Proced. & Admin. Regs., *supra*; sec. 301.6231(a)(3)–1(b), Proced. & Admin. Regs. The determination that Tigers Eye is a sham and lacks economic substance is a factual determination that underlies the characterization of items of income, gain, and loss related to its transactions. Because Tigers Eye is a sham and had no real business purpose, it merely acted as nominee and agent for the option partners and the items related to the transactions involving the option spreads and purchases and distribution of stock and foreign

currency are characterized as such. *Cf. Commissioner v. Bollinger*, 485 U.S. at 344–345. We have jurisdiction to make those factual and legal determinations in this partnership (entity)-level proceeding and to determine the items of Tigers Eye that resulted from its acting as nominee or agent for the option partners.

We also have jurisdiction to determine that items that purport to be partnership items do not exist and to adjust all such items to zero so that a computational adjustment can be made to reflect the disallowance of any loss or credit claimed by a purported partner with respect to the nonexistent Tigers Eye partnership. The items reported on the partnership return that were adjusted to zero in the first decision paragraph are such items.

D. *First Decision Paragraph*

By the first decision paragraph, the loss, deductions, capital contributions, and distributions reported by Tigers Eye on the partnership return are items adjusted to zero. Tigers Eye's purported partners claimed their proportionate shares of the loss and deductions on their returns. The option partners also claimed huge losses on the sale of the distributed property, which they characterized as property distributed to them in liquidation of their interests in a partnership purportedly acquired by contributing property to the purported partnership. The parties' agreement to the Court's determination that Tigers Eye is not a partnership for Federal income tax purposes "will serve as a basis for a computational adjustment reflecting the disallowance of *any* loss claimed by a purported partner with respect to that entity" (emphasis added), i.e., Tigers Eye, including the loss claimed on the sale of property purported to have been distributed to a purported partner on liquidation of a nonexistent partnership interest in Tigers Eye. *See* sec. 301.6233–1T(a), Temporary Proced. & Admin. Regs., *supra*. Pursuant to section 6233 and its implementing regulation, we have jurisdiction to determine that all items of Tigers Eye purported to be partnership items are adjusted to zero. The loss, other deductions, capital contributions, and distributions are identified in section 301.6231(a)(3)–1(a)(1)(i), (4), Proced. & Admin. Regs., as partnership/entity items that the Secretary deter-

mined are more appropriately decided at the partnership level than at the partner level.

### 1. *Partnership Loss and Deductions*

The Secretary determined in section 301.6231(a)(3)–1(a)(1)(i), Proced. & Admin. Regs., that the partnership aggregate and each partner's share of items of income, gain, loss, deduction, or credit of the partnership are partnership items more appropriately determined at the entity level. The $242,186 partnership loss and the $11,314 partnership other deductions are partnership items. We have jurisdiction to determine that, because Tigers Eye is not a partnership, Tigers Eye did not have any partnership loss or partnership deductions. *See* sec. 301.6233–1T(a), Temporary Proced. & Admin. Regs., *supra*. Thus, we have jurisdiction to adjust to zero the $242,186 loss and the $11,314 deduction, as provided in the first decision paragraph of the stipulated decision.

### 2. *Contributions and Distributions*

In section 301.6231(a)(3)–1(a)(4), Proced. & Admin. Regs., the Secretary decided that items relating to contributions to the partnership and distributions from the partnership are partnership items

to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner * * *

Thus, the Secretary decided that items related to contributions to the partnership and distributions from the partnership that the partnership is required to determine for its books and records or for providing information to its partners are partnership items.

### a. *Items Related to Contributions*

In section 301.6231(a)(3)–1(c)(2), Proced. & Admin. Regs., the Secretary provided the following illustrations of additional determinations the partnership is required to make for purposes of its books and records or for purposes of furnishing information to a partner that relate to contributions:

(2) *Contributions*.—For purposes of its books and records, or for purposes of furnishing information to a partner, the partnership needs to determine:

(i) The character of the amount received from a partner (for example, whether it is a contribution, a loan, or a repayment of a loan);

(ii) The amount of money contributed by a partner;

(iii) The applicability of the investment company rules of section 721(b) with respect to a contribution; and

(iv) The basis to the partnership of contributed property (including necessary preliminary determinations, such as the partner's basis in the contributed property).

To the extent that a determination of an item relating to a contribution can be made from these and similar determinations that the partnership is required to make, therefore, that item is a partnership item. To the extent that the determination requires other information, however, that item is not a partnership item. * * *

Under the regulation, for purposes of keeping its books and records and providing information to the option partners as a purported partnership, Tigers Eye was required to determine (1) the amount of money and (2) the character and basis of the paired options received from the purported partners. Tigers Eye needed to determine its basis in the paired options in order to compute the losses realized on the unwinding of the option spreads, which were part of the loss claimed on the partnership return. In determining the basis of the paired options, Tigers Eye needed to determine each partner's basis in the contributed property, including the amount of the liabilities to which the property was subject. Partnership items include the partnership aggregate and each partner's share of partnership liabilities, including determinations as to the amounts of the liabilities, whether the liabilities are nonrecourse, and increases or decreases during the taxable year. Sec. 301.6231(a)(3)–1(a)(1)(v), Proced. & Admin. Regs.

Tigers Eye was also required to determine the contributions for purposes of determining the partners' percentage interests in the purported partnership, the partners' shares of the partnership loss and deductions, and the amounts to which the purported partners were entitled on the purported liquidation of their interests.

Tigers Eye was required to make the same determinations for purposes of its books and records and providing information to the option partners with respect to the money and property it received in conducting the transactions as

nominee or agent for the option partners. Tigers Eye needed to account for expenses it incurred on behalf of the option partners, the amounts received and expended on the unwinding of the paired options, and the costs of the foreign currency and stock purchased on behalf of the option partners. Tigers Eye needed to provide that information to the option partners so that they could report their gain or loss on the unwinding of the paired options and determine their bases in the foreign currency and stock purchased on their behalves.

b. *Items Related to Distributions*

In section 301.6231(a)(3)–1(c)(3), Proced. & Admin. Regs., the Secretary provided the following illustrations of additional determinations the partnership is required to make for purposes of its books and records, or for purposes of furnishing information to a partner that relate to distributions:

(3) *Distributions*.—For purposes of its books and records, or for purposes of furnishing information to a partner, the partnership needs to determine:

(i) The character of the amount transferred to a partner (for example, whether it is a distribution, a loan, or a repayment of a loan);

(ii) The amount of money distributed to a partner;

(iii) The adjusted basis to the partnership of distributed property; and

(iv) The character of partnership property (for example, whether an item is inventory or a capital asset).

To the extent that a determination of an item relating to a distribution can be made from these and similar determinations that the partnership is required to make, therefore, that item is a partnership item. To the extent that the determination requires other information, however, that item is not a partnership item. Such other information would include those factors used in determining the partner's basis for the partnership interest that are not themselves partnership items, such as the amount that the partner paid to acquire the partnership interest from a transferor partner if that transfer was not covered by an election under section 754.

Under the regulation, for purposes of keeping its books and records and providing information to the option partners as a purported partnership, Tigers Eye needed to determine the character of the amount distributed to an option partner; i.e., that it was a distribution in liquidation of the partner's interest in the purported partnership. Having made that determination, Tigers Eye needed to determine the amounts to be distributed to the purported partners on liquidation of their interests. Tigers Eye needed to select the property to be

distributed, determine its basis in the property, and remove it as an asset on its books. Tigers Eye needed to provide that information to the option partners so that they could properly determine their bases in the distributed property.

Tigers Eye was required to make the same determinations for purposes of its books and records and providing information to the option partners with respect to the property it distributed to them in conducting the transactions as nominee or agent on their behalves. Tigers Eye was required to determine the character of property distributed to an option partner; i.e., that it was a distribution of the property Tigers Eye purchased as nominee or agent of the option partners. Having made that determination, Tigers Eye needed to identify the property to be distributed, determine its basis in the property, and account for it on its books. Tigers Eye needed to provide that information to the option partners so that they could properly determine their bases in the distributed property.

### 3. *Adjustment of Items to Zero*

Because Tigers Eye is not a partnership for Federal income tax purposes, it had no partnership items, there was no partnership loss, and there were no partnership deductions, no contributions to the purported partnership, and no distributions from a partnership to its purported partners. Adjustment of those items to zero is appropriate. The loss, deductions, capital contributions, and distributions that are adjusted to zero pursuant to the first decision paragraph are partnership items that this Court has jurisdiction to decide under section 6233 and section 301.6233–1T(a), Temporary Proced. & Admin. Regs., *supra*.

### E. *Second Decision Paragraph*

By the second decision paragraph the parties adopt and incorporate all determinations made in the FPAA, including the disregard of Tigers Eye, the adjustment of outside basis to zero, and the application of the 40% penalty to the underpayment attributable to gross valuation/basis misstatement. Participating partner asserts that under *Petaluma II* the Court does not have jurisdiction to decide outside basis or the applicability of the 40% penalty to an underpayment of

tax attributable to an overstatement of the basis in the distributed property, which participating partner attributed to its outside basis in the partnership. Participating partner concludes, therefore, that the Court must revise the second decision paragraph accordingly. However, for the reasons set forth below, we conclude that the option partners' bases in the distributed property as well as their outside bases (or lack thereof) in their purported partnership interests are partnership/entity items of Tigers Eye that we have jurisdiction under sections 6233 and 6231(a)(3) and their regulations to decide in this partnership/entity-level proceeding.

1. *Basis in Property Distributed by Disregarded Entity*

Pursuant to section 6233 and its regulation, we have jurisdiction to determine the items of Tigers Eye acting as nominee for the option partners. Tigers Eye was required to make determinations for purposes of its books and records and for providing information to the option partners with respect to the transactions it conducted as nominee or agent on their behalves.

An option partner is required to take his basis in the distributed property into account in computing his gain or loss on the sale of the property and computing his income tax taking into account that gain or loss. The Secretary has determined in section 301.6231(a)(3)–1(a)(4), Proced. & Admin. Regs., that items relating to distributions that the partnership is required to make for purposes of its books and records or for providing information to a partner are "more appropriately determined at the partnership level" and are partnership items. The regulation specifically provides that, for purposes of its books and records and providing information to a partner, the partnership needs to determine "[t]he adjusted basis to the partnership of distributed property". Sec. 301.6231(a)(3)–1(c)(3)(iii), Proced. & Admin. Regs.

Tigers Eye needed to account for the money it received from the option partners, the expenses it incurred on behalf of the option partners, the amounts received and spent on the receipt and unwinding of the paired options, and the cost of the foreign currency and stock purchased on behalf of the option partners. Tigers Eye needed to provide that information to the option partners so that they could properly report

their gain or loss on the unwinding of the paired options and determine their bases in the foreign currency and stock purchased on their behalves. Tigers Eye was required to determine the character of property distributed to an option partner; i.e., that it was a distribution of the property Tigers Eye purchased as nominee or agent on behalf of the option partners. Tigers Eye needed to identify the property to be distributed, determine its basis in the property (which, in view of its nominee-agent status, is participating partner's basis in the property) and account for the property on its books. Because Tigers Eye did not separately account for the transactions on behalf of the various option partners, the items are entity items (partnership items) that we have jurisdiction to decide in this entity/partnership-level proceeding.

Although the FPAA Schedule of Adjustments adjusted partnership distributions to zero, it did not mention or make any specific adjustment to the bases of the foreign currency and stock received by the option partners. However, pursuant to section 6226(f), regardless of whether the Commissioner specifically made adjustments in the FPAA, the Court has jurisdiction to determine "all partnership items of the partnership for the partnership taxable year to which the notice of FPAA relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item". Tigers Eye's basis in the foreign currency and stock (which is participating partner's basis) is a partnership/entity item we have jurisdiction to decide in this case. *See* sec. 301.6231(a)(3)–1(c)(3)(iii), Proced. & Admin. Regs. Participating partner acknowledges that the distributions reported on the partnership return filed by Tigers Eye is Tigers Eye's cost basis in the distributed property. Thus, the distributions shown on the Schedule K–1 issued to each option partner is Tigers Eye's cost basis in the property distributed to such partner.

2. *Outside Basis*

Participating partner and petitioner agree that the second decision paragraph, in determining that the FPAA is correct, upholds the FPAA's adjustment of outside partnership basis to zero. Participating partner asserts that the stipulated deci-

sion must be revised because under *Petaluma II* this Court lacks jurisdiction to make adjustments to outside basis. However, for the reasons set forth below, we do not believe the holding of the Court of Appeals on that issue in *Petaluma II* serves as binding precedent under the intervening opinion of the Supreme Court in *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. ___, 131 S. Ct. 704 (2011), and the recently filed opinion of the Court of Appeals for the D.C. Circuit, *Intermountain Ins. Serv. of Vail, LLC v. Commissioner*, 650 F.3d 691 (D.C. Cir. 2011).

### a. *Petaluma Superseded by Mayo Found. and Intermountain: TEFRA Regulations Must Be Applied*

The adjustments made in the Tigers Eye FPAA are similar to those made in the *Petaluma* FPAA.[36] In *Petaluma I* the Tax Court held that (1) the partnership was a sham and was disregarded for Federal tax purposes; (2) the purported partners had no bases in their interests in the disregarded partnership; and (3) a valuation misstatement penalty under section 6662(b)(3) applied to underpayments related to the gross misstatement of the partners' outside bases. In deciding the second issue, the Court held that although in some cases a partner's outside basis may be an affected item, under the regulations defining partnership items the outside basis of the Petaluma partners was a partnership item the Court had jurisdiction in the partnership-level proceeding to decide.

In *Petaluma II*, the Court of Appeals affirmed the *Petaluma I* holding that the determination that the partnership is a sham and is disregarded for Federal tax purposes is a partnership item the Tax Court has jurisdiction to decide in the partnership-level proceeding. In so doing, the Court of Appeals held that the Tax Court's jurisdiction in the case was governed by section 6233. The Court of Appeals then meticulously applied section 6231(a)(3) and the regulations

---

[36] The FPAA in *Petaluma*, although more detailed in some respects, is substantially similar to the FPAA in the case at hand, both with respect to the adjustments, including outside basis, capital contributions, and distributions of property other than money, and the Exhibit A—Explanation of Items. However, the adjustments in *Petaluma* do not include any other partnership items that would directly flow through from the partnership return to the returns of the partners to create any deficiency. Unlike the case at hand, the FPAA adjustments in *Petaluma* do not include the zeroing out of an overall loss; it is a small amount of net income that is zeroed out. Nor do the adjustments in *Petaluma* zero out or even refer to an "Other Deductions" item.

thereunder to decide that the existence or nonexistence of a partnership is a partnership item.

Next, contrary to the Tax Court's holding in *Petaluma I* that under the regulations outside basis was a partnership item, the Government conceded that outside basis was not a partnership item. The Court of Appeals accepted the Government's concession without any discussion of section 6233 or 6231 or the regulations under section 6231 upon which the Tax Court had relied. The Government argued that the Tax Court had jurisdiction in the partnership proceeding to determine the partners' outside bases as affected items whose elements are determined mainly from partnership items. The Court of Appeals rejected that argument and held that the Tax Court did not have jurisdiction in the partnership proceeding to determine the partners' outside bases, an affected item, despite the disregard of the partnership. Consequently, the Court of Appeals agreed with Petaluma that "since the Tax Court lacked jurisdiction to determine outside basis, it also lacks jurisdiction to determine that penalties apply with respect to outside basis because those penalties do not relate to an adjustment to a partnership item". *Petaluma II*, 591 F.3d at 655.

After *Petaluma II* was issued, the Supreme Court in *Mayo Found.*, 562 U.S. \_\_\_\_, 131 S. Ct. 704, made it clear that Federal courts must defer to regulations interpreting the Code that satisfy the two-step *Chevron* standard. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–843 (1984). More recently, in *Intermountain Ins. Serv. of Vail, LLC v. Commissioner*, 650 F.3d at 691, the Court of Appeals for the D.C. Circuit held that the deference given to regulations under *Mayo Found.* requires the Court to apply the definitions of statutory terms provided in valid TEFRA regulations rather than follow earlier caselaw.

The jurisdictional holdings of *Petaluma II* on outside basis and accuracy-related penalties have their genesis in the Government's concession that outside basis was not a partnership item. The Court of Appeals summarily accepted that concession without any reference to section 301.6233–1T, Temporary Proced. & Admin. Regs., *supra*, or section 301.6231(a)(3)–1, Proced. & Admin. Regs. In contrast, the Court of Appeals discussed and applied sections 6233 and 6231(a)(3), section 301.6233–1T(a), Temporary Proced. &

Admin. Regs., *supra*, and section 301.6231(a)(3)–1, Proced. & Admin. Regs., in affirming our holding in *Petaluma I* that disregard of the partnership is a partnership item.

Because the Court of Appeals did not consider the regulation in concluding in *Petaluma II* that outside basis is an affected item, we believe that its decision on the outside basis issue in *Petaluma II* has been superseded by the intervening opinions of the Supreme Court in *Mayo Found.* and the Court of Appeals in *Intermountain*. *Intermountain* requires us to apply the TEFRA regulations rather than follow any contrary holding in *Petaluma II*, unless we hold the regulation to be invalid under the two-step *Chevron* standard as mandated by the Supreme Court in *Mayo Found.*

If, under the applicable regulations, outside basis can be a partnership item, as we believe it to be generally, and more particularly when the entity is disregarded for Federal income tax purposes, acceptance of the Government's concession effectively invalidates the regulation. Consequently, we will follow the Supreme Court's command in *Mayo Found.* and apply the TEFRA regulations rather than hold them invalid or inapplicable. In determining the validity of a regulation, we are not bound to follow *Petaluma II* where the Court of Appeals did not specifically consider the applicability of the regulation in deciding the issue. *See Intermountain Ins. Serv. of Vail, LLC v. Commissioner*, 650 F.3d at 702. We begin by identifying the factors that determine outside basis in a valid partnership, so as to set the stage for the corresponding analysis that applies when the partnership is disregarded.

b. *Determination of Outside Basis: General Rule Under Section 705(a)*

Section 705(a) states the general rule for determining the adjusted basis of a partner's interest in a partnership. In relevant part, section 705(a) provides that the adjusted basis of a partner's interest in a partnership is his original basis as determined under section 722 (relating to contributions to a partnership) or section 742 (relating to transfers of partnership interests) increased by (1) the amount of money and his basis in property subsequently contributed to the partnership and (2) his distributable share of the income of the partner-

ship and decreased (but not below zero) by (1) the amount of money and the partnership's adjusted basis in property distributed to the partner in a nonliquidating distribution to the partner and (2) his distributable shares of partnership losses and expenditures. Secs. 705(a), 722, 732(a). The original outside basis of a partner who obtains an interest in a partnership by contribution to the partnership is equal to the amount of money contributed plus his adjusted basis in any property contributed. Sec. 722; sec. 1.722–1, Income Tax Regs. The original outside basis of a partner who obtains his interest in the partnership by purchase is his cost basis equal to the purchase price. Sec. 742; sec. 1.742–1, Income Tax Regs.

The partnership's assumption of a partner's liability and a reduction of a partner's share of the liabilities of the partnership are treated as distributions of money. Sec. 752(b). The partner's assumption of a liability of the partnership and an increase in a partner's share of the liabilities of the partnership are treated as contributions of money. *Id.* If, as a result of a single transaction, a partner incurs both an increase and a decrease in his share of partnership liabilities, only the net increase is treated as a contribution or the net decrease is treated as a distribution. Sec. 1.752–1(f), Income Tax Regs. Thus, if property contributed to the partnership is subject to indebtedness or if liabilities of the partner are assumed by the partnership, the increase and decrease in the partner's basis from the deemed contributions and distributions of money are netted and the contributing partner's outside basis is reduced by the portion of the indebtedness allocated to the other partners. Sec. 1.722–1, Income Tax Regs.

The provisions governing the determination of outside basis are intended to equate the aggregate of the partnership's inside bases in its assets with the aggregate of its partners' outside bases in their partnership interests. *Salina P'ship LP v. Commissioner*, T.C. Memo. 2000–352 (citing 1 William S. McKee et al., Federal Taxation of Partnerships and Partners, par. 6.01, at 6–3 (3d ed. 1997)). The carryover-basis rule in section 722 generally results in a matching of inside and outside bases upon the formation of a partnership. *See Coloman v. Commissioner*, 540 F.2d 427, 429 (9th Cir. 1976), *aff'g* T.C. Memo. 1974–78. The adjustments to basis to account for income and expenses from partnership oper-

ations under section 705(a) generally preserve the equivalence of inside and outside bases. *Id.* Finally, the practical impact of the basis adjustment prescribed in section 752(a) to reflect increases and decreases in a partner's share of partnership liabilities has been described as follows:

If a partnership borrows money, the basis of its assets increases by the amount of cash received, even though the receipt of the borrowed funds is not income. By treating the partners as contributing cash in an amount equal to their shares of the debt, inside/outside basis equality is preserved and distortions are avoided. If a liability for borrowed money were not added to the partners' bases, they could be taxed on a distribution of the borrowed cash even though there is no gain inherent in the partnership's assets. A similar result could occur if a partnership incurs a purchase money liability to acquire property, since the liability is added to the partnership's basis in the property. [1 McKee, *supra*, para. 7.01[1], at 7–2.]

*See Laney v. Commissioner*, 674 F.2d 342, 345–346 (5th Cir. 1982), *aff'g in part, rev'g in part on another ground* T.C. Memo. 1979–491. The preamble to section 1.752–1T, Temporary Income Tax Regs., 53 Fed. Reg. 53143 (Dec. 30, 1988), states in pertinent part:

The allocation of partnership liabilities among the partners serves to equalize the partnership's basis in its assets ("inside basis") with the partners' bases in their partnership interests ("outside basis"). The provision of additional basis to a partner for the partner's partnership interest will permit the partner to receive distributions of the proceeds of partnership liabilities without recognizing gain under section 731, and to take deductions attributable to partnership liabilities without limitation under section 704(d) (which limits the losses that a partner may claim to the basis of the partner's interest in the partnership). By equalizing inside and outside basis, section 752 simulates the tax consequences that the partners would realize if they owned undivided interests in the partnership's assets, thereby treating the partnership as an aggregate of its partners.

The determination of the partners' shares of partnership liabilities under section 752 is also complex, requiring a determination of each partner's liability for recourse debt and the proper allocation of nonrecourse debt. See secs. 1.752–1 through 1.752–5, Income Tax Regs.

c. *Determination of Outside Basis: Alternative Rule Under Section 705(b)*

Section 705(b) authorizes the Secretary to prescribe regulations under which the adjusted basis of a partner's interest

in a partnership may be determined by reference to the partner's proportionate share of the adjusted basis of partnership property that would be distributable upon a termination of the partnership. The regulations promulgated to implement this section, *see* sec. 1.705–1(b), Income Tax Regs., provide that an alternative method (alternative rule) may be used in circumstances where (a) a partner cannot practicably apply the general rule set forth in section 705(a) and section 1.705–1(a), Income Tax Regs., or (b) from a consideration of all the facts, the Commissioner reasonably concludes that the result will not vary substantially from the result obtainable under the general rule.

### d. *Outside Basis Is a Partnership Item*

Under section 6231(a)(3), a partnership item must be (1) required to be taken into account for the partnership's taxable year under any provision of subtitle A, governing income taxes, and (2) identified by regulation as "more appropriately determined at the partnership level".

### i. *Required To Be Taken Into Account Under Subtitle A*

"A partner is required to determine the adjusted basis of his interest in a partnership only when necessary for the determination of his tax liability or that of any other person." Sec. 1.705–1(a)(1), Income Tax Regs. The regulation provides that it is necessary to determine a partner's outside basis (1) at end of a taxable year to determine the extent to which the partner may deduct his share of partnership loss or deductions and (2) on the date of sale or liquidation of his interest in the partnership. *Id.*

As the Court of Appeals stated in deciding that the validity of a partnership is a partnership item in *Petaluma II*, 591 F.3d at 653:

We have little difficulty concluding that application of the income tax provisions of Subtitle A to the tax liability of a taxpayer who receives income from a purported partnership entails a determination of the validity of that partnership. As the Eighth Circuit has stated, "When filling out individual tax returns, the very process of *calculating an outside basis*, reporting a sales price, and claiming a capital loss following a partnership liquidation presupposes that the partnership was valid." *RJT Investments X v. Comm'r*, 491 F.3d 732, 736 (8th Cir. 2007). Thus the first requirement of the test is met. [Emphasis added.]

Outside basis is required to be taken into account in computing the income tax liability from the sale of property purportedly received by the taxpayer from a partnership in liquidation of his interest in the purported partnership. Thus the first requirement of section 6231 is satisfied.

ii. *More Appropriately Determined at the Partnership Level: Outside Basis Determined Under the General Rule*

Under statutory authority, the Secretary has decided that items related to contributions to the partnership and distributions from the partnership that the partnership is required to determine for its books and records or for providing information to its partners are partnership items. Sec. 301.6231(a)(3)–1(a)(4), Proced. & Admin. Regs. The Secretary has also decided that, to the extent that a determination of an item relating to contributions and distributions can be made from the determination of contributions, distributions, and similar determinations that the partnership is required to make, that item is a partnership item. Sec. 301.6231(a)(3)–1(c)(2) and (3), Proced. & Admin. Regs. Conversely, to the extent that the determination of such an item requires other information, that item is not a partnership item. *Id.*

The regulation recognizes that a partner's basis in his partnership interest is an item relating to distributions and, in many instances, that the determination of that outside basis under the general rule of section 705(a) may be made solely from the determination of contributions, distributions, and similar determinations that the partnership is required to make—the partner's share of items of partnership income, credit, loss, deduction, and liabilities. If the partner has contributed property to the partnership that is subject to indebtedness, the contributing partner's outside basis is reduced by the portion of the indebtedness allocated to the other partners. Sec. 1.722–1, Income Tax Regs. Determination of the amounts and nature of those liabilities, whether they are nonrecourse or contingent, and each partner's share of each liability is a partnership item. Sec. 301.6231(a)(3)–1(a)(v), Proced. & Admin. Regs. A partner's share of partnership liabilities is determined under the complex regulations promulgated under section 752. Section 1.752–4(d), Income Tax Regs., requires a partner's share of liabilities to be cal-

culated only when necessary to determine the tax liability of the partner, such as at the end of the partnership taxable year or when a partner sells or liquidates his partnership interest. The partnership is required to inform the partners of their shares of partnership liabilities so the partners can determine the extent to which they may deduct their shares of partnership loss or deductions and determine the amounts of deemed distributions or contributions of money from any increase or decrease in their shares of the partnership liabilities. In those circumstances, outside basis is a partnership item.

Under the regulation, a partner's outside basis is not a partnership item (i.e., it is an *affected item*) *only* when and to the extent the determination requires other information. Sec. 301.6231(a)(3)–1(c)(3), Proced. & Admin. Regs. "Such other information would include those *factors* used in determining the *partner's basis for the partnership interest* that are not themselves partnership items." *Id.* (emphasis added). Examples of such factors would include the amount the partner paid to acquire his partnership interest from a transferor partner and that the transfer was not covered by an election under section 754. Sec. 301.6231(a)(3)–1(c)(2) and (3), Proced. & Admin. Regs.

When a partner acquires an interest in the partnership by purchase, the partnership may make optional adjustments to the basis of partnership property if an election is made under section 754. Under section 301.6231(a)(3)–1(a), Proced. & Admin. Regs., the optional adjustment, including the determination of the partner's initial cost basis in the partnership, is a partnership item, and the determination of the partner's adjusted outside basis can be made from the determination of distributions, contributions, and similar determinations, including the partner's initial cost basis, that the partnership is required to make. In that case, the partner's adjusted outside basis is a partnership item under the regulation. If no election is made under section 754, the determination of the partner's initial basis is not one that the partnership is required to make. Pursuant to section 301.6231(a)(3)–1(a), Proced. & Admin. Regs., to the extent the determination of the partner's adjusted basis requires information regarding the amount paid for the interest, it is not a partnership item. To that extent, it is an affected item. *See* sec. 301.6231(a)(5)–

1T(b), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987).

iii. *More Appropriately Determined at the Partnership Level: Outside Basis Determined Under Alternative Rule*

When a partner's outside basis is determined under the alternative rule of section 705(b), his basis is equal to his share of the adjusted basis of partnership property that would be distributable to him upon termination of the partnership. If the partnership makes a distribution to a partner in liquidation of the partner's interest in the partnership, the partnership's basis in the distributed property is a partnership item. Sec. 301.6231(a)(3)–1(c)(3), Proced. & Admin. Regs. The determination of outside basis under the alternative rule of section 705(b) may be made solely from the determination of distributions that the partnership is required to make when property is distributed in liquidation of a partner's interest in the partnership. In determining the amount of the distribution, the partnership must determine the partner's interest in the partnership and identify the property to be distributed and its basis in the property for purposes of its books and records and for providing information to the partner. Thus, when outside basis is determined under the alternative rule, it is a partnership item.

iv. *More Appropriately Determined at the Partnership Level: Outside Basis When the Partnership Is Disregarded*

Section 301.6231(a)(3)–1(c)(1), Proced. & Admin. Regs., explicitly states that the illustrations therein are not exhaustive; there may be additional determinations of items relating to contributions and distributions that the partnership is required to make for purposes of its books and records or providing information to its partners. The partnership's existence for Federal income tax purposes is a determination the partnership is required to make that also relates to the proper tax treatment of contributions and distributions. If, as here, the parties agree and the Court determines on grounds of sham or lack of economic substance that the entity is not a partnership, then the purported partners are not partners

and never acquired any interests in a partnership and the transactions between the entity and the purported partners are not treated as transactions between a partnership and its partners. If the partnership does not exist for Federal tax purposes, it follows that there were no contributions from a partner to a partnership, no distributions from a partnership to a partner, no items of partnership income, partnership deduction, or partnership loss, no partnership liabilities or partnership property, nor any adjusted basis in partnership property. Solely from these determinations, it can be determined with absolute certainty that there can be no outside basis in the nonexistent partnership interest. No additional facts are required to determine the absence of an outside basis, and no additional facts could possibly alter that conclusion. That being the case, the above regulation makes outside basis (or the lack thereof) a partnership item if the partnership is disregarded. Indeed, in holding that the determination of the existence of a valid partnership is a partnership item, the Court of Appeals for the D.C. Circuit observed in *Petaluma II* that "'*the very process of calculating an outside basis*, reporting a sales price, and claiming a capital loss following a partnership liquidation presupposes that the partnership was valid.'" *Petaluma II*, 591 F.3d at 653 (quoting *RJT Invs. X v. Commissioner*, 491 F.3d at 736 (emphasis added)).

Moreover, pursuant to section 301.6233–1T(a), Temporary Proced. & Admin. Regs., *supra*, the determination that the entity is not a partnership serves as a basis for a computational adjustment reflecting the disallowance of any loss or credit claimed by a purported partner with respect to that entity, including the losses reported by the option partners on their sales of property purported to have been distributed to them in liquidation of their purported partnership interests. We have jurisdiction under section 6233 and its regulations to make all adjustments of items necessary to make that computational adjustment, including taking account of the absence of outside basis by adjusting it to zero.

e. *Misapplication of Dial USA, Inc. v. Commissioner*

Citing *Dial USA, Inc. v. Commissioner*, 95 T.C. 1, 4–6 (1990), and section 301.6231(a)(5)–1T(b), Temporary Proced.

& Admin. Regs., *supra*, this Court has held in some cases that a partner's basis in his partnership interest is an affected item. *See, e.g.*, *Meruelo v. Commissioner*, 132 T.C. 355, 367 (2009); *Gustin v. Commissioner*, T.C. Memo. 2002–64. However, the cited regulation does not define partnership item; it defines affected items and provides that "A partner's basis in his interest in the partnership is an affected item *to the extent it is not a partnership item*." Sec. 301.6231(a)(5)–1T(b), Temporary Proced. & Admin. Regs. (emphasis added). None of the immediately above-cited cases examined the antecedent regulation defining "partnership item" to determine the extent to which or the circumstance in which a partner's basis in his partnership interest is a partnership item.

Moreover, *Dial* involved the Court's jurisdiction to determine *subchapter S items* at the corporate level under the unified subchapter S audit and litigation provisions of the Subchapter S Revision Act of 1982 (SSRA), Pub. L. No. 97–354, sec. 4(a), 96 Stat. at 1691. The SSRA provisions, enacted shortly after TEFRA and set forth at former sections 6241 through 6245, have since been repealed by the Small Business Job Protection Act of 1996, Pub. L. No. 104–188, sec. 1307(c)(1), 110 Stat. at 1781, applicable to tax years beginning after December 31, 1996. Under SSRA, the TEFRA provisions that relate to partnership items and the judicial determination of partnership items were made applicable to subchapter S items *except to the extent modified or made inapplicable by regulations*. Sec. 6244. Subchapter S items were defined in section 6245 as "any item of an S corporation to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle such item is more appropriately determined at the corporate level than the shareholder level." The Secretary identified subchapter S items in section 301.6245–1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 3003 (Jan. 30, 1987). The subchapter S items in that regulation are very similar to the partnership items identified in section 301.6231(a)(3)–1T, Temporary Proced. & Admin. Regs., *supra*, and they include items relating to contributions and distributions to the extent they can be made from those determinations and similar determinations that the corporation is required to make. The respective regulations, however, are markedly different from each other with

respect to a shareholder's basis in the S corporation and a partner's basis in his partnership interest. The flush language of section 301.6245–1T(c)(3), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 3004 (Jan. 30, 1987), provides:

To the extent that the determination requires other information, however, that item is not a subchapter S item. *Such other information would include the determination of a shareholder's basis in the shareholder's stock* or in the indebtedness of the S corporation to the shareholder. [Emphasis added.]

By contrast, the flush language of section 301.6231(a)(3)–1(c)(3), Proced. & Admin. Regs., provides:

To the extent that that determination requires other information, however, that item is not a partnership item. *Such other information would include those factors used in determining the partner's basis for the partnership interest that are not themselves partnership items, such as the amount that the partner paid to acquire the partnership interest from a transferor partner if that transfer was not covered by an election under section 754.* [Emphasis added.]

Thus, the SSRA regulations defining subchapter S items modified the TEFRA regulations that relate to partnership items, making the determination of outside basis a partnership item under certain circumstances inapplicable to subchapter S items. The shareholder's basis in the S corporation stock was solely an affected item. By contrast, a partner's basis in the partnership is an affected item only "to the extent it is not a partnership item." Sec. 301.6231(a)(5)–1T(b), Temporary Proced. & Admin. Regs., *supra*. Section 6244 made the TEFRA provisions that relate to partnership items and the judicial determination of partnership items applicable to subchapter S items. There is no statute or regulation that makes the S corporation provisions applicable to partnerships. Consequently, the holding in *Dial* that the shareholder's basis in the stock of the corporation is not a subchapter S item is inapplicable to the issue of the extent to which or circumstance in which a partner's outside basis is or may be a partnership item.

An S corporation, like a partnership, is a passthrough entity, and pursuant to section 1366(a)(1) a shareholder must take into account his or her pro rata share of the S corporation's items of income, loss, deduction, or credit. However, an S corporation is not considered an aggregate of its share-

holders—it is merely a small corporation that has elected to have *its* income taxed to its shareholders rather than at the corporate level. For that reason the provisions governing the determination of a shareholder's basis are not intended to equate the aggregate of the corporation's bases in its assets with the aggregate of its shareholders' bases in their stock in the corporation. Shareholders in S corporations have no bases in their stock attributable to any liabilities of the S corporation. However, a shareholder in an S corporation has a separate tax basis in loans the shareholder makes to the S corporation equal to the amount of the loans. Secs. 1012, 1366(d)(1)(B). Generally, under section 1367 a shareholder's tax basis in the stock in, and in the loans to, an S corporation are adjusted to reflect the shareholder's share of income, losses, deductions, and credits of the S corporation as calculated under section 1366(a)(1). If a shareholder's tax basis in his stock in an S corporation is reduced to zero by his share of the losses of the S corporation, any further share of the S corporation's losses decreases, but not below zero, the shareholder's tax basis in outstanding loans the shareholder has made to the S corporation. Sec. 1367(b)(2)(A); sec. 1.1367–2(b)(1), Income Tax Regs.

The computation of a shareholder's pro rata share of the S corporation's items of income is much simpler than the determination of a partner's distributable share of partnership items. A shareholder's pro rata share of the S corporation items is determined by assigning an equal amount to each share of outstanding stock. By contrast, a partner's distributive share of partnership items of income, loss, etc., is determined by the partnership agreement, provided the allocation has substantial economic effect. Sec. 704(a). Otherwise the partner's distributive share is determined in accordance with the partner's interest in the partnership, taking into account all the facts and circumstances. Sec. 704(b). That determination would require an analysis or determination of, inter alia, the partnership agreement, capital accounts maintained under general accounting practices, capital accounts maintained for tax purposes in cases where there is a difference, historical allocation of income and deduction items, implications of negative capital account balances, partners' liability for partnership debt, whether partnership debt is recourse or nonrecourse, partners' shares of

profit and loss, and partners' shares of partnership assets upon liquidation of the partnership.

Determination of the partners' outside bases in their interests in a partnership that is recognized for Federal income tax purposes requires complex determinations of not only the amounts of partnership items that are elements of outside basis but also the partners' shares of those amounts, which are also partnership items. Those complex determinations must be made in the partnership proceeding, and most often there are no other factors to be determined at the partner level. As the argument in *Helmer v. Commissioner*, T.C. Memo. 1975–160, raised in Son of BOSS cases such as this case demonstrates, the effect of partnership liabilities on the partners' outside bases exacerbates the complexity of computing outside basis. Determination of the partners' shares of partnership liabilities and any changes in those shares are usually unrelated to adjustments of any partnership items of income, loss, deduction, or credit. The determination of one partner's share of any partnership item affects every other partner's share of that item. The complexity of determining a partner's basis in his partnership interest justifies the Secretary's determination that outside basis is a partnership item to be determined at the partnership level to the extent it requires no additional information that must be determined at the partner level.

By comparison, the determination of a shareholder's basis in his stock in an S corporation is relatively simple once the S corporation items of income, loss, deduction, and/or credit are determined at the corporate level (either as reported on the S corporation return and accepted by the Commissioner or as a result of a corporate-level proceeding). A shareholder's share of those S corporation items can be determined at the shareholder level on the basis of the number of shares in the S corporation without affecting any other shareholder's pro rata share. His basis in any property contributed to the S corporation can also be determined by his records. The relative simplicity of computing a shareholder's basis in the stock of an S corporation justified the Secretary's determination that stock basis was an *affected item* to be determined at the shareholder level.

f. *Validity of the Regulation Under the Chevron Two-Step Standard*

We must follow the regulation, unless we hold it to be invalid under the principles of *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron*, we ask first whether Congress has addressed the precise question at issue. *Id.* at 842. Where the statutory text is ambiguous, we ask whether the agency's chosen interpretation is a "reasonable interpretation" of the enacted text. *Id.* at 844. We may not disturb the regulation unless it is "'arbitrary or capricious in substance, or manifestly contrary to the statute.'" *Mayo Found.*, 562 U.S. at ___, 131 S. Ct. at 711 (quoting *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 242 (2004)).

First, we ask whether the statute is "silent or ambiguous" on the issue in question such that the agency has room to interpret. *Chevron*, 467 U.S. at 843. In doing so, we use "traditional tools of statutory construction, including the statutory language and legislative history." *Anderson v. DOL*, 422 F.3d 1155, 1180 (10th Cir. 2005) (citing *Chevron*, 467 U.S. at 843 n.9). Thus we ask whether Congress' intent is clear with respect to whether the term "partnership item" in section 6231(a)(3) includes the partners' outside bases in the partnership. Section 6231(a)(3) defines the term "partnership item" as any item with respect to a partnership that is required to be taken into account for the partnership's taxable year under the provisions governing income taxes to the extent regulations prescribed by the Secretary provide that, for purposes of subtitle A, such item is more appropriately determined at the partnership level than at the partner level. A partner's basis in his partnership interest is an item that is required to be taken into account when the partner is determining the extent to which he may deduct partnership losses and expenses each year or the amount of income he may realize when he receives a distribution from the partnership. Therefore Congress has not excluded the partners' outside bases from the definition of partnership item.

We proceed to the second step and ask whether the regulation is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. If the Secretary's construction is reasonable, *Chevron* requires the Court to accept that

construction, even if the Secretary's "reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X*, 545 U.S. 967, 980 (2005).

Nothing in section 6231(a)(3) unambiguously forecloses the Secretary from interpreting "partnership items" as including items relating to contributions to the partnership and distributions from the partnership to the extent that the items can be ascertained from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner. They are items the partners are required to take into account in determining their income taxes for the partnership's taxable year. It is not arbitrary for the Secretary to decide that items that can be determined solely by contributions, distributions, and other similar items that the partnership is required to keep records of for purposes of its books and records or for providing information to its partners are more appropriately determined at the partnership level. They are items that can be determined only from other items that must be determined at the partnership level, and the determination with respect to one partner necessarily affects the other partners, e.g., determination of the basis in property distributed to one partner reduces the partnership basis in its remaining assets for purposes of its books and records. Determining the nature and amounts of liabilities assumed by the partnership as the result of one partner's contribution of property to the partnership affects the other partners' shares of those liabilities and their deemed contributions of money related to the increase in the partnership liabilities allocated to them.

The regulatory scheme under section 6231(a)(3) is technical and complex. We find that the Secretary considered the treatment of partnership items in a detailed and reasoned fashion before making a final decision. The regulations were promulgated pursuant to notice and comment procedures, "'a "significant" sign that a rule merits *Chevron* deference.'" *Mayo Found.*, 562 U.S. at ____, 131 S. Ct. at 714 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 230 (2001)). We note that the regulations in question are longstanding, ante-

dating TRA 1997 by 10 years or so. *See United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 204 (2001) (according "due respect to the [Internal Revenue] Service's reasonable, longstanding construction of the governing statutes and its own regulations"); *United States v. Correll*, 389 U.S. 299, 307 (1967) (the Supreme Court will defer to longstanding interpretations of the Code and regulations that reasonably "implement the congressional mandate"). We also note that the regulations in question are legislative rather than interpretive, having been promulgated pursuant to congressional direction. *See Square D Co. v. Commissioner*, 438 F.3d 739 (7th Cir. 2006), *aff'g* 118 T.C. 299, 307 (2002); *Carlos v. Commissioner*, 123 T.C. 275, 280 (2004). We hold that the regulation is valid.[37] Applying the regulation, we hold further that where a determination of a partner's basis in his interest in the partnership can be made solely from the determination of contributions, distributions, and similar determinations that the partnership is required to make and requires no other information, that item is a partnership item.

### g. *Outside Bases of Tigers Eye's Purported Partners Are Partnership Items*

In the case at hand, the option partners obtained their interests in the purported Tigers Eye partnership by contribution and not by purchase from a transferor partner. Under the regular rule of section 705(a), their outside bases would be determined solely by their purported contributions to the partnership and their shares of the loss and deductions Tigers Eye reported on the partnership return; i.e., determinations that a partnership is required to make. Participating partner premised his claimed inflated basis on (1) treating each purchased option separately from each sold

---

[37] We also observe that the regulations in question are not so controversial as the regulations currently under consideration in the cases concerning the applicability of the six-year period of limitations under secs. 6229(c)(2) and 6501(2)(1)(A) in Son of BOSS cases. *Accord Grapevine Imports Ltd. v. United States*, 636 F.3d 1368 (Fed. Cir. 2011), *rev'g* 77 Fed. Cl. 505 (2008); *see, e.g.*, *Beard v. Commissioner*, 633 F.3d 616 (7th Cir. 2011) (three-year period of limitation for assessing tax was applicable rather than six-year period under secs. 6229(c)(2) and 6501(e)(1)(A)), *rev'g* T.C. Memo. 2009–184. *Contra Home Concrete & Supply, LLC v. United States*, 634 F.3d 249 (4th Cir. 2011), *cert. granted*, 132 S. Ct. 71 (2011); *Burks v. United States*, 633 F.3d 347 (5th Cir. 2011); *Intermountain Ins. Serv. of Vail, LLC v. Commissioner*, 650 F.3d 691 (D.C. Cir. 2011), *rev'g and remanding* 134 T.C. 211 (2010), *supplementing* T.C. Memo. 2009–195; *Carpenter Family Invs., LLC v. Commissioner*, 136 T.C. 373 (2011).

option, (2) treating each purchased option as having a basis equal to the gross premium in the hands of both the Logan Trusts and Tigers Eye, (3) treating the assignment to and assumption by Tigers Eye of the contingent obligation of the sold option separately from the purchased option for purposes of section 752, and (4) disregarding the contingent obligation to satisfy the sold option in determining outside basis in the partnership under the authority of *Helmer v. Commissioner*, T.C. Memo. 1975–160.

Assuming without deciding that *Helmer* would apply if Tigers Eye had been recognized as a partnership for Federal tax purposes, the fact that the obligation to satisfy the sold option might have been contingent does not mean there would have been no deemed distribution to the option partners as a result of the partnership's assumption of the liability. At best, it means the deemed distribution could not be determined until the option was exercised or lapsed and the liability became fixed. Because the option partner could not practically apply the general rule set forth in section 705(a) and section 1.705–1(a), Income Tax Regs., his basis would have to be determined under the alternative rule by reference to his proportionate share of the adjusted basis of partnership property that would be distributable upon a termination of the partnership. *See* sec. 1.705–1(b), Income Tax Regs. The property distributed to each option partner was his share of partnership property distributed in liquidation of his interest in the partnership. Thus, had Tigers Eye been recognized as a partnership for Federal income tax purposes, the distribution reported on the Schedule K–1 issued to each option partner would have been the partnership's adjusted basis in the distributed property and would have been the option partner's outside basis in the partnership under the alternative rule.

Pursuant to the second decision paragraph, Tigers Eye is a sham and is not treated as a partnership for Federal income tax purposes. Consequently the option partners were not partners and did not acquire interests in a partnership, they made no contributions to a partnership and received no distributions from a partnership, and there were no items of partnership income, partnership deduction, or partnership loss. Consequently it follows with absolute certainty that there was no outside basis in the partnership. No additional

facts are required to determine a zero outside basis, and no additional facts could possibly alter that conclusion.

Therefore, pursuant to section 301.6231(a)(3)–1(c)(3), Proced. & Admin. Regs., the lack of outside basis is a partnership item that we have jurisdiction to decide in the partnership/entity-level proceeding, and we need not revise the stipulated decision.

## IV. *Jurisdiction To Enter Stipulated Decision as Written With Respect to Application of Penalties*

We have jurisdiction in this proceeding to determine the applicability of any penalty "which relates to an adjustment to a partnership item". Sec. 6226(f); sec. 301.6233–1T(a), Temporary Proced. & Admin. Regs., *supra*. Therefore, the stipulated decision will exceed our jurisdiction under section 6226(f) if it decides that a penalty applies to an adjustment that does not relate to a partnership item.

In *Petaluma II*, the Court of Appeals succinctly disposed of the penalties in two paragraphs. First, having accepted the Government's concession that outside basis was not a partnership item, the Court of Appeals reversed the Tax Court's holding that the 40% penalty for gross valuation misstatement applied to the partners' outside bases. The Court of Appeals agreed with Petaluma that "since the Tax Court lacked jurisdiction to determine outside basis, it also lacks jurisdiction to determine that penalties apply with respect to outside basis because those penalties do not relate to an adjustment to a partnership item."

In the second paragraph, the Court of Appeals vacated the Tax Court's Opinion and decision in *Petaluma I* upholding other accuracy-related penalties [38] and remanded the case for further proceedings on that issue. The Court of Appeals could not determine from the Tax Court's Opinion, the record, or the arguments of the parties what determination the Tax Court had made regarding the application of accuracy-related penalties. Consequently, the Court of Appeals could neither affirm nor reverse the Tax Court's decision that the accuracy-

---

[38] The decision of the Tax Court in *Petaluma I* upheld the determination in the FPAA that "the accuracy-related penalty under Section 6662(a) of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of Petaluma FX Partners, LLC."

related penalties apply. The Court of Appeals concluded as follows:

As it is not clear from the opinion, the record, or the arguments before this court that the penalties asserted by the Commissioner and ordered by the Tax Court could have been computed without partner-level proceedings to determine the affected items questions concerning outside bases, we are unable to uphold the court's determination of the penalty issues. While it may be that some penalties could have been assessed without partner-level computations, we cannot affirm a decision that has not yet been made. Therefore we vacate the opinion of the Tax Court on the penalties imposition and computation. It may be that upon remand, a determination can be made for some portion of the penalties, but neither party has briefed that question before us. [*Petaluma II*, 591 F.3d at 655–656.]

On remand, in *Petaluma III* this Court observed:

In this case none of the FPAA adjustments are items that flow directly to the partner-level deficiency computation as computational adjustments. Any deficiencies must therefore be determined against the partners as affected items and must be resolved in separate partner-level deficiency procedures. The section 6662 penalties are all related to these adjustments, which have not yet been made by respondent. [*Petaluma III*, 135 T.C. at 586.]

The Court in *Petaluma III* then fleshed out this observation by elaborating:

The determination that the partnership is a sham implies negligent conduct regarding formation of the partnership, but in this case that determination does not trigger a computational adjustment to taxable income of the partners. The Court of Appeals declined to allow the general effect of the partnership determination of sham to confer jurisdiction of the penalty relating to valuation because the valuation related to outside basis, an affected item. The Court of Appeals instructs that for us to have jurisdiction over a penalty at the partnership level it must "'[relate] to an adjustment to a partnership item.'" *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d at 655 (quoting section 6226(f)). It must also be capable of being computed "without partner-level proceedings," *id.*, leading at least potentially to only a computational adjustment to the partners' returns. [*Id.* at 586–587.]

The Court in *Petaluma III* concluded its analysis of *Petaluma II* as follows:

The effect of the mandate concerning the section 6662 penalty is that if the penalty does not relate directly to a numerical adjustment to a partnership item, it is beyond our jurisdiction. In this case there are no such adjustments to which a penalty can apply. The adjustment is an affected item. The sham determination in this case only indirectly affects basis at

the partner level. There is no partnership item flowing through to the partners' returns as a computational adjustment. [*Id.* at 586.]

Under this interpretation, the court of first instance in a partnership-level TEFRA case has jurisdiction to hold that accuracy-related penalties apply only if and to the extent that there are FPAA numerical adjustments to partnership items reported on the partnership return that flow through directly to the returns of the partners so that the adjustments can be given effect directly by computational adjustments and assessments.

As the parties agree, by the second decision paragraph the Court upholds the FPAA's application of the 40% penalty to the portion of any underpayment attributable to a gross valuation misstatement as provided by section 6662(a), (b)(3), (e), and (h), including an underpayment resulting from the overstatement of the option partners' bases in the distributed property. By the third decision paragraph, the stipulated decision determines that the 40% gross valuation misstatement penalty applies to any underpayment of tax attributable to overstating the capital contributions claimed to have been made to the purported partnership.

Underpayments will result from the adjustments reducing the $242,186 loss and the $11,314 deduction to zero and the elimination of the huge losses claimed by the option partners on the sale of the distributed property attributable to overstating the basis in the property. Under *Petaluma II* as interpreted by *Petaluma III* we have jurisdiction to determine the applicability of the underpayments related to the adjustments of the loss and other deductions reported on the partnership return. Therefore, we first discuss the application of the penalties to those adjustments.

A. *Items Adjusted in the Stipulated Decision and the Application of Accuracy-Related Penalties Thereto Within the Jurisdictional Limitations of Petaluma II*

Participating partner argues that there will be no underpayment attributable to the reduction of the $242,186 loss and the $11,314 of other deductions to zero because the FPAA treats all transactions engaged in by the purported partnership as engaged in directly by its purported partners, so that

the loss and other deductions are directly allowable on the purported partners' returns. We disagree.

First, because Tigers Eye is disregarded as a partnership for Federal income tax purposes, the partners did not have the partnership losses or the partnership deductions that they claimed on their returns. There will be an underpayment of tax from the computational adjustment of those items. The fact that the FPAA treats all transactions engaged in by the purported partnership as engaged in directly by its purported partners does not necessarily mean that the purported partners will be entitled to deduct the losses and expenses. They would not be so entitled if they did not engage in the transactions with a profit motive for purposes of section 165(c)(2), which has been held to disallow losses claimed on option spreads that were entered into for tax avoidance purposes. *See Fox v. Commissioner*, 82 T.C. 1001 (1984); *see also Glass v. Commissioner*, 87 T.C. 1087, 1174– 1177 (1986), *aff'd sub nom. DeWees v. Commissioner*, 870 F.2d 21 (1st Cir. 1989).

The computation of the deficiencies attributable to the adjustments of the $242,186 loss and the $11,314 deduction to zero does not require any factual determinations to be made at the partner level, and respondent may assess the deficiencies without issuing a statutory notice of deficiency. Under *Petaluma III* we have jurisdiction in this partnership-level proceeding to decide the applicability of the accuracy-related penalties that relate to those adjustments.

We first address the 40% gross basis misstatement penalty and then the 20% negligence penalty.

### 1. *40% Gross Basis Misstatement Penalty*

The stipulated decision applies the 40% penalty to the overstatement of "the capital contributions claimed to have been made to the purported partnership". Participating partner asserts that *Petaluma II* "establishes that any partnership item 'elements' of outside basis do not alter the jurisdictional reality that outside basis and any penalties premised on that outside basis remain *affected items* beyond the scope of a partnership proceeding". Participating partner misconstrues that holding, which addresses the Government's argument that the Tax Court had jurisdiction in the

partnership proceeding to determine the partners' outside bases as affected items whose elements are mainly partnership items. The Court of Appeals did not hold that the Tax Court lacks jurisdiction to determine the applicability of any penalty that relates to an adjustment of a partnership item that happens to be an element of outside basis. The holding reflects acceptance by the Court of Appeals of the Government's concession that outside basis was an affected item. Contributions to the partnership are partnership items, and pursuant to section 6226(f) we have jurisdiction in this partnership/entity-level proceeding to decide the applicability of penalties that relate to the adjustment of that item to zero. The application of the penalty to that adjustment does not exceed the jurisdictional limitations of *Petaluma II*.

The alleged capital contributions by the option partners consisted of cash and the pairs of offsetting long and short foreign currency options (option spreads). Tigers Eye claimed the $242,186 loss on the termination or unwinding of the option spreads using the substituted basis of the option partners. [39]

The second decision paragraph upholds the determination in the FPAA that Tigers Eye does not exist and is not a partnership for Federal tax purposes. Pursuant to section 301.6233–1T(c), Temporary Proced. & Admin. Regs., 50 Fed. Reg. 39998 (Oct. 1, 1985), *amended*, 52 Fed. Reg. 6795 (Mar. 5, 1987), we have jurisdiction in this partnership-level proceeding to determine items of Tigers Eye that would be partnership items if it had been a partnership. As discussed *supra*, we have jurisdiction to determine the items of Tigers Eye as nominee or agent for the option partners. Therefore, we have jurisdiction to determine Tigers Eye's basis in the option spreads. Because Tigers Eye is disregarded as a partnership, there are no contributions to a partnership. Tigers Eye held the option spreads as nominee or agent and did not acquire the option spreads with a substituted basis (or any

---

[39] This loss is reflected in Statement 1 to Schedule K of the partnership return, which shows that the claimed partnership loss of $242,186 is attributable to a claimed "ORDINARY LOSS FROM SEC. 988 TRANSACTIONS" of $257,857, which includes the loss the partnership claimed on the termination or unwinding of the option spreads, partially offset by $15,671 of income items. *See supra* notes 16, 17, and 18 and accompanying text. The partnership return Schedules K–1 show that $157,749 of the claimed net partnership loss flowed through to the returns of the Logan Trusts, from which in turn they flowed through as losses to be claimed on Mr. Logan's individual income tax return.

basis, for that matter, because it did not acquire the assets for Federal income tax purposes). Tigers Eye was required to account to the option partners for the cost of unwinding the option spreads so that they could determine the amounts of their losses, but Tigers Eye did not realize a loss. The adjustment to zero of the contributions to a partnership nullifies Tigers Eye's claim that it had positive basis in the option spreads upon which it based the loss reported on the partnership return.

Thus, the disallowance of the $242,186 partnership loss on the unwinding of the option spreads claimed on the partnership return is directly attributable to the reduction of the capital contributions to zero. The overstatement of Tigers Eye's basis in the option spreads (the property claimed to have been contributed to the partnership) is a gross basis misstatement of a partnership item that is attributable to overstating the contributions claimed to have been made to the purported partnership.

The loss claimed by the partnership, which flowed through to the returns of the Logan Trusts and thence to the individual income tax return of Mr. Logan, is attributable to an overstatement of basis of what were claimed to be partnership assets acquired as capital contributions. The 40% gross basis misstatement penalty relates to the adjustment of partnership items, but also the contributions to capital upon which Tigers Eye claimed basis in the option spreads and the loss claimed by Tigers Eye on their unwinding.

The deficiency resulting from the adjustment of the loss and the 40% penalty can be assessed without issuance of a notice of deficiency. Consequently, this Court has jurisdiction under *Petaluma II* to accept and enter the stipulated decision giving effect to the partnership-level determination that the 40% gross basis misstatement penalty "applies to [the] underpayment of tax attributable to overstating the capital contributions claimed to have been made to the purported partnership." *Cf. 106 Ltd. v. Commissioner*, 136 T.C. at 74–75.

### 2. *20% Negligence Penalty*

The fourth paragraph of the stipulated decision provides that the negligence or substantial understatement penalty

applies "to any additional underpayment of tax attributable to the foregoing partnership item adjustments other than the [claimed] capital contributions". The FPAA and the stipulated decision adjust to zero "Other Deductions" of $11,314, *see supra* note 18, Statement 2 to the partnership return Schedule K, and text following note 19, that flow through to the partners' returns, $6,408 of which flowed through the returns of the Logan Trusts to Mr. Logan's 1999 Federal income tax return. The deficiency resulting from this adjustment is unrelated to claimed capital contributions and can be computed and assessed along with the 20% penalty without issuance of a notice of deficiency. Therefore, the Court has jurisdiction under *Petaluma II* to decide that the 20% negligence penalty applies to the portion of the underpayment of tax that will result from that adjustment.

### 3. *Conclusion*

We conclude that the third and fourth decision paragraphs, as written, do not overstep the jurisdictional limits of *Petaluma II* and *Petaluma III* with respect to the application of penalties to deficiencies related to reducing to zero the $242,186 loss and the $11,314 of other deductions that flowed directly through to the purported partners' returns.

### B. *Petaluma II Notwithstanding, Jurisdiction To Determine the 40% Penalty Applies to the Overstatement of the Basis of the Distributed Property*

### 1. *Applicability of the 40% Penalty to the Overstatement of the Basis of the Distributed Property*

The amounts of the deficiencies and accuracy-related penalties resulting from the adjustments to partnership items of loss and other deductions that flowed through to the purported partners' returns are de minimis in relation to the much larger additional deficiency and 40% penalty that will result from the disallowance of the multimillion-dollar losses claimed by participating partner and the other option partners on the sale of the distributed property (distributed property loss defiency). The huge losses resulted from the option partners' claims that the property was distributed to them in liquidation of their partnership interests and that their bases in the property were the inflated outside bases they claimed

in their partnership interests. The disregard of Tigers Eye for Federal income tax purposes will cause the basis in the distributed property in their hands to be reduced from the claimed outside basis to Tigers Eye's cost basis as nominee or agent. The reduction will eliminate most of the huge losses claimed by the option partners on their sales of the distributed property and will result in an underpayment of tax by Mr. Logan. Participating partner asserts that the Tax Court does not have jurisdiction in this proceeding to determine that the 40% penalty applies to the gross misstatement of the basis in the distributed property.

A "substantial valuation misstatement" occurs if the value or the adjusted basis of any property claimed on any return of tax is 200% or more of the correct amount. Sec. 6662(e)(1)(A). The penalty is increased to 40% if the underpayment of tax is the result of a gross valuation misstatement, which is the valuation misstatement determined under section 6662(e) after substituting "400 percent" for "200 percent". Sec. 6662(h)(2)(A).

As the parties agree, by the second decision paragraph the Court upholds the FPAA's application of the 40% penalty to the portion of any underpayment attributable to a gross valuation misstatement as provided by section 6662(a), (b)(3), (e), and (h). By the third decision paragraph, the decision determines that the 40% gross valuation misstatement penalty applies to any underpayment of tax attributable to overstating the capital contributions claimed to have been made to the purported partnership. The parties agree that the stipulated decision applies the 40% gross basis misstatement penalty to the underpayment that will result from the disallowance of the losses the option partners reported on their sales of the distributed property.

Reducing the basis in distributed property from the claimed outside basis to Tigers Eye's cost basis will generate an underpayment. The underpayment relates to adjustments to partnership items—the determination that Tigers Eye is disregarded and is not a partnership for Federal income tax purposes and the resulting overstatement of the contributions claimed to have been made to the purported partnership.

Participating partner acknowledges that the amount of the distributions reported on the partnership return filed by

Tigers Eye is Tigers Eye's cost basis in the distributed property. As we have previously discussed, under section 6233 and its regulations, the basis in the property distributed to each option partner is an item that we have jurisdiction to decide in this case. We have jurisdiction to determine the applicability of any penalty that relates to an adjustment of that item. The basis of the distributed property reported on an option partner's return is a gross misstatement of basis if it exceeds four times the amount of the distributions shown on the Schedule K–1 issued to the option partner. The 40% penalty will apply to any underpayment of tax attributable to claiming more than four times the amount of the distributions shown on the Schedule K–1 issued to the option partner. The underpayment of tax and the 40% penalty can be computed by reference to the option partner's return without the need for any additional factual determinations at the partner level.

The disallowed losses claimed on the sale of the distributed property were not the option partners' distributive shares of any loss reported on the partnership return filed by Tigers Eye. Thus, under *Petaluma II* as interpreted by *Petaluma III*, we would not have jurisdiction to determine that the accuracy-related penalty applies to the underpayment that will result from the disallowance of that loss. However, we are not bound by that interpretation in this case.

2. *Petaluma III: The Court Was Bound by the Law of the Case and the Rule of Mandate To Follow Petaluma II Dicta on Lack of Jurisdiction Over Outside Basis*

In *Petaluma III*, this Court was operating under the strict constraints of the law of the case doctrine and the rule of mandate. All Federal Courts of Appeals,[40] including the D.C. Circuit,[41] follow the admonition of the U.S. Supreme Court in *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895), that the inferior court to which the case is remanded

---

[40] *See, e.g.*, *Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th Cir. 1985); *Commercial Paper Holders v. Hine (In re Beverly Hills Bancorp)*, 752 F.2d 1334, 1337 (9th Cir. 1984); *Reserve Mining Co. v. EPA*, 514 F.2d 493, 541 (8th Cir. 1975); *Cherokee Nation v. Oklahoma*, 461 F.2d 674, 678 (10th Cir. 1972).

[41] *See, e.g.*, *City of Cleveland v. FPC*, 561 F.2d 344, 346 (D.C. Cir. 1977); *Nixon v. Richey*, 513 F.2d 430, 435–436 (D.C. Cir. 1975); *Sherwin v. Welch*, 319 F.2d 729, 731 (D.C. Cir. 1963).

is bound by the decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.

On a remand, the inferior court, to the best of its ability and judgment, must follow and apply the guidance provided by the holdings and clear instructions in dicta of the appellate court. *See Gersman v. Group Health Ass'n, Inc.*, 975 F.2d 886, 896–898 (D.C. Cir. 1992). On remand, the inferior court is also obviously bound under the law of the case by any party concession upon which the appellate court relies in deciding the case and framing the mandate, although that concession would not be binding in another case unless there were a similar concession that was accepted by the court.

In the case at hand, we are not bound by the law of the case and the rule of mandate to follow *Petaluma II*. However, we have obliged ourselves, under the doctrine of *Golsen v. Commissioner*, 54 T.C. 742 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971), to follow binding precedent of the Court of Appeals for the D.C. Circuit—to which this case is appealable—which comes only from its holdings in published opinions, *see Gersman*, 975 F.2d at 897 ("'[w]e are bound only by prior published opinions of this Circuit and not by other means of deciding cases'" (quoting *United States v. North*, 910 F.2d 843, 881 (D.C. Cir. 1990))), not from dictum that does not "[consider] all the relevant considerations and adumbrates an unmistakable conclusion", *see Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994); *cf. Hefti v. Commissioner*, 983 F.2d 868, 870–872 (8th Cir. 1993), *aff'g* 97 T.C. 180 (1991).

In *Petaluma II*, the Court of Appeals neither affirmed nor reversed the Tax Court's decision that accuracy-related penalties applied; it vacated the Tax Court's Opinion and decision upholding other accuracy-related penalties and remanded the case for further proceedings on that issue. The Court of Appeals could not discern what determination the Tax Court had made regarding the application of accuracy-related penalties. Unfortunately, the Court of Appeals' use of the words "computed", "computation", "computations", and "assessed", in questions it posed regarding how the Court determined the applicability of the penalties to partnership

items, created some uncertainty as to the proper disposition on remand. Those questions should not be read more broadly than an expression of concern of the Court of Appeals regarding the necessity of *computing an affected item* in order to determine the *applicability* of the accuracy-related penalties as was necessary in the Tax Court's determination that there was a gross misstatement of outside basis to which the 40% penalty applied.

The questions posed by the Court of Appeals in *Petaluma II* do not rise to the level of clear dictum that "considers all the relevant considerations and adumbrates an unmistakable conclusion".

The statements of the Court of Appeals in *Petaluma II* flowed from its holding that the Tax Court did not have jurisdiction to determine that the 40% gross basis misstatement penalty applied to the gross misstatement of outside basis. The Court did not decide the extent of our jurisdiction to determine the applicability of penalties that relate to partnership items. It did not provide any gloss on the phrase "which relates to an adjustment to a partnership item." Nor did it criticize this Court's statement in *Petaluma I* that the legislative history supports a broad reading of the statute. Consequently, we are not bound to follow our interpretation in *Petaluma III* of the dicta in *Petaluma II* that were based on the Government's concession.

The underpayment of tax relates to the adjustment of a partnership item. The underpayment and the 40% penalty can be computed without any factual determinations being made at the partnership level. We conclude that we have jurisdiction to decide that the 40% basis misstatement penalty applies. That conclusion is consistent with Congress' intent and purpose in giving the Tax Court jurisdiction in partnership-level proceedings to determine the applicability of penalties related to the adjustment of partnership items and to relegate the taxpayer to a refund suit in a Federal District Court or the Court of Federal Claims to recover the penalty by proving his reasonable cause/good faith defenses.

### 3. *TRA 1997: The Tax Court Has Jurisdiction To Determine Applicability of Penalties That Relate to Adjustment of Partnership Items*

We begin with a restatement of the changes Congress made to the TEFRA audit and litigation procedures when it enacted TRA 1997, *see supra* Part I.B.2 and 3, and will now bring them to bear on the issue at hand. Before the enactment of TRA 1997, penalties and additions to tax (collectively, penalty or penalties) were classified as affected items, and issues regarding such items were litigated in a partner-level affected-items deficiency proceeding following the completion of the partnership-level proceeding. *See, e.g.*, *N.C.F. Energy Partners v. Commissioner*, 89 T.C. at 744–745; *Crystal Beach Dev. of Destin Ltd. v. Commissioner*, T.C. Memo. 2000–170. TRA 1997 did not change the classification of penalties as affected items, but it amended section 6221 to provide that the applicability of a penalty "which relates to an adjustment to a partnership item *shall be determined at the partnership level*". (Emphasis added.) Of particular significance, TRA 1997 also amended section 6230(a)(2)(A)(i) to read as follows:

SEC. 6230(a). COORDINATION WITH DEFICIENCY PROCEEDINGS.—
  (1) IN GENERAL.—Except as provided in paragraph (2) or (3), subchapter B of this chapter[42] shall not apply to the assessment or collection of any computational adjustment.
  (2) DEFICIENCY PROCEEDINGS TO APPLY IN CERTAIN CASES.—
    (A) Subchapter B shall apply to any deficiency attributable to—
      (i) affected items which require partner level determinations (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items) * * *

The change to section 6230(a)(2)(A)(i) deprived a partner of the opportunity to litigate issues concerning the applicability of a penalty that related to an adjustment of a partnership item in an affected-items deficiency proceeding. Therefore, in TRA 1997 Congress added section 6230(c)(1)(C), which allows a partner to file a claim for refund on the ground that "the Secretary erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item", and amended section 6230(c)(4) by

---

[42] Subch. B (secs. 6211 through 6216) contains the provisions authorizing the Commissioner to issue notices of deficiency and provides the Tax Court with jurisdiction to redetermine those deficiencies.

allowing the partner to assert any "partner-level" defenses in the refund claim.

The TRA 1997 amendments to the TEFRA procedures require that issues regarding the application of penalties be litigated at the partnership level and not in partner-level affected-items deficiency proceedings, as was the case before the effective date of the penalty litigation amendments of TRA 1997. The only qualification that Congress imposed is that the penalty "relate to an adjustment to a partnership item". Secs. 6221, 6226(f), 6230(a)(2)(A)(ii), (c)(1)(C), (4). Congress did not define the word "relate", nor did Congress tie the applicability of the penalty to the existence of a computational adjustment that could be summarily assessed at the end of the partnership-level proceeding.

When Congress enacted the penalty litigation amendments, it was well aware that a partnership-level proceeding under TEFRA does not result in the determination of an underpayment at the partnership level. Underpayments are determined at the partner level after a partnership-level proceeding is completed and/or after an affected-items deficiency proceeding (which occurs if an affected item requires a factual determination at the partner level) is completed. While Congress did not address the mechanics of the application of TEFRA partnership litigation procedures to penalties, it required that penalties that relate to the adjustment of a partnership item be litigated in the partnership-level proceeding *and not in an affected-items deficiency proceeding*.

In the FPAA issued to Tigers Eye respondent made adjustments to a variety of partnership items and applied the accuracy-related penalty under section 6662(a). Specifically, in the FPAA respondent determined that the partnership was a sham and should be disregarded for Federal income tax purposes. Respondent also adjusted partnership items to zero to reflect that determination (capital contributions, distributions of property other than money, partnership loss, and other deductions). The critical issue under the penalty litigation amendments is whether the penalty in question "relates to adjustments to partnership items". *See* secs. 6221, 6226(f), 6230(a)(2)(A)(i). Thus we must decide whether the penalties applied in the stipulated decision relate to adjustments to partnership items.

Generally, words in revenue legislation should be interpreted according to their ordinary, everyday meaning. *Fort Howard Corp. & Subs. v. Commissioner*, 103 T.C. 345, 351 (1994) (citing *Commissioner v. Soliman*, 506 U.S. 168, 174 (1993)). "Relate" means, inter alia, "to show or establish logical or causal connection". Merriam Webster's Collegiate Dictionary 987 (10th ed. 1997). "Related" means, inter alia, "being connected; associated." The American Heritage Dictionary of the English Language 1473 (4th ed. 2000).

The words "related to a partnership item" take on a peculiar meaning in all Son of BOSS cases, which generally involve the use of a partnership (often transitory) to inflate basis in a partnership asset or the partner's basis in the partnership outside basis. A Son of BOSS transaction generally relies upon and plays off the provisions of subchapter K (sections 701 through 777), and its alleged success depends upon the existence of a partnership. Recognition of the partnership for Federal income tax purposes is a critical integral and necessary element of the transaction. *See, e.g.*, *Petaluma I*.

Generally, in Son of BOSS cases, there might not be an adjustment to a partnership item that flows directly to a partner's return, and there might not be an item of loss or deduction that a partner reports as a flowthrough item from the partnership to the partnership return to the purported partner's return. Nonetheless, the determination that a partnership that has no economic substance is disregarded and is not a partnership for Federal tax purposes will result in and necessarily require the disallowance of the huge loss claimed on the partner's return from the sale of property purportedly distributed from a partnership. There is a necessary logical and causal relationship between (1) the Commissioner's determination to disregard a partnership that lacks economic substance because it was formed solely to create the illusion of inflated basis in the distributed property and (2) application of the section 6662(h) accuracy-related penalty to the underpayment that results from the disallowance of the loss claimed on the sale of that property that is attributable to the basis overstatement. The penalty relates to the adjustments that result from the Commissioner's determination that the partnership is disregarded for Federal income tax purposes. Under the penalty litigation

amendments, that is all that Congress required in order for the penalty to be litigated and held applicable in the partnership-level proceeding.

Acceptance of the literal and ordinary meaning of "relates to" does not lead to absurd results and would not thwart the obvious purpose of the statute. Thus, we need not adopt a more restrictive interpretation. *See Commissioner v. Brown*, 380 U.S. 563, 571 (1965).

Congress, in enacting TRA 1997, intended that penalties related to the improper use of illusory partnerships to generate large noneconomic losses be litigated in partnership-level proceedings. Congress did so because the relevant conduct—i.e., the establishment of the partnership, which includes the recording of partner contributions, the establishment of partner capital accounts, and adjustments to those accounts resulting from distributions, assumption of liabilities, and liquidation of a partner's interest—occur largely at the partnership level. In the case of a disregarded partnership, regardless of whether a disallowance of outside basis is at play and regardless of whether outside basis is a partnership item or an affected item, any adjustment at the partner level is preceded by one or more adjustments to partnership items, and a penalty is related to those partnership-level adjustments.

Finally, with respect to the mechanics of TEFRA partnership litigation as it involves penalties, a court with jurisdiction over penalties in a partnership-level proceeding can determine whether the relevant conduct is sufficient to warrant a penalty only in the event that there is an underpayment. The Court does not determine in the partnership/entity-level proceeding that there is an underpayment or the amount of the underpayment.

This approach is consistent with the approach we are required to take in nonpartnership cases that require Rule 155 computations or in TEFRA litigation where the computational adjustments, and therefore penalty calculations, cannot be made until the parties make the necessary calculations following completion of the partnership-level proceeding.

V. *Conclusion*

We see no need to burden the reader with further discussion. For all the reasons summarized in the headnote and set forth at length in the foregoing Discussion, the Court has jurisdiction to determine and the stipulated decision that has been entered holds as follows:

1. that participating partner will have a relatively small deficiency attributable to adjustment of partnership flow-through items of (a) Loss and (b) Other Deductions, to which the 40% gross basis misstatement penalty and the 20% negligence penalty are respectively applicable; and

2. that participating partner will also have a much larger distributed property loss deficiency attributable to over-stating the capital contributions claimed to have been made to the purported partnership; the 40% gross basis misstatement penalty is also applicable to this deficiency.

On the basis of these rulings, as explained in the foregoing Discussion,

> *An appropriate order will be issued, denying participating partner's motion to revise the stipulated decision.*

Reviewed by the Court.

COLVIN, COHEN, HALPERN, and GOEKE, *JJ*., agree with this opinion of the Court.

GALE and PARIS, *JJ*., concur in the result only.

FOLEY, *J*., dissents.

VASQUEZ, GUSTAFSON, and MORRISON, *JJ*., did not participate in the consideration of this opinion.

---

HALPERN, *J*., concurring: I concur and write separately only to add some small weight to what, in the main, I consider to be a forceful and persuasive analysis by Judge Beghe.

I. *Golsen Doctrine*

We are a court with nationwide jurisdiction in tax matters alone, and Congress expected that, in so far as we are able to do so, we set precedents for the uniform application of the

tax law. *Lawrence v. Commissioner*, 27 T.C. 713, 718 (1957), *rev'd*, 258 F.2d 562 (9th Cir. 1958). Review of our cases, however, is not by a single Court of Appeals but is, variously, by the Courts of Appeals for the 11 numbered circuits and the Court of Appeals for the D.C. Circuit. *See* sec. 7482. Necessarily, we have had to consider what we should do when an issue comes before us a second time, after a Court of Appeals has reversed a prior Tax Court decision on the same point. In *Lawrence v. Commissioner*, 27 T.C. at 716–717, we determined that, while certainly we should seriously consider the reasoning of the reversing Court of Appeals, we ought not follow its decision if we believe it incorrect. In *Golsen v. Commissioner*, 54 T.C. 742, 756–757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971), we reconsidered and created a narrow exception (sometimes described as the *Golsen* doctrine) to the rule announced in *Lawrence*. We reasoned that, where a reversal would appear inevitable, because of the clearly established position of the Court of Appeals to which an appeal would lie, our obligation as a national court does not require a futile and wasteful insistence on our view. *Lardas v. Commissioner*, 99 T.C. 490, 494–495 (1992); *Golsen v. Commissioner*, 54 T.C. at 757. "[T]he logic behind the Golsen doctrine is not that we lack the authority to render a decision inconsistent with any Court of Appeals (including the one to which an appeal would lie), but that it would be futile and wasteful to do so where we would surely be reversed." *Lardas v. Commissioner*, 99 T.C. at 495. Judge Beghe's insightful consideration of the issues goes well beyond insistence on our view expressed in *Petaluma FX Partners, LLC v. Commissioner*, 131 T.C. 84 (2008), *aff'd in part, rev'd in part and remanded*, 591 F.3d 649 (D.C. Cir. 2010). In addition, in his concurring opinion Judge Wherry maintains that the *Golsen* doctrine does not bind our hands because the facts before us are distinguishable from the facts (indeed, the absence of facts) before the Court of Appeals for the D.C. Circuit in *Petaluma FX Partners, LLC*. I assume that the Judges joining or concurring in Judge Beghe's opinion believe as I do that our effort will be neither futile nor wasteful.

## II. *Judge Beghe's Insight*

Judge Beghe's insight is with respect to the consequence of determining that, for tax purposes, Tigers Eye Trading, LLC (Tigers Eye), is a sham. That of course does not necessarily mean that Tigers Eye was not properly organized as a Delaware limited liability company (L.L.C.), nor does it necessarily mean that it is not a business entity recognized for Federal tax purposes (I assume that Judge Beghe would say: "If in business, its business was acting as nominee and agent for its principals, pertinently, the Logan Trusts."). It does mean, however, that the Logan Trusts (trusts), together with other members of Tigers Eye, did not for Federal income tax purposes join together as partners to invest in currency options so as to cause the trusts' transactions with Tigers Eye (and Tigers Eye's actions on their behalf) to be governed by the substantive provisions of the Internal Revenue Code (Code) governing partners and partnerships; i.e., subchapter K ("Partners and Partnerships"), chapter 1, subtitle A of the Code (subchapter K). Tigers Eye, however, was properly organized as a Delaware L.L.C.; it did receive the currency options from the trusts; it did sell the options, and it did purchase euro and shares of Xerox Corp. (currency and shares, respectively), which it did transfer to the trusts. The trusts, later in the same year, sold the currency and the shares, claiming large losses, which, because of the provisions of the Code governing trusts and their beneficiaries, flowed through to Mr. Logan.

How then are we to explain all of those events (or at least those involving Tigers Eye), and what are the appropriate Federal income tax consequences? Moreover, because Tigers Eye filed a partnership return for 1999 (the year in which most all of the above described events occurred), although we may (and, indeed, shall) disregard the substantive partnership rules in subchapter K because of our finding Tigers Eye to be a sham, we may not disregard the TEFRA procedural provisions applicable to partnership items; i.e., subchapter C ("Tax Treatment of Partnership Items"), chapter 63, subtitle F of the Code (TEFRA procedural provisions). *See* sec. 6233. We are thus faced with three questions: (1) How to view the series of events between the trusts and Tigers Eye (if not as events between partners and a partnership); (2) what are the

Federal income tax consequences of those events (if not governed by subchapter K); and (3) which of those consequences are properly before us in this proceeding subject to the TEFRA procedural provisions.

Judge Beghe's answer to the first question is clear and, I believe, correct:

Because Tigers Eye is a sham and had no real business purpose [except, perhaps, as an agent], it merely acted as nominee and agent for the option partners and the items related to the transactions involving the option spreads and purchases and distribution of stock and foreign currency are characterized as such [i.e., as items of the option partners (its principal) rather than items of itself (an agent)]. * * * [*See* op. Ct. pp. 102–103.]

On that basis, Tigers Eye, as agent for the trusts, (1) received the offsetting currency options and cash from the trusts, (2) sold the options (at a loss), and (3) used the bulk of the remaining cash to purchase for the trusts the currency and the shares. For Federal income tax purposes (answering the second question), the trusts (1) realized neither a gain nor a loss on the transfer of the options to Tigers Eye, (2) realized (but may not be allowed) a net loss on Tigers Eye's disposition of the options, and (3) obtained section 1012 cost bases in the currency and the shares upon Tigers Eye's purchase of them for the trusts.[1] Respondent has disallowed the loss. Respondent believes that, if subchapter K plays no role, the trusts overstated their bases in the currency and shares, with the result that they overstated their losses on the sales of that property. That, respondent believes, caused Mr. Logan to underpay his taxes, attracting a section 6662 penalty on account of a gross valuation misstatement. Respondent also determined other penalties and made other adjustments consistent with the recast principals-agent relationship. All of which brings us to the third question; i.e., which of these consequences are properly before us in this proceeding subject to the TEFRA procedural provisions.

---

[1] Since the substantive rules of subch. K do not apply to a simple agency relationship, sec. 1012(a), which generally governs the determination of "basis of property", applies to the trusts' acquisition of the currency and shares, and the exception in that section for subch. K, "relating to partners and partnerships", has no force or effect. Consequently, under sec. 1012(a), the trusts' bases in the currency and shares purchased by Tigers Eye for them are their "cost of such property".

### III. *TEFRA Procedural Provisions*

Judge Beghe accurately summarizes section 6233: "Section 6233 provides that if a partnership return is filed for a taxable year but it is determined that no partnership exists, the TEFRA procedures still apply to the entity, its items, and persons holding an interest in the entity, to the extent provided in the regulations." *See* op. Ct. p. 97. He also accurately summarizes the applicable regulations:

In such a case, the TEFRA temporary regulations applicable to Tigers Eye's 1999 taxable year provide that the Court may make determinations with respect to all items of the entity (entity items) that "would be partnership items as defined in section 6231(a)(3) and the regulations thereunder * * * if * * * [it] had been a partnership". * * * [*Id.*]

Thus, for instance, if we determine that an entity filing a partnership return is not a partnership but is an association taxable as a corporation, we may determine the amounts taxable to the entity. *See* sec. 301.6233–1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6779 (Mar. 5, 1987); *see also* sec. 301.6233–1(a), Proced. & Admin. Regs. Moreover, the regulations tell us that among our determinations can be the determination that a purported partnership entity (let's call it Tigers Eye Investment Partnership) does not exist. *See* sec. 301.6233–1T(c), Temporary Proced. & Admin. Regs., *supra*; *see also* sec. 301.6233–1(b), Proced. & Admin. Regs. If we find (as the parties agree and the stipulated decision provides) that Tigers Eye Investment Partnership does not exist for Federal income tax purposes, then nothing would have been contributed to it, nothing would have been distributed from it, nor would it, on its own behalf, have engaged in any transactions. That would explain (and justify) the first decision paragraph in the stipulated decision, setting to zero the following adjustments made by the FPAA: Loss, Other Deductions, Distributions of Property Other Than Money, and Capital Contributions. But Tigers Eye, as agent, did receive the offsetting options from the trusts, did sell them, and did purchase for the trusts the currency and the shares. Certainly, as their agent, it had a fiduciary obligation to account to the trusts for the expenditure of their money and to report to them the cost of the property obtained on their behalf.

An agency (i.e., the fiduciary relationship between agent and principal), however, is not an entity (i.e., it has no legal identity apart from the separate identities of its participants). *See* Black's Law Dictionary 70 ("agency"), 612 ("entity") (9th ed. 2009). Nevertheless, because Tigers Eye filed a partnership return for 1999, that return must be treated as if it were filed by an entity. *See* sec. 301.6233–1T(c), Temporary Proced. & Admin. Regs., *supra*; *see also* sec. 301.6233–1(b), Proced. & Admin. Regs. We could treat the agency as the hypothetical entity filing the return and apply the TEFRA procedural provisions to determine what would be the hypothetical entity items of that hypothetical entity as contemplated in section 301.6233–1T(c), Temporary Proced. & Admin. Regs., *supra* (now section 301.6233–1(a), Proced. & Admin. Regs.). Alternatively, Tigers Eye was properly organized as a Delaware L.L.C., and, therefore, it existed as an entity, acting as agent for the trusts. On that basis, we could ask what were the entity items of Tigers Eye, as agent. It would seem to make no difference whether we address the agency as a hypothetical entity, acting through Tigers Eye, or address Tigers Eye as an entity in its own right, acting as agent for the trusts. To simplify, we shall proceed as if Tigers Eye, in its own right, is the relevant entity.

Section 301.6231(a)(3)–1(c)(3), Proced. & Admin. Regs., illustrates determinations that, with respect to distributions from a partnership, the partnership must make for purposes of its books and records or in order to furnish information to a partner, and which, on that account, constitute partnership items. Among the determinations included is: "The adjusted basis to the partnership of distributed property". Sec. 301.6231(a)(3)–1(c)(3)(iii), Proced. & Admin. Regs.

Tigers Eye, of course, had no basis in the currency and shares it purchased on behalf of the trusts, nor, in the sense contemplated by the regulations, did it make any distribution of that property to them. Nevertheless, because it purchased the property as agent of the trusts, it—rather than the trusts—had the information necessary to determine what property it had purchased for each trust and how much of each trust's money it had expended on those purchases. Those were determinations that Tigers Eye had to make for purposes of its books and records in order to furnish information to the trusts. If we consider Tigers Eye the trusts' agent

obligated to make those determinations, Tigers Eye's determination of the costs of the property it purchased for the trusts would be an entity item by analogy to section 301.6231(a)(3)–1(c)(3)(iii), Proced. & Admin. Regs. (adjusted basis to the partnership of distributed property is a partnership item). Because we have jurisdiction to determine entity items, *see* sec. 6226(f), we have jurisdiction to determine the costs of the currency and the shares, which, as discussed *supra* note 1, establishes the trusts' bases in those properties.

## IV. *Penalties*

I have little to add to Judge Beghe's discussion of the penalties issues. Application of the penalties seems pretty straightforward. Most controversial appears to be application of the gross valuation misstatement penalty to any underpayment of tax attributable to the trusts' overstatements of their bases in the currency and the shares. The trusts' bases in the currency and the shares purchased by Tigers Eye for them are, pursuant to section 1012, the costs of that property, and those costs, in this case, are entity items. The trusts claimed huge losses on the sale of the currency and shares, which, it appears, respondent adjusted down (producing underpayments in tax) simply by substituting their cost bases in the property for their claimed outside bases. There would thus appear to be no partner-level determination required to apply the penalty. By way of analogy, in pertinent part, section 301.6231(a)(6)–1(a)(2), Proced. & Admin. Regs., provides:

> substituting redetermined partnership items for the partner's previously reported partnership items * * * does not constitute a partner-level determination where the Internal Revenue Service otherwise accepts, for the sole purpose of determining the computational adjustment, all nonpartnership items * * * as reported.

In *106 Ltd. v. Commissioner*, 136 T.C. 67 (2011), a partnership-level proceeding postdating *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649, we agreed with the parties that a partner-level proceeding was unnecessary to determine a gross valuation misstatement penalty attendant to a partner's sale of foreign currency distributed to him in a nonliquidating distribution. Apparently, the partner's basis in

the foreign currency sold was equal to the partnership's basis in that currency, and the parties stipulated that the adjustment to inside basis (the partnership's basis) allowed a numerical adjustment at the partner level. We held:

Because it is possible to derive through such an adjustment alone the reduction in the claimed loss on the sale of the Canadian dollars that 106 distributed, and the consequent increase in the reportable gain and resulting deficiency—all without any need for an affected-item deficiency notice, * * * we conclude that we do have jurisdiction over the penalty in this partnership-level case. * * * [*106 Ltd. v. Commissioner*, 136 T.C. at 75.]

That would appear to be the case here. The similarity between the two cases is that, as in *106 Ltd.*, the trusts' bases in the currency and the shares they received is the hypothetical entity's costs of that property (analogous to the partnership's basis in the currency distributed in *106 Ltd.*), and respondent may here determine the reduction in the losses reported by the trusts simply by substituting for the trusts' claimed bases in the sold currency and shares their cost bases properly determined in this procedure.

BEGHE, GOEKE, and WHERRY, *JJ.*, agree with this concurring opinion.

––––––––––––

WHERRY, *J.*, concurring: I agree with the results in the opinion of the Court, and the bulk of its analysis. However, I find myself unable to abide by the logic that the opinion deploys to repudiate respondent's gratuitous acknowledgment, in a Status Report filed May 19, 2010: "All parties agree that the basis of each purported partner's interest in Tigers Eye Trading, LLC, is an affected item."

I. *Fighting Shadows*

The opinion of the Court characterizes respondent's concession as an issue of law that, if accepted, would deprive us of subject matter jurisdiction. Rejecting it as such, the opinion demonstrates "that the basis of each purported partner's interest in Tigers Eye Trading, LLC, is [not] an affected item", but a partnership item.

The opinion of the Court, pp. 74–75, has marshaled an array of arguments and authorities into an impregnable

rhetorical "Maginot Line" that, like its real-life predecessor, stands impassive guard against a construct that has not been attacked—in this case, subject matter jurisdiction. Respondent's FPAA, which had adjusted the purported partners' outside bases, and the timely petition filed in response, vest us with subject matter jurisdiction.

Nothing that respondent has said in the Status Report of May 19, 2010, or elsewhere in the record, seeks to deprive us of this jurisdiction. But in exercising this jurisdiction, we cannot avoid confronting the Trojan horse substance latent in respondent's concession: "that the basis of each purported partner's interest in Tigers Eye Trading, LLC, is an affected item." [1]

I concur with the opinion of the Court that there exist good grounds for rejecting this substance. But in my view these grounds lie farther afield of the ones in which the opinion of the Court neatly slays the strawman of litigants stipulating away the Court's subject matter jurisdiction.

## II. *A Stipulation That Swallows the Law*

Characterizing respondent's concession as an issue of law is problematic for three discrete reasons. First, it implies that respondent is, as it were, recanting in one breath the very regulations he recites with the next. [2] Second, it sug-

---

[1] The opinion of the Court, pp. 74–75, cites several cases in support of retaining subject matter jurisdiction here. However, none of these cases seems to advance the majority's cause of rejecting respondent's concession. Emblematic of these cases that "only go so far" is *Charlotte's Office Boutique, Inc. v. Commissioner*, 121 T.C. 89, 102 (2003), *aff'd*, 425 F.3d 1203 (9th Cir. 2005). In that case, we declined to give up jurisdiction even after the Commissioner conceded that his initial determination, made in a sec. 7436 notice of determination which had furnished the "ticket to the Court", was incorrect. In the notice of determination, the Commissioner had determined, with respect to the employer who had petitioned the Court, "that 'Other Workers' had during that year [at issue] received $2,585 of wages from petitioner". *Id.* at 103. However, "The Commissioner had conceded before the Tax Court that appellant did not have any 'other workers.'" *Charlotte's Office Boutique, Inc. v. Commissioner*, 425 F.3d at 1206 n.2. Though we did not cede jurisdiction, we did accept the substance of the Commissioner's concession: "that appellant did not have any other workers for those years and that appellant had treated Mrs. Odell as an employee in those years." *Id.* at 1207. Consequently, we went on to "sustain respondent's determination that petitioner paid all of the disputed amounts to Ms. Odell as wages." *Charlotte's Office Boutique, Inc. v. Commissioner*, 121 T.C. at 106. A straightforward application of *Charlotte's Office Boutique* would result in our exercising jurisdiction here to find "that the basis of each purported partner's interest in Tigers Eye Trading, LLC, is an affected item."

[2] *See infra* pt. IV (highlighting that under the Secretary's legislative regulations issued pursuant to sec. 6231(a)(3), whether outside basis is an affected item or a partnership item is a factual determination). The opinion of the Court itself points out that respondent swears allegiance to these regulations, notwithstanding his statement in the May 19, 2010, Status Report that outside basis is an affected item here. A similar concession made by the Commissioner on appeal

Continued

gests that the Court of Appeals for the D.C. Circuit in *Petaluma FX partners, LLC v. Commissioner*, 591 F.3d 649 (D.C. Cir. 2010) (*Petaluma II)*, *aff'g in part, rev'g in part and remanding* 131 T.C. 84 (2008) (*Petaluma I*), in accepting a similar concession, was unfaithful to its own precedent that precludes parties from "forc[ing] a federal court to render an advisory opinion * * * [by] stipulat[ing] to the state of underlying law". *Indep. Ins. Agents of Am., Inc. v. Clarke*, 965 F.2d 1077, 1078 (D.C. Cir. 1992).[3] Finally, and most troubling, it does gross disservice to the majority's own exegesis of the proper classification of outside basis as a partnership item.[4]

III. *"Do Not Add to What I Command You and Do Not Subtract From It"*

I agree with the exposition in the opinion of the Court regarding when, under the statute and the regulations, outside basis is properly treated as a partnership item, and disagree with the dissent of Judge Holmes, who would effectively limit such treatment to those partnerships that have made a section 754 election. Judge Holmes' reasoning reads into the statute words that are not there, while reading out of the regulations words that are palpably present.

A. *Grammar and Structure of Section 6231(a)(3)*

In explicating the definition of the term "partnership item" in section 6231(a)(3), Judge Holmes' "'starting point * * * [is] the language employed by Congress.'" *See* Holmes op. p.

---

in *Petaluma II* was also accompanied by similar shouts of fealty to the regulations. The Commissioner has in other instances, quite understandably, sought to hedge his litigating risk by seeking to cover all his bases. *See, e.g.*, Chief Counsel Notice CC–2009–11 (Mar. 11, 2009) (recommending the "protective" issuance of a "notice of deficiency" after a partnership-level decision becomes final, even if there remain "no affected items which require partner level determinations" within the meaning of sec. 6230(a)(2)(A)(i)). Here, however, the opinion of the Court would have us believe that respondent is, in effect, disowning the very flag under which he has mounted his challenge. Surely that goes way beyond risk-aversion and borders on abject surrender (and schizophrenia).

[3] Though litigants cannot forfeit subject matter jurisdiction, they remain free to stipulate facts that in practice may preclude a court from exercising jurisdiction that in principle the court enjoys. The Court of Appeals for the D.C. Circuit is acutely aware of the distinction between delineating the theoretical limits of subject matter jurisdiction and finding facts enabling its exercise. *See, e.g.*, *Owens v. Republic of the Sudan*, 531 F.3d 884, 890 (D.C. Cir. 2008) (discussing the implications of "the authority * * * to make a finding of fact upon which subject matter jurisdiction depends, *as opposed to* the authority to define those conditions in the first place" (emphasis supplied)).

[4] *See infra* pt. IV.

179 (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337 (1979)). However, he proceeds to implicitly add to this language. Judge Holmes begins by directing our attention "at the first part of section 6231(a)(3)—'[W]ith respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A'." *Id.* He then accuses the majority of "reconstruct[ing]" this Code section by "leav[ing] out an important phrase[,] * * * the modifier 'partnership's' before 'taxable year'". *Id.* But Judge Holmes' own "deconstruction" of section 6231(a)(3) seems to be adding the restrictive nominative phrase "by the partnership" after the participial phrase "to be taken into account". [5]

The required account-taking action contemplated by section 6231(a)(3) could potentially be incumbent upon, and therefore be undertaken by, only two kinds of account-taking actors: the partnership, which is a nontaxable passthrough entity; and any of its taxable partners. To consider section 6231(a)(3) in its unadorned congressionally enacted glory, we should refrain from circumscribing the required account-taking action it contemplates. Consequently, we should desist from prespecifying either of the two types of potential account-taking actors as *the* posited performer of the contemplated action. Resisting any such urge, we countenance, as a partnership item, "any item required to be taken into account [by anyone] for the partnership's taxable year under any provision of subtitle A". [6]

---

[5] Judge Holmes' misconception of sec. 6231(a)(3) apparently stems from misconstruing the prepositional phrase "for the partnership's taxable year". Judge Holmes seems to believe that this phrase modifies the contemplated action—account taking. Consequently, he views "the partnership's taxable year", which is the object of the preposition "for", as the recipient (or, as grammarians call it, patient) of the contemplated account-taking action. *See* Holmes op. pp. 184–185 ("Tigers Eye itself was never required to determine its partners' outside bases, and its partners' outside bases *had no effect on its taxable year*." (Emphasis supplied.)). In point of fact, however, the prepositional phrase "for the partnership's taxable year" in sec. 6231(a)(3) modifies, not the contemplated account-taking action, but the "required" character of this action. Thus, the "for" before "the partnership's taxable year" denotes "with respect to". This is the same meaning that "for" takes in the various substantive provisions of subch. K, where it appears before "partnership's taxable year" or "taxable year of the partnership". *See infra* note 7 and accompanying text. Judge Holmes preemptively denies that "for" implies "with respect to" in sec. 6231(a)(3) because, he claims, "section 6231(a)(3) already requires the item be related to or 'with respect to a partnership.'" *See* Holmes op. p. 180. Judge Holmes forgets, however, that the item in question must be related not only to the specific partnership, but also to the given taxable year of that partnership. The cause of action in a partnership-level proceeding, after all, is a discrete taxable year of the partnership.

[6] The explicit insertion of the indefinite pronoun is supplied to preclude an implicit insertion

Continued

Because the provisions of subtitle A determine a taxpayer's tax liability, we cannot exclude from the scope of section 6231(a)(3) the required account-taking actions of a taxpayer-partner of the given nontaxable passthrough partnership. Indeed, a comparison of the syntactical structure of section 6231(a)(3) with that of some of the substantive provisions of subtitle A, chapter 1, subchapter K, part I, titled "Determination of Tax Liability", suggests that a partner's required account-taking actions may very well be the primary focus of section 6231(a)(3). *See, e.g.*, sec. 702(a) ("In determining his income tax, each partner *shall take into account* separately his distributive share of the partnership's [income, gain, loss, deduction, or credit]" (emphasis supplied)); *see also* sec. 706(a) ("In computing the taxable income of a partner for a taxable year, *the inclusions required* by section 702 [for the partner's distributive shares] and section 707(c) [for the partner's guaranteed payments] with respect to a partnership shall be based on the income, gain, loss, deduction, or credit of the partnership *for any taxable year of the partnership* ending within or with the taxable year of the partner." (Emphasis supplied.)). [7]

Devoid of any constraints on the type of actor required to undertake the envisaged account-taking action, section 6231(a)(3) merely represents an "acquiescing" provision, one that abdicates to the Secretary the nettlesome task of substantively defining a partnership item. [8] Thus, a partnership

_____

of a demonstrative counterpart.

[7] The emphasized prepositional phrase in sec. 706(a), "for any taxable year of the partnership" is modifying the "required" nature of the "inclusions" by the partner. The "for" before "any taxable year of the partnership" connotes "with respect to". *See supra* note 5 (discussing an identical use of "for" in sec. 6231(a)(3)); *see also infra* note 10 (discussing the same in sec. 301.6231(a)(3)–1(a), Proced. & Admin. Regs.).

[8] Judge Holmes imbues the first half of the definition of the term "partnership item" in sec. 6231(a)(3) with a significance that belies the term's historical origin. He

believe[s] Congress added the phrase "to the extent regulations prescribed by the Secretary provide that * * * such item is more appropriately determined at the partnership level than at the partner level" to section 6231(a)(3), so that the Secretary would not pervert and subvert the preceding part of section 6231(a)(3)'s definition—as the majority does today—in promulgating regulations listing what are partnership items. Congress wanted to kick the ladder out from under the Secretary if he went picking fruit that Congress didn't want picked at the partnership level. * * * [*See* Holmes op. note 7.]

Legislative history, however, clearly reflects that Congress was concerned, not with how high up a fruit-bearing tree the Secretary might reach, but instead with how often courts were forced to return to the same tree.

Both the House conference report and the so-called Blue Book accompanying TEFRA use the term "partnership item" in discussing pre-TEFRA law with no indication that the term's connotation would undergo a qualitative transformation as a consequence of the enactment of

item is "any item required to be taken into account * * * to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level."[9] In sum, a partnership item is what the Secretary decides it is, so long as he justifies his decision by invoking the "more-appropriately-determined" principle.

So much for the nonexistent exclusions that Judge Holmes seems to import into the statute. Now, consider the applicable regulatory provisions the full import of which I believe Judge Holmes has overlooked.

## B. *The Secretary's Two-Step Tango*

The Secretary begins, unsurprisingly, by dutifully noting that his designation of partnership items will comply with the statutorily mandated "more-appropriately-determined" principle. Thus, the Secretary declares that he will designate as partnership items only those items that in his opinion are more appropriately determined at the partnership level. *See* sec. 301.6231(a)(3)–1(a), Proced. & Admin. Regs. (designating as partnership items those that "are required to be taken into account for the taxable year of a partnership under sub-

TEFRA. To the contrary, both reports advance, as a primary motivation for enacting TEFRA, the consistent tax treatment of any one partnership item across all partners in the same partnership.

The House conference report, H.R. Conf. Rept. No. 97–760, at 62 (1982), 1982–2 C.B. 600, 662, notes that under "present law", i.e., before the enactment of TEFRA, "partnerships are not taxable entities[;] * * * partnerships are *required* to file an annual information return[;] * * * [but] adjustments are made to each partner's income tax return". (Emphasis supplied.) The report bemoans the fact that as a result of the foregoing, "a judicial determination of an issue relating to a *partnership item* generally is conclusive only as to those partners who are parties to the proceeding." *Id.* (emphasis supplied). In discussing how TEFRA would "promote increased compliance and more efficient administration of the tax laws", the report comments that pursuant to TEFRA, other than certain limited exceptions, "the tax treatment of any *partnership item* is to be determined at the partnership level". *Id.* (emphasis supplied).

The Blue Book, Staff of the Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 267 (J. Comm. Print 1982), repeats the language quoted above. In addition, the Blue Book observes that before enactment of TEFRA, "Duplication of manpower and administrative and judicial effort was required in some cases to determine the aggregate tax liability attributable to a single *partnership item*. Inconsistent results could be obtained for different partners with respect to the *same item*." *Id.* at 268 (emphasis supplied).

[9] As shown *supra* notes 5 and 7 and the accompanying text, the restrictions "with respect to" the partnership and the partnership's taxable year in sec. 6231(a)(3) merely ensure that a partnership-level proceeding does not exceed the bounds of the cause of action; i.e., only one partnership, and only one of its taxable years, should remain the subject of each adjudication in a given partnership-level proceeding.

title A of the Code [and] are more appropriately determined at the partnership level"). [10]

Substantively, that regulation section represents the Secretary's acknowledgment that the account-taking action envisaged in section 6231(a)(3) may be required of either the partnership or any of its partners. Accordingly, he formulates a two-pronged approach for classifying partnership items. One prong constitutes a direct application of the "more-appropriately-determined" principle, while the other prong comprises a recursive application of this principle.

The first of the Secretary's two prongs tackles items required to be taken into account by the partnership. It is almost definitional that any such item is more appropriately determined at the partnership level. [11] Consequently, a direct application of the "more-appropriately-determined" principle renders the item a partnership item. Let us call such partnership items direct partnership items. Included in direct partnership items is a partner's distributive share of the partnership's income, gain, loss, deduction, or credit. *See* sec. 301.6231(a)(3)–1(a)(1)(i), Proced. & Admin. Regs.

The second prong of the Secretary's two-pronged approach deals with items "required to be taken into account" within the meaning of section 6231(a)(3)—but not by the partnership. It stands to reason that this account-taking could then be incumbent only upon one or more of the partnership's partners. For such an item, the Secretary prescribes a recursive application of the "more-appropriately-determined" principle.

---

[10] Note again the use of the prepositional phrase "for the taxable year of a partnership". Again, the phrase is modifying, not the envisaged account-taking action, but the "required" character of this action. And, again, "for" indicates "with respect to". *See supra* notes 5 and 7.

[11] TEFRA envisages that a partnership-level proceeding be concluded before partner-level actions commence. *See* sec. 6225. In *GAF Corp. & Subs. v. Commissioner*, 114 T.C. 519, 525 (2000), we had followed *Maxwell v. Commissioner*, 87 T.C. 783 (1986), and its progeny, to hold invalid an affected items notice of deficiency issued "prior to completion of the TEFRA partnership procedures".

Assume arguendo that an item required to be taken into account by the partnership is nonetheless not considered more appropriately determined at the partnership level. Because this item is required to be taken into account by the partnership, it may, indeed quite possibly will, play a definitive role in the partnership-level proceeding. However, because it is not considered more appropriately determined at the partnership level, the item will be beyond the purview of the partnership-level proceeding. Thus, the partnership-level proceeding will remain unresolved until the item in question is conclusively determined—presumably at the partner level. But the latter itself cannot commence until the partnership-level proceeding has been concluded. Such a perverse perpetual loop could bring TEFRA's elaborate administrative and judicial machinery to a grinding halt.

Under this recursive application, the given item may still be deemed more appropriately determined at the partnership level. For this, however, the item must be determinable from other determinations that the partnership is required to make, even though the partnership itself is not required to take into account the item per se. Let us call such items, which are rendered partnership items by recursively applying the "more-appropriately-determined" principle, derivative partnership items. [12] They include, among others, items of contribution and distribution. *See* sec. 301.6231(a)(3)–1(a)(4)(i) and (ii), Proced. & Admin. Regs.

Judge Holmes' analysis fails to confront this recursive application of the "more-appropriately-determined" principle set out in the regulations and, therefore, ignores derivative partnership items.

What does all of this mean for classifying as a partnership item a partner's basis in his partnership interest; i.e., the partner's outside basis? If the partnership is required to account for its partners' outside bases, then under the first

---

[12] The recursive application of the "more-appropriately-determined" principle evidently rests on the eminently reasonable presumption that determination of an item, for purposes of sec. 6231(a)(3), establishes a transitive relationship between the determined item and the determinants that conclusively determine it. In this context, transitivity implies that if, for example, an item is conclusively determined by two determinants, say ($D_1$ and $D_2$), each of which, in turn, is conclusively determined by two other determinants, say ($D_{11}$ and $D_{12}$) and ($D_{21}$ and $D_{22}$), respectively, then the item in question itself is also conclusively determined by the set of ($D_{11}$, $D_{12}$, $D_{21}$, and $D_{22}$).

To see how transitivity enables a recursive application of the "more-appropriately-determined" principle, begin by considering an item, "Item A", that is conclusively determined by several ("n") different determinations that the partnership is required to make, call them ($A_1$, $A_2$, $A_3$, . . ., $A_n$). Each of $A_1$ through $A_n$ constitutes a determinant of Item A. Each of them is also, by definition, more appropriately determined at the partnership level. The premise of a transitive relationship between the determined and its determinants renders Item A, in turn, more appropriately determined at the partnership level.

Now, consider another item, "Item B", that is conclusively determined by the aggregate set of: (1) several ("m") different determinations that the partnership is required to make, call them ($B_1$, $B_2$, $B_3$, . . ., $B_m$); and (2) Item A. Recall that the determinants of Item A itself are n other determinations that the partnership is required to make; i.e., ($A_1$, $A_2$, $A_3$, . . ., $A_n$). Because determination of items is deemed transitive, Item B can be considered as conclusively determined by the union of the two sets ($A_1$, $A_2$, $A_3$, . . ., $A_n$) and ($B_1$, $B_2$, $B_3$, . . ., $B_m$); i.e., all determinations that the partnership is required to make. Thus, Item B is also more appropriately determined at the partnership level.

The same would apply for yet another item, "Item C", that is conclusively determined by the aggregate set of: (1) several ("p") different determinations that the partnership is required to make, call them ($C_1$, $C_2$, $C_3$, . . ., $C_p$); (2) Item A; and (3) Item B. Again, transitivity implies that Item C can be considered as conclusively determined by the union of the three sets ($A_1$, $A_2$, $A_3$, . . ., $A_n$), ($B_1$, $B_2$, $B_3$, . . ., $B_m$), and ($C_1$, $C_2$, $C_3$, . . ., $C_p$). Thus, Item C is also conclusively determined entirely by determinations that the partnership is required to make, and consequently, more appropriately determined at the partnership level. We can continue this inductive process ad infinitum.

prong of the two-pronged approach detailed above, outside bases are direct partnership items. Thus, as Judge Holmes points out, if the partnership has a section 754 election in effect, then the partnership will account for its partners' outside bases, which will consequently be treated as partnership items.[13]

What if the partnership is not required to account for its partners' outside bases? Then, any one partner's outside basis may, or may not, be a partnership item. Outside basis will be a partnership item if it is determined conclusively by partnership items, whether direct or derivative. If all determinants necessary and sufficient to compute outside basis are direct or derivative partnership items, then another recursive application of the "more-appropriately-determined" principle renders the object of their determination, i.e., the outside basis in question, itself a derivative partnership item.[14] On the other hand, so long as even one necessary determinant of the given outside basis is incapable of being classified as a partnership item, under either of the Sec-

[13] Judge Holmes argues that "The reason outside basis is a partnership item when a partnership makes a section 754 election is that such a partnership itself needs to determine its partners' outside bases to redetermine the partnership's own inside basis for the 'partnership's taxable year.'" *See* Holmes op. p. 182 & n.9 (citing *Kligfeld Holdings v. Commissioner*, 128 T.C. 192, 197 (2007); *see also* secs. 743(b), 754). Actually, any adjustment under sec. 743(b), which is made in "the case of a transfer of an interest in a partnership by sale or exchange or upon the death of a partner[,] * * * constitute[s] an adjustment to the basis of partnership property *with respect to the transferee partner only*." Sec. 743(b) (emphasis supplied). Moreover, such a basis adjustment is now no longer entirely elective. Effective for transfers after Oct. 22, 2004, the adjustment is required, not only if the partnership has a sec. 754 election in effect, but also if "the partnership has a substantial built-in loss immediately after such transfer." Sec. 743(a).

By comparison with the partner-specific adjustments to the basis of partnership property under sec. 743(b), sec. 734(b) provides for adjustments to the common basis of partnership property. These adjustments are triggered by certain kinds of partnership distributions and are made to the partnership's undistributed property.

Specifically, the adjustments apply following any distribution in which the distributee partner either recognizes gain or loss or receives the distributed property with a basis different from that of the partnership before the distribution. *See* sec. 734(b)(1) and (2). Both contingencies, the distributee partner's recognizing gain or loss and his receiving the distributed property with a different basis, would require the partnership to account for the distributee partner's outside basis to ascertain the sec. 734(b) adjustment. *See generally* sec. 731 (governing distributee partner's recognition of gain or loss); sec. 732 (providing rules for determining distributee partner's basis in the distributed property); sec. 733 (specifying adjustments to distributee partner's outside basis). As with sec. 743(b) adjustments, basis adjustments under sec. 734(b) are now no longer entirely elective. Effective for distributions after October 22, 2004, adjustments to the partnership's undistributed property are required, not only if the partnership has a sec. 754 election in effect, but also if "there is a substantial basis reduction with respect to such distribution." Sec. 734(a).

[14] The Commissioner appeared to be developing an analogous argument in *Petaluma II* but seems to have fumbled at the goal line. *See Petaluma II*, 591 F.3d at 654 ("On appeal the Commissioner * * * in this case * * * asserts that outside basis is an affected item whose elements are *mainly* or entirely partnership items." (Emphasis supplied.)).

retary's two prongs, then outside basis cannot be a partner-
ship item. [15] Consistent with this "all-or-nothing-at-all"
rationale, the Secretary provides that "The basis of a part-
ner's partnership interest is an affected item to the extent it

[15] This would be the case if a partner acquires his partnership interest "as the result of a
transfer of an interest in a partnership by sale or exchange or on the death of a partner", sec.
743(b), assuming that the partnership did not have a sec. 754 election in place and further did
not have "a substantial built-in loss immediately after such transfer", *id.*; *see also supra* note
13. For a sale or exchange, under sec. 742, and sec. 1.742–1, Income Tax Regs., the purchasing
partner would take an initial outside basis in the amount of his purchase price or other consid-
eration paid. For an acquisition from a decedent partner, the acquiring partner would be enti-
tled under sec. 1014 to a "stepped-up basis". In neither case would the partnership have any
reason to keep track of the basis of the partnership interest in the hands of the transferee part-
ner.

  This could also be the case if an individual contributes built-in loss personal use property for
business use by the partnership. Under *Au v. Commissioner*, 40 T.C. 264 (1963), *aff'd*, 330 F.2d
1008 (9th Cir. 1964), the partnership would take a basis in the contributed property in the
amount of: (1) its fair market value at the time of contribution, or (2) its adjusted basis in the
contributing partner's hands, whichever is lower. *See also* sec. 1.167(g)–1, Income Tax Regs. ("In
the case of property which has not been used in the trade or business or held for the production
of income and which is thereafter converted to such use, the fair market value on the date of
such conversion, if less than the adjusted basis of the property at that time, is the basis for
computing depreciation."). If the contributed property had a built-in loss at the time of contribu-
tion, then the partnership will receive the property with a fair market value basis. The partner-
ship will presumably have no reason to keep track of the contributing partner's historical cost
basis in the contributed property. However, under sec. 722, the contributing partner's basis in
his partnership interest should be his adjusted basis in the contributed personal use property.

  The same result can obtain even for contributions of business use property if the partnership
does not maintain "book capital accounts" in accordance with the capital account maintenance
rules of sec. 1.704–1(b)(2)(iv), Income Tax Regs. Assume, for simplicity, that the partnership de-
termines each partner's distributive share of income, gain, loss, deduction, or credit "in accord-
ance with the partner's interest in the partnership" under sec. 704(b). If a partner contributes
either personal use or business use property with a built-in loss to such a partnership, for the
partnership's business use, then under sec. 704(c)(1)(C)(ii), the partnership will take a fair mar-
ket value basis in the contributed property. The contributed property's "built-in loss shall be
taken into account only in determining the amount of items allocated to the contributing part-
ner". Sec. 704(c)(1)(C)(i). Once the partnership no longer holds the property, say as a result of
a distribution to a partner other then the contributing partner, the partnership will presumably
have no reason to keep track of the contributing partner's historical cost basis in the contributed
property.

  Finally, an individual or corporate partner may be required to readjust its basis in its partner-
ship interest under various provisions of the Code for reasons unrelated to changes in the part-
nership's operations. The partnership would ordinarily have no reason to keep track of such re-
adjustments. Examples of such readjustments include the following.

  An insolvent partner may reduce the basis of his partnership interest (along with that of other
unrelated assets he owns) under sec. 108(b), which demands tax attribute reduction as the price
for the insolvency exclusion of cancellation of indebtedness income. Unless the partner's insol-
vency affects, or arises from, operations of the partnership, the latter will have no reason to
keep track of such a basis reduction under sec. 108(b).

  A corporate partner may adjust its basis in its partnership interest for the "recapture" im-
posed by sec. 1363(d) and sec. 1.1363–2, Income Tax Regs., which provide a "look-through rule"
for certain partnership inventory upon the tax-free contribution of a partnership interest from
a C corporation to an S corporation. Note that the partnership's accounting remains unaffected
unless it specifically elects to adjust the basis of the inventory at issue, pursuant to sec. 1.1363–
2(e), Income Tax Regs. This election is different from, and not covered by, a sec. 754 election.

is not a partnership item." Sec. 301.6231(a)(5)–1(b), Proced. & Admin. Regs.

## IV. *A Fact-Specific Inquiry—Always and Everywhere*

The parsing of the regulations set forth above completely accords with, and perfectly complements, that of the opinion of the Court. But having done the heavy lifting, the opinion of the Court seems to have tripped at the very end. The opinion fails to account for the obvious implication of its own painstaking analysis: Under the regulations, whether outside basis is a partnership item depends upon the facts and circumstances unique and specific to that partnership and partner. [16]

This implication does not lose validity simply because in a partnership-level proceeding we make a finding to disregard the partnership form before us. Disregarding a partnership means we are not respecting the garb in which the taxpayer has dressed up his investment transaction. The mere fact that the form of the investment is not respected, however, does not by itself reduce to zero the amount of the taxpayer's investment that we will recognize for tax purposes. [17]

---

[16] In theory, this could be an inquiry without bounds. "The determinations illustrated in * * * [the regulations] that the partnership is required to make are not exhaustive; there may be additional determinations that the partnership is required to make". Sec. 301.6231(a)(3)–1(c)(1), Proced. & Admin. Regs. Moreover, "failure by the partnership actually to make a determination (for example, because it does not maintain proper books and records) does not prevent an item from being a partnership item." *Id.* As a practical matter, however, in any given partnership-level case before us, litigants can be expected to isolate and describe the discrete determinations that the partnership is, or is not, required to make that control the classification of outside basis as a partnership item.

[17] The opinion of the Court states that "Solely from these determinations [relating to disregarding the partnership form], it can be determined with absolute certainty that there can be no outside basis in the nonexistent partnership interest." *See* op. Ct. p. 119. It is indisputable that outside basis becomes a conceptual nullity once we disregard the partnership form. However, that self-evident proposition is not necessarily dispositive for the purpose at hand—sustaining a sec. 6662 accuracy-related penalty on grounds of a gross valuation misstatement under sec. 6662(e) and (h). That requires, for the tax year at issue, readjusting downwards to at least one-fourth "the adjusted basis of any property * * * claimed on any return of tax imposed by chapter 1". Sec. 6662(e)(1)(A).

Outside basis would become relevant in this readjustment calculus if a purported partner of a disregarded partnership claims on his tax return a loss on the sale of property, the basis of which is derived from his claimed outside basis in the disregarded partnership. Such property could be the purported partner's claimed partnership interest, or (as here) property other than money received in a claimed liquidation distribution. In either case, the conceptual nullity of outside basis would not by itself allow us to readjust down to zero the basis of such sold property. Surely we would not ignore any actual cash, in U.S. dollars (the functional currency for a U.S. taxpayer), that the purported partner had invested in the partnership, merely because we are ignoring the partnership form. Thus, if the purported partner had purchased his claimed partnership interest from a third party, his purchase price would not evaporate and become a tax nullity, even though his outside basis does so, as a consequence of disregarding the partner-

Ascertaining the amount of the taxpayer's investment that will be recognized for tax purposes may, or may not, entail looking beyond "the partnership books and records". *See, e.g.*, op. Ct. p. 125. This cannot be known in advance, and will be unique and specific to the disregarded partnership and the purported partner. [18]

V. *Respondent's "Advocacy"*

As shown above, and as the majority itself points out, applying the regulations to establish whether outside basis is an affected item or a partnership item focuses critically on "the extent that a determination of an item relating to a contribution [or a distribution] can be made from * * * determinations that the partnership is *required* to make". Sec. 301.6231(a)(3)–1(c)(2), Proced. & Admin. Regs. (flush language) (emphasis supplied); *see also* sec. 301.6231(a)(3)–1(c)(1), Proced. & Admin. Regs. ("The critical element is that the partnership *needs* to make a determination with respect to a matter for the purposes stated" (emphasis supplied)); sec. 301.6231(a)(3)–1(a)(4), Proced. & Admin. Regs. ("determinations that the partnership is required to make [include those] with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner").

A. *Respondent's Steadfast Faith in the Regulations*

Whether or not the (disregarded) partnership before us, Tigers Eye Trading, LLC, is "required", or "needs", to make a determination has to be an issue unique or specific to that given partnership form. Thus, if the regulations are valid, and we are applying them properly, then conceding that outside basis is an affected item here could only mean that this particular partnership entity is not required to make the determinations that will suffice for computing the purported partners' outside bases.

---

ship. In any sale of the claimed partnership interest, or of the property other than money received in a claimed liquidating distribution, the purported partner would still be allowed to recover tax free the amount of his actual purchase price; i.e., the underlying transactions would be treated as engaged in by the purported partner directly.

[18] *See supra* note 16 (discussing how a theoretically unbounded inquiry will, as a practical matter, be framed and rendered tractable by the litigants).

Respondent has by no means renounced the Secretary's regulations. Far from it, he continues to pay homage to them at every turn. Therefore, respondent's statement in the May 19, 2010, Status Report that "All parties agree that the basis of each purported partner's interest in Tigers Eye Trading, LLC, is an affected item" is not, and cannot be deemed, an attempt to stipulate the applicable law. That law, embodied in the Secretary's regulations, entails a fact-specific inquiry for concluding that outside basis is an affected item. Respondent's conclusory statement regarding the affected item status of outside basis, therefore, must evince, at its core, a concession of fact.

I would portray this "garrulity of advocacy" on respondent's part for what it essentially is—an attempt at stipulating facts. Identifying it as such, I would disregard it because the record shows that it is incorrect.

## B. *Salvaging Respondent From His Zeal*

As the trial court, we enjoy an element of discretion in deciding whether to accept respondent's proffered stipulation. Under *Cal-Maine Foods, Inc. v. Commissioner*, 93 T.C. 181, 195 (1989) (citing *Loftin & Woodard, Inc. v. United States*, 577 F.2d 1206, 1232 (5th Cir. 1978), and *Jasionowski v. Commissioner*, 66 T.C. 312, 317–318 (1976)), "We may disregard stipulations between parties where justice requires it if the evidence contrary to the stipulation is substantial or the stipulation is clearly contrary to facts disclosed by the record." *See also Dillon, Read & Co. v. United States*, 875 F.2d 293, 300 (Fed. Cir. 1989) (holding that parties remain "free to stipulate to whatever facts they wish, except they may not stipulate to facts known to be fictitious").

I have little hesitation in concluding that the attempted stipulation "is clearly contrary to facts disclosed by the record." Examining the record here, it is readily apparent that the determinants necessary and sufficient for computing the outside bases of Tigers Eye Trading LLC's purported partners were themselves required to be determined at the partnership level. In particular, each outside basis is conclusively determined by a set of determinants comprising the following two kinds of items: (1) the purported partner's distributive shares of Tigers Eye Trading LLC's items of income, gain,

loss, deduction, or credit; and (2) the purported partner's items of contributions and distributions, the bases of each of which could be derived from determinations required to be made by Tigers Eye Trading LLC. The first category of determinants consists of direct partnership items under section 301.6231(a)(3)–1(a)(1)(i), Proced. & Admin. Regs., while the second represents derivative partnership items under section 301.6231(a)(3)–1(a)(4)(i) and (ii), Proced. & Admin. Regs.

Because the outside basis of each purported partner of Tigers Eye Trading LLC is conclusively determined entirely by partnership items, recursively applying the "more-appropriately-determined" principle under the second prong of the Secretary's two-pronged approach, discussed above, yields a derivative partnership item. I, therefore, have little doubt that respondent's attempt at stipulating facts that render outside basis an affected item is irreconcilable with the facts disclosed by the record.

I am equally confident that justice requires us to disregard the attempted stipulation. Treating outside basis as an affected item of Tigers Eye Trading LLC would preclude us from readjusting the purported partners' inflated outside bases in this partnership-level proceeding. This readjustment would have to await partner-level actions, even though Tigers Eye Trading LLC was required to make all the determinations necessary and sufficient to compute the purported partners' outside bases. Specifically, no additional information would become available for scrutiny at the subsequent partner-level actions that is not forthcoming now in this partnership-level proceeding.

TEFRA, howsoever unwieldy its current practice may have become,[19] was undoubtedly motivated in large part by the twin goals of conservation of judicial effort and consistent treatment of all partners in the same partnership.[20] Both goals would be undermined by necessitating partner-level actions for readjusting inflated outside bases when all the

[19] See op. Ct. note 29 (discussing the "fiendishly complicated" and ill-fitting changes to TEFRA made by TRA 1997).

[20] See generally Staff of the Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 268 (J. Comm. Print 1982) (observing that before enactment of TEFRA, "Duplication of manpower and administrative and judicial effort was required in some cases to determine the aggregate tax liability attributable to a single partnership item. Inconsistent results could be obtained * * * with respect to the same item.").

determinants for conclusively determining such outside bases are themselves required to be determined at the partnership-level and are consequently within our purview here.

## C. *Wings of Ignominy*

No discussion of accepting or rejecting respondent's concession can be complete without acknowledging and addressing the fact that the Court of Appeals for the D.C. Circuit had, in *Petaluma II*, accepted a similar concession. Does *Golsen* tie our hands here and require us to accept respondent's concession regardless of our own analysis of the issue? This is a difficult question, and it bears careful consideration. I submit that we have sufficient latitude to reject respondent's concession without violating the *Golsen* rule.

At trial in *Petaluma I*, 131 T.C. 84, the Commissioner never even hinted, much less announced, that outside basis was an affected item of Petaluma, the disregarded partnership at issue in that case. However, on appeal, in *Petaluma II*, the Commissioner's advocacy took wings, Icarus-like, and soared close to the sun. His speech, and even more, his silence, strongly suggested that the outside bases of Petaluma's purported partners were affected items.

He stated on brief that "A partner's outside basis is generally an 'affected item,' rather than a 'partnership item'", implying that the purported partners' outside bases in that case were also affected items.[21] The Commissioner strengthened this implication by his choice of words in responding to "The argument of Petaluma and the amicus * * * that the Tax Court created an improper exception to the general rule that outside basis is an affected item that must be determined in a partner-level proceeding." The Commissioner responded that "The Tax Court created no such exception."

The Court of Appeals seems to have taken this denial at face value. Thus, the court observed that "On appeal the Commissioner concedes that outside basis is not a partnership item *in this case*." *Petaluma II*, 591 F.3d at 654 (emphasis supplied). Following this observation, the court seemingly ipso facto "rejected the Tax Court's conclusion that outside basis was a partnership item *in this case*". *Id.* at 655

---

[21] Though the statement leaves open the possibility of outside basis being a partnership item of some other partnership, it seems an excessively narrow construction of the Secretary's regulations discussed *supra* pt. III.

(emphasis supplied). Though the Commissioner went on to argue that "the concept of outside basis in a disregarded partnership is total nonsense", the damage had been done, the wax melted, and his flight abruptly ended.

By comparison with the Commissioner's apparently deliberate distance from the issue in *Petaluma I*, and his "silence as acceptance" of outside bases as affected items in *Petaluma II*, respondent has left nothing unspoken here. He unequivocally declares that "All parties agree that the basis of each purported partner's interest in Tigers Eye Trading, LLC, is an affected item."

Because we were not confronted with a similar declaration in *Petaluma I*, the Court was denied the opportunity to develop a record at trial, in sufficient detail, to enable an objective evaluation of the assertion.[22] Deprived of such a record developed at the trial stage, the Court of Appeals for the D.C. Circuit did not have any evidentiary basis for rejecting what seemed to be a unilateral concession of fact on the Commissioner's part. To paraphrase a different Court of Appeals, trial courts penalize taxpayers, while appellate courts review records.[23]

Clearly, the Commissioner's subtler, albeit similar, concession was accepted in *Petaluma II* against a backdrop devoid of any contrary facts established at trial. Consequently, I do not believe *Golsen* forecloses us from rejecting an unadulterated version of that concession here. Our decision to reject the concession, however, must be supported by sufficient, and sufficiently detailed, findings of fact along the lines outlined above. So long as we do not abuse our discretion and make clearly erroneous factual findings, our rejection should pass muster under a reviewing court's deferential gaze. In sharp contrast, the majority's approach of treating the concession

---

[22] *Petaluma I* was decided "on the parties' cross-motions for summary judgment under Rule 121." 131 T.C. 84. Therefore, the Court did not have reason to consider the determinations that the disregarded partnership may, or may not, have been required to make, and that, in turn, may, or may not, have conclusively determined the purported partners' outside bases. Moreover, the Court had no reason to require the parties to identify the factual issues governing this inquiry. *See supra* note 16 and accompanying text.

[23] *Cf. United States v. Poynter*, 495 F.3d 349, 351–352 (6th Cir. 2007) ("While trial judges sentence individuals face to face for a living, we review transcripts for a living. No one sentences transcripts. All of this suggests that we should acknowledge the trial court's comparative advantages—its ring-side perspective on the sentencing hearing and its experience over time in sentencing other individuals—and give *considerable deference* to their sentencing decisions." (Emphasis supplied.)).

as an issue of law seems to unnecessarily heighten the risk of reversal.

## VI. *Conclusion*

Relying on the *Cal-Maine Foods* standards for disregarding factual stipulations, I would tune out respondent's "over-zealous advocacy", and instead, turn my ear to the Secretary's much more "parsimonious reasoning". Applying this reasoning to the facts clearly disclosed by the record, the Court should conclude "that the basis of each purported partner's interest in Tigers Eye Trading, LLC, is [not] an affected item", but a partnership item. Accordingly, we should sustain the accuracy-related penalty.[24]

HALPERN, *J.*, agrees with this concurring opinion.

––––––––––––

MARVEL, *J.*, dissenting: In an effort to create order out of the uncertainty regarding our jurisdiction over the section 6662(a) accuracy-related penalty in partnership-level proceedings that was created by *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649 (D.C. Cir. 2010) (*Petaluma II*), *aff'g in part, rev'g in part, vacating in part and remanding* 131 T.C. 84 (2008), and *Petaluma FX Partners, LLC v. Commissioner*, 135 T.C. 581 (2010) (*Petaluma III*), the opinion of the Court offers an encyclopedic exposition regarding the interrelationship of the partnership provisions

––––––––––––

[24] Classifying outside basis as a partnership item brings us most, but not all, of the way to sustaining a 40% gross valuation misstatement penalty here. To get to the finish line, we need one more recursive application of the "more-appropriately-determined" principle.

A 40% penalty applies under sec. 6662(a), (e) and (h) "to any portion of an underpayment of tax required to be shown on a return, if * * * the adjusted basis of any property * * * claimed on any return of tax imposed by chapter 1 is * * * [400] percent or more of the amount determined to be the correct amount of such * * * adjusted basis". Such property here is the "property (other than money) distributed by a partnership to a partner in [a claimed] liquidation of the partner's interest". Sec. 732(b). Because no money was included in the claimed liquidating distribution, "The basis of [such] property * * * shall be an amount equal to the adjusted basis of such partner's interest in the partnership". *Id.*

Since outside basis is a partnership item here, we can sustain a readjustment down to zero of each purported partner's interest in the disregarded partnership. The basis in the hands of a purported partner of property other than money received in a claimed liquidation distribution is conclusively determined by determinations that the partnership is required to make and "the adjusted basis of such partner's interest in the partnership". *Id.* The presumption of transitivity of determinations renders the basis of the claimed liquidating distribution more appropriately determined at the partnership level, and therefore, a partnership item. *See supra* note 12. Hence, we can sustain readjusting the basis of the claimed liquidating distribution down to equal the readjusted outside basis of zero. The resulting valuation misstatement is "gross" enough to sustain the 40% penalty.

in chapter 1, subchapter K of the Internal Revenue Code and the partnership litigation provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97–248, sec. 402, 96 Stat. at 648. It concludes that we have jurisdiction to impose the section 6662(a) accuracy-related penalty, including the 40% gross valuation misstatement component of that penalty, at the partnership level. Because I disagree with the attempt in the opinion of the Court to distinguish *Petaluma II*, which I believe we should follow under *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971), I dissent as reflected in part I of this opinion. However, I believe that much of the analysis is correct and that *Petaluma III* was wrongly decided. I explain my reasoning in part II of this opinion.

## I.

As explained more fully in part II, there is much in the opinion of the Court with which I agree, but its analysis flies in the face of *Petaluma III* and cannot be reconciled with it. I also disagree that there is an adequate basis for distinguishing *Petaluma II*. Consequently, for some of the same reasons set forth in Judge Holmes' dissenting opinion, I reluctantly dissent from that part of the opinion of the Court that attempts to distinguish *Petaluma II* as interpreted and applied in *Petaluma III*.

## II.

Despite my reservations about the effectiveness of the attempt to distinguish *Petaluma II* as interpreted and applied in *Petaluma III*, I believe *Petaluma III* was wrongly decided, but for reasons somewhat different from those the opinion of the Court suggests. I explain these reasons below.

While I understand why the opinion of the Court concludes that outside basis is properly characterized as a partnership item in a case like *Tigers Eye Trading, LLC* where the partnership is disregarded, I do not believe that our jurisdiction over the section 6662(a) penalty depends upon that conclusion. I believe that we have jurisdiction to sustain the accuracy-related penalty at the partnership level in Son-of-BOSS cases in which we disregard the transitory partnership

regardless of whether outside basis is a partnership item or an affected item.

Before the enactment of the Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. No. 105–34, sec. 1238, 111 Stat. at 1026, which amended sections 6221, 6226, and 6230 of the TEFRA partnership litigation provisions in the Code, penalties and additions to tax (collectively, penalty or penalties) were classified as affected items, and issues regarding such items were litigated in a partner-level affected item deficiency proceeding following the completion of the partnership-level proceeding. *See, e.g.*, *N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 744–745 (1987). TRA 1997 did not change the classification of penalties as affected items, but it amended section 6221 to provide that the applicability of a penalty "which relates to an adjustment to a partnership item" must be determined at the partnership level. Of particular significance, TRA 1997 also amended section 6230(a)(2)(A)(i) to read as follows:

SEC. 6230. ADDITIONAL ADMINISTRATIVE PROVISIONS.

(a) COORDINATION WITH DEFICIENCY PROCEEDINGS.—

(1) IN GENERAL.—Except as provided in paragraph (2) or (3), subchapter B of this chapter[1] shall not apply to the assessment or collection of any computational[2] adjustment.

(2) DEFICIENCY PROCEEDINGS TO APPLY IN CERTAIN CASES.—

(A) Subchapter B shall apply to any deficiency attributable to—

(i) affected items which require partner level determinations (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items) * * *

Because the change to section 6230(a)(2)(A)(i) deprived a partner of the opportunity to litigate issues concerning the applicability of a penalty that relates to an adjustment of a partnership item in an affected items deficiency proceeding, TRA 1997 added section 6230(c)(1)(C) to provide that a partner may file a claim for refund on the ground that "the Secretary erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." The House committee report described the

---

[1] Subch. B (secs. 6211 through 6216) contains the provisions authorizing the Commissioner to issue notices of deficiency and provides the Tax Court with jurisdiction to redetermine those deficiencies.

[2] Sec. 6231(a)(6) defines a computational adjustment as "the change in the tax liability of a partner which properly reflects the treatment under * * * [TEFRA] of a partnership item."

reason for the change and explained the provisions as follows:

*Reasons for Change*

Many penalties are based upon the conduct of the taxpayer. With respect to partnerships, the relevant conduct often occurs at the partnership level. In addition, applying penalties at the partner level through the deficiency procedures following the conclusion of the unified proceeding at the partnership level increases the administrative burden on the IRS and can significantly increase the Tax Court's inventory.

*Explanation of Provision*

The bill provides that the partnership-level proceeding is to include a determination of the applicability of penalties at the partnership level. However, the provision allows partners to raise any partner-level defenses in a refund forum.
[H.R. Rept. No. 105–148, at 594 (1997), 1997–4 C.B. (Vol. 1) 319, 916.]

*See also* S. Rept. No. 105–33, at 261 (1997), 1997–4 C.B. (Vol. 2) 1081, 1341.

The above-described amendments to the TEFRA partnership litigation procedures (collectively, the penalty litigation amendments) changed the landscape of penalty litigation by requiring that issues regarding the application of penalties be litigated in the first instance in the partnership-level proceeding and not in partner-level affected items deficiency proceedings, as was the case before the effective date of the penalty litigation amendments. The only qualifier that Congress imposed is that the penalty relate to an adjustment to a partnership item. Secs. 6221, 6226(f). Congress did not define the word "relate", [3] nor did Congress tie the penalty determination to the existence of a computational adjustment that could be summarily assessed at the end of the partnership-level proceeding. In fact, Congress did not otherwise address the mechanics of the TEFRA partnership litigation procedures as they apply to penalties.

When Congress enacted the penalty litigation amendments, it was well aware that a partnership-level proceeding under TEFRA does not result in the determination of an underpayment at the partnership level. Underpayments are calculated at the partner level after a partnership-level pro-

---

[3] "Relate" means, inter alia, "to show or establish logical or causal connection". Merriam Webster's Collegiate Dictionary 987 (10th ed. 1997). "Related" means, inter alia, "being connected; associated." The American Heritage Dictionary of the English Language 1473 (4th ed. 2000).

ceeding is completed and/or after an affected items deficiency proceeding (which occurs if an affected item requires a factual determination at the partner level) is completed. Nevertheless, Congress required that penalties that relate to the adjustment of a partnership item be litigated in the partnership-level proceeding *and not in an affected items deficiency proceeding*. Congress did this to eliminate duplicative litigation of the same issue in affected items deficiency proceedings and to take advantage of the partnership-level proceeding, in which all of the purported partners are bound by the outcome. *See* sec. 6221; *see also* H.R. Rept. No. 105–148, *supra* at 594, 1997–4 C.B. (Vol. 1) at 916. Congress did not limit the required relationship to those partnership items the adjustment of which flows through to the partners' Federal income tax returns and results in a computational adjustment to the partners' tax liabilities at the end of the partnership-level proceeding as we held in *Petaluma III*.

In the notice of final partnership administrative adjustment (FPAA) issued to Tigers Eye Trading, LLC (Tigers Eye), respondent made adjustments to a variety of partnership items and determined that the accuracy-related penalty under section 6662(a) applied. *See* op. Ct. pp. 81–85, 140. Specifically, in the FPAA respondent determined that the transitory and illusory partnership involved in the Tigers Eye Son-of-BOSS transaction must be disregarded for Federal income tax purposes. *See id.* p. 84. Respondent also reduced partnership items to zero to reflect that determination (capital contributions, distributions of property other than money, and other items). *See id.* p. 81. Each one of those adjustments was directly attributable to and was the result of the determination that the transitory and illusory partnership in *Tigers Eye Trading, LLC* must be disregarded for Federal income tax purposes.

The analysis in the opinion of the Court illustrates in considerable detail that the relationship requirement imposed by section 6221 and referenced in section 6230(a)(2)(A)(i) is satisfied in *Tigers Eye Trading, LLC*. *See id.* pp. 103–109, 112–119, 123, 126–127. The section 6662(a) penalty clearly relates to respondent's determinations to disregard the Tigers Eye partnership and to zero out specific partnership items such as contributions and distributions allegedly made by the purported partnership to the pur-

ported partners. Although the opinion of the Court incorporates this analysis to convince the reader that outside basis is a partnership item and not an affected item, *see id.* pp. 126–127, the analysis is particularly convincing on the real issue related to our penalty jurisdiction—whether the penalty in question "relate[s] to adjustments to partnership items", *see* sec. 6230(a)(2)(A)(i); *see also* secs. 6221, 6226(f).

It helps to put the discussion regarding the impact of the penalty litigation amendments on our penalty jurisdiction in TEFRA partnership litigation in context, and the opinion of the Court does that very well. The Tigers Eye Son-of-BOSS transaction relied upon and played off of the provisions of subchapter K (sections 701 through 777), and the anticipated tax benefits that the transaction was supposed to generate depended upon the existence of a valid partnership. Recognition of the partnership for Federal income tax purposes was essential to the success of the Son-of-BOSS transaction as a tax shelter.

There is a logical and causal relationship between respondent's determination to disregard a partnership without economic substance, his determination to adjust other partnership items, such as contributions and distributions, to zero, and his determination to impose the section 6662(a) accuracy-related penalty. All of the adjustments relate to and flow from respondent's determination that the partnership is disregarded for Federal income tax purposes, and the determination to impose the accuracy-related penalty flows directly from and relates to the determination to disregard the transitory and illusory partnership. Under the penalty litigation amendments, that is all that Congress required for the penalty to be litigated in the partnership-level proceeding.

Whether or not outside basis is at play (and, if so, whether outside basis is an affected item or in narrow circumstances a partnership item) should not control our resolution of whether we have jurisdiction to decide in a partnership-level proceeding whether the section 6662(a) penalty applies. What does control our resolution of the issue is whether the penalty relates to the adjustment of a partnership item. Absent any guidance from Congress regarding the meaning of the word "relates", I, like the opinion of the Court, answer the question in the affirmative. The imposition of the section

6662(a) penalty is clearly related to the zeroing out of partnership items that results from a determination that the partnership must be disregarded for Federal income tax purposes. That relationship still exists even if the partnership-level proceeding does not result in computational adjustments to the partners' income tax liabilities and related assessment at the end of the partnership-level proceeding and must await the completion of an affected items deficiency proceeding at the partner level.

If the "relate to adjustments to partnership items" language of section 6230(a)(2)(A)(i) is narrowly construed to mean only a numerical adjustment of an item on a partnership return that flows through to the partners' returns and results in computational adjustments to the partners' tax liabilities at the end of the partnership proceeding, such an interpretation, I submit, would effectively repeal the penalty litigation amendments with respect to many, if not most, partnerships because the computation of the underpayment of the partners' tax liabilities must await the completion of affected items deficiency proceedings. I do not believe that is what Congress intended when it enacted the penalty litigation amendments.

Congress intended that in modern tax shelters involving partnerships, penalties related to the improper use of an illusory partnership as a mechanism for generating large noneconomic losses should be litigated in the partnership-level proceeding. Congress did so because the relevant conduct, i.e., the establishment of the partnership, which includes the recording of partner contributions, the establishment of partner capital accounts, and adjustments to those accounts resulting from distributions, assumption of liabilities, and liquidations, occurs largely at the partnership level. *Cf.* H.R. Rept. No. 105–148, *supra* at 594, 1997–4 C.B. (Vol. 1) at 916. In the case of a disregarded partnership, regardless of whether a disallowance of outside basis is at play and regardless of whether outside basis is a partnership item or an affected item, any adjustment at the partner level is preceded by one or more adjustments to partnership items, and the section 6662(a) penalty relates to those partnership-level adjustments.

KROUPA, *J.*, agrees with part I of this dissent.
GALE and PARIS, *JJ.*, agree with part II of this dissent.

———————————

HOLMES, *J.*, dissenting: It is customary and appropriate for us to reconsider an issue after being reversed by a circuit court, and stick to our position if we think it right. But only if the case we use to reaffirm ourselves is appealable to a different circuit. When, as unfortunately we do today, we brazenly challenge the D.C. Circuit's precedent in *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649 (D.C. Cir. 2010) (*Petaluma II*), *aff'g in part, rev'g in part and remanding in part* 131 T.C. 84 (2008) (*Petaluma I*), in a case appealable to that court we risk being seen as impudent. We also risk not even getting that court to reconsider—the D.C. Circuit treats its published opinions as *stare decisis* for later panels, *see, e.g.*, *Sierra Club & Valley Watch, Inc. v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011), so what we are really asking is for the parties to appeal and then petition for *en banc* reconsideration.

Before today, our Court recognized the importance of circuit-court precedent. In our landmark decision in *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971), we held "that better judicial administration requires us to follow a Court of Appeals decision which is squarely in point where appeal from our decision lies * * * to that court alone." (Fn. ref. omitted.) *Golsen* tells us not to bang our head against contrary appellate precedent, and we've consistently held that we must follow the precedent of the court that has appellate jurisdiction over a case. *See Bergmann v. Commissioner*, 137 T.C. 136, 146 (2011) ("Because this case is appealable to the * * * Ninth Circuit, we follow that court's precedent"); *Wechsler & Co. v. Commissioner*, T.C. Memo. 2006–173 ("[U]nder the doctrine of *Golsen* * * * we must apply [Second Circuit] precedents * * * to the extent that they contradict our precedents").[1]

———

[1] *See also Media Space, Inc. v. Commissioner*, 135 T.C. 424, 433–434 (2010) ("The Tax Court will generally defer to the rule adopted by the Court of Appeals for the circuit to which appeal would normally lie, if that Court of Appeals has ruled with respect to the identical issue"); *Porter v. Commissioner*, 132 T.C. 203, 220 (2009) ("This case is appealable * * * to the * * * Fourth Circuit. Under the rule laid down in *Golsen* * * * we abide by that court's precedent"); *Estate of Kyle v. Commissioner*, 94 T.C. 829, 850 (1990) ("Any appeal in this case lies to the
Continued

The *tsuris* this will cause us—where two circuit courts,[2] a few trial courts,[3] the Department of Justice, and even the IRS (at times) all disagree with the position we're taking— cannot possibly be worth it. Especially when it's nothing more than a dispute about a complicated little bit of partnership-tax law—and not even substantive partnership-tax law, but partnership-tax-law *procedure.* And a point of partnership-tax-law procedure in a motion to revise a stipulated decision we entered in 2009. This was not the case to use to revisit *Petaluma I*: "[I]n most matters it is more important that the applicable rule of law be settled than that it be settled right." *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406 (1932) (Brandeis, J., dissenting).

I'll begin with an analysis of why the majority's maneuver around the precedent it's bound to follow is bound to fail, and then move on to an active defense of that precedent. For not only do I believe *Golsen* requires us to follow *Petaluma II* in this case; I believe the D.C. Circuit got it right both on the question of whether outside basis is a partnership item, and on the limits of our jurisdiction over penalties at the partnership level.

## I.

Before we hinted in a footnote in *Countryside Ltd. P'ship v. Commissioner*, T.C. Memo. 2008–3 n.4, that we might begin to view things differently, we had consistently held that outside basis was generally an affected item.[4] But in

---

* * * Fifth Circuit, and we are bound by any decision of that court squarely in point"); *Hendrix v. Commissioner*, T.C. Memo. 2011–133 ("This case is appealable to the * * * Fifth Circuit, and we follow precedent of that court that is squarely on point"); *Peter D. Dahlin Att'y at Law, P.S. v. Commissioner*, T.C. Memo. 2007–310 ("Pursuant to *Golsen* * * * this Court will follow the precedent established in the court to which an appeal would lie"); *Cutts v. Commissioner*, T.C. Summary Opinion 2004–8 (Beghe, J.) ("Because any appeal in this case, if it were permissible, would lie to the * * * Eleventh Circuit, we follow the precedent established in that Circuit").

[2] *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649, 654–655 (D.C. Cir. 2010) (*Petaluma II*), *aff'g in part, rev'g in part, and vacating in part and remanding on penalty issues* 131 T.C. 84 (2008) (*Petaluma I*); *Jade Trading, LLC v. United States*, 598 F.3d 1372, 1380 (Fed. Cir. 2010) (*Jade Trading II*).

[3] *See, e.g., Jade Trading, LLC v. United States*, 98 Fed. Cl. 453, 460 (2011) (*Jade Trading III*), *aff'd*, 451 Fed. Appx. 954 (Fed. Cir. 2012); *Gosnell v. United States*, No. CV–09–01399–PHX– NVW, 2011 U.S. Dist. LEXIS 72224, at *5 n.2 (D. Ariz. June 28, 2011); *Fid. Int'l Currency Advisor A Fund, LLC v. United States*, 747 F. Supp. 2d 49, 237 (D. Mass. 2010). *But see K2 Trading Ventures, LLC v. United States*, 101 Fed. Cl. 365 (2011) (in dicta erroneously saying all FPAA items, which included outside basis, were partnership items without considering *Jade Trading II*).

[4] *See, e.g., Domulewicz v. Commissioner*, 129 T.C. 11, 21 n.13 (2007), *aff'd in part and remanded on other grounds sub nom. Desmet v. Commissioner*, 581 F.3d 297 (6th Cir. 2009);

*Petaluma I*, we officially changed course to hold that outside basis was a partnership item in "situation[s] where no partner-level determinations are necessary." The D.C. Circuit disagreed, and reversed us in *Petaluma II*—a case that's almost identical to this one.

In *Petaluma FX Partners, LLC v. Commissioner*, 135 T.C. 581 (2010) (*Petaluma III*), we tried to comply with the D.C. Circuit's mandate in *Petaluma II*. That decision is so recent that the appeal from it is still under submission. Yet the majority in this case offers up essentially two theories as to why we don't have to follow *Petaluma II* and *Petaluma III* in this case. It argues that

• the jurisdictional limitations established in *Petaluma II* were based on a concession of the Government that outside basis was an affected item; and

• the D.C. Circuit did not consider the applicable regulation in *Petaluma II* when it concluded that outside basis is an affected item, and therefore that opinion is superseded by the intervening opinions of the Supreme Court in *Mayo Found.* and the D.C. Circuit in *Intermountain*.

I begin by looking at the merits of these arguments. I also ask whether it's up to us, as a trial court, even to make them.

### A.

The majority assumes that *Petaluma II*'s holding was dictated by the Government's concession on appeal that outside basis was an affected item. But parties can't concede that a court has subject matter jurisdiction over a case; a court has to decide that for itself. *See, e.g.*, *NAACP v. New York*, 413 U.S. 345, 353 (1973); *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1055 (D.C. Cir. 1988) (defendant's concession regarding jurisdiction didn't matter to court's jurisdictional analysis); *McGowan v. Commissioner*, 67 T.C. 599, 607 (1976). And because the D.C. Circuit's jurisdiction over outside basis depended on ours, the Government's concession on appeal didn't bind the D.C. Circuit and was irrelevant to its jurisdictional analysis.

*G–5 Inv. P'ship v. Commissioner*, 128 T.C. 186, 189 n.7 (2007); *Gustin v. Commissioner*, T.C. Memo. 2002–64.

Despite what the majority insinuates, the D.C. Circuit was clear that it understood all this:

On appeal the Commissioner concedes that outside basis is not a partnership item in this case. Instead, he asserts that outside basis is an affected item whose elements are mainly or entirely partnership items. He maintains that the Tax Court had jurisdiction to state the "obvious conclusion" that a partner cannot have any basis in a disregarded partnership. The correctness of this conclusion is immaterial, however, for the question is not whether the Tax Court's determination was correct, *but whether the Tax Court had jurisdiction* to make that determination at all in this partnership-level proceeding.

*    *    *    *    *    *    *

*We have already rejected the Tax Court's conclusion that outside basis was a partnership item in this case,* and we likewise reject the Commissioner's contention that outside basis, although it is an affected item, could nonetheless be determined in the partnership-level proceeding. * * *

[*Petaluma II*, 591 F.3d at 654–655; emphasis added.]

This jurisdictional question is a question of law. Courts are never bound by a concession on appeal as to a question of law, *see, e.g.*, *United States v. Ginyard*, 444 F.3d 648, 649, 651–652 (D.C. Cir. 2006), so if the D.C. Circuit really did accept an erroneous concession of jurisdiction, it would have committed a reversible error. I just don't believe that to be the case.

Even assuming *arguendo* that the D.C. Circuit relied upon the Government's concession at all, that court also gave an additional reason for holding that outside basis was an affected item under the plain language of section 6231(a)(3).

The fact that a determination seems obvious or easy does not expand the court's jurisdiction beyond what the statute provides. In other words, it does not matter how low the fruit hangs when one is forbidden to pick it. We hold that the Tax Court had no jurisdiction to determine that Petaluma's partners had no outside basis in the disregarded partnership. Finally, we note that *nothing about the concept of outside basis indicates that it is more appropriately determined at the partnership level.* If disregarding a partnership leads ineluctably to the conclusion that its partners have no outside basis, that should be just as obvious in partner-level proceedings as it is in partnership-level proceedings. Moreover, with the invalidity of the partnership conclusively established as a partnership-level determination, there is little danger that outside basis will receive inconsistent treatment at the individual partner level. [*Petaluma II*, 591 F.3d at 655; emphasis added.]

The majority incorrectly dismisses *Petaluma II*'s discussion of outside basis as dicta. Where a decision rests on two or more separate grounds, none is dictum. *See, e.g.*, *United States v. Title Ins. & Trust Co.*, 265 U.S. 472, 486 (1924); *Natural Res. Def. Council, Inc. v. NRC*, 216 F.3d 1180, 1189 (D.C. Cir. 2000). We should instead regard the D.C. Circuit's holding in *Petaluma II* about outside basis as binding precedent.

### B.

The majority also reasons that "[b]ecause the Court of Appeals did not consider the regulation in concluding in *Petaluma II* that outside basis is an affected item, * * * its decision on the outside basis issue in *Petaluma II* has been superseded by the intervening opinions of the Supreme Court in *Mayo Found.* and the Court of Appeals in *Intermountain*." *See* op. Ct. p. 112. Here is the real beginning of our trouble. It's not plausible to read *Petaluma II* as just a mistake caused by the D.C. Circuit overlooking the regulation the majority relies on when there's a simpler reading of that opinion: The D.C. Circuit construed the Code itself to make outside basis an affected item—the low-hanging forbidden-fruit metaphor implies that if an item is not more appropriately determined at the partnership level or is not an item with respect to a partnership's own tax year, it is not a partnership item. *Petaluma II*, 591 F.3d at 655. Even if determining it would be really, really easy at the partnership level.

The majority asserts that *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. ____, 131 S. Ct. 704 (2011), and *Intermountain Ins. Serv. of Vail, LLC v. Commissioner*, 650 F.3d 691 (D.C. Cir. 2011), *rev'g* 134 T.C. 211 (2010), somehow changed the legal landscape that the court relied on in *Petaluma II*. I disagree. In *Mayo Found.*, the Supreme Court held that courts must apply *Chevron*'s two-step framework (rather than the multifactor test of *National Muffler*) to analyze the validity of regulations. *See id.* at ____, 131 S. Ct. at 713–714. That wasn't, however, new law in the D.C. Circuit—it had been applying *Chevron* deference to regulations at least since 2003, well before either *Petaluma II* or *Mayo Found. See Tax Analysts v. IRS*, 350 F.3d 100,

102–103 (D.C. Cir. 2003). And nobody—in this case or in any of the *Petaluma* cases—has said the regulation is invalid.

It's not even true that the D.C. Circuit overlooked the regulation: A glance at *Petaluma II* shows that the court cited section 301.6231(a)(3)–1, Proced. & Admin. Regs. In fact, it cited the regulation three times. *Petaluma II*, 591 F.3d at 650, 653. But the majority infers from the D.C. Circuit's failure to construe the section of the regulation that deals with distributions and contributions, section 301.6231(a)(3)–1(a)(4) and (c), Proced. & Admin. Regs., that it did not consider that regulation in reaching its holding that outside basis was an affected item. It's more reasonable to conclude that it just didn't read the regulation the way the majority here does today. Fighting the D.C. Circuit's holding in *Petaluma II* is hard enough, but fighting it with an argument that the court missed the relevant regulation—when it actually cited it—will probably prove less than entirely persuasive.

The majority's reliance on *Intermountain* is also misplaced. In *Intermountain*, the D.C. Circuit held that old Code section 275(c) was ambiguous and that Congress added language to section 6501(e)(1)(A) to resolve the ambiguity. *See id.* at 701–702. It also held that *Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958), only dealt with the interpretation of old section 275(c), and didn't unambiguously foreclose the new regulation applying new section 6501(e)(1)(A). *Intermountain*, 650 F.3d at 703–704. The court then, as *Chevron* requires, analyzed the text of the relevant Code section and the reasonableness of the regulation. *See id.* at 704–710.

Nothing new here either. In neither this case nor *Petaluma* is there anything like the problem created by *Colony*—a precedent that predates a regulation and might affect its validity. And *Petaluma II* interpreted the very same TEFRA regulations that we are dealing with here. *Colony*, in contrast, did not interpret the regulations at issue in *Intermountain*; it was relevant only to the question of whether the Code section in that case was ambiguous. The majority here cannot reasonably use *Intermountain* to disregard *Petaluma II*'s interpretation of the TEFRA regulations.

What the majority is really arguing is that if only the D.C. Circuit knew about its more elaborate argument, it would surely overrule *Petaluma II*. The rule for Article III courts in

this situation is clear: The Supreme Court has instructed appellate courts not to anticipatorily overrule outdated precedent.

> We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. We reaffirm that "if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." * * * [*Agostini v. Felton*, 521 U.S. 203, 237 (1997); citation omitted.]

I can think of no reason for our relation with the appellate courts that review our work to be any different.

## II.

Even if we weren't climbing such a towering mountain of contrary authority, I'd still be skeptical of the majority's analysis. Absent a few very limited exceptions, the Code and regulations make outside basis an affected item.

## A.

"[O]ur starting point must be the language employed by Congress." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337 (1979). Section 6231(a)(3) says:

> The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A, to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

The majority boils it down to this: "A partnership item is an item that is (1) required to be taken into account under any provision of subtitle A, governing income taxes, and (2) identified by the Secretary in the regulations as 'more appropriately determined at the partnership level.'" *See* op. Ct. p. 98. The majority's reconstructed definition, however, leaves out an important phrase.

Look at the first part of section 6231(a)(3)—"[W]ith respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of sub-

title A." The majority construes this to mean that an item only needs to be related to a partnership and "taken into account in computing the income tax liability" of a partner. *See* op. Ct. p. 116; *see also* op. Ct. p. 105. This would make the modifier "partnership's" before "taxable year" superfluous—section 6231(a)(3) already requires the item be related to or "with respect to a partnership."

The phrase is no accident—"partnership's taxable year" is a defined term, *see* sec. 706, and "partnership's taxable year" or "partnership taxable year(s)" appears in twenty or so Code sections. [5] The Code makes sure that a partnership has its own tax year as if it were a taxpayer apart from its partners. [6] *See* sec. 706(b)(1). And the tax years for partners and partnerships may even start and end on different dates. *See* sec. 706(b)(2); sec. 1.706–1, Income Tax Regs.

We must read section 6231(a)(3) *in pari materia* with section 706. "We can only take the Code as we find it and give it as great an internal symmetry and consistency as its words permit." *United States v. Olympic Radio & Television, Inc.*, 349 U.S. 232, 236 (1955). The phrase "partnership's taxable year," read this way, limits the substantive reach of the Code's definition of a "partnership item." A partnership item has to have something to do with the partnership's (and not, by implication, just with the partners') tax year. That's why section 301.6231(a)(3)–1(a), Proced. & Admin. Regs., says that a partnership item is an item that is "required to be taken into account for the taxable year of a partnership" under any income tax provision of the Code.

That leads me to my next point—section 6231(a)(3) also says that a partnership item isn't a partnership item unless a regulation makes it one. But that section adds yet one

---

[5] *See* secs. 465, 706, 775, 1402, 1446, 6031, 6223, 6224, 6226, 6227, 6228, 6229, 6230, 6231, 6241, 6242, 6247, 6248, 6251, 6252.

[6] Section 706 reads:

SEC. 706. TAXABLE YEARS OF PARTNER AND PARTNERSHIP.

(a) YEAR IN WHICH PARTNERSHIP INCOME IS INCLUDIBLE.—In computing the taxable income of a partner for a taxable year, the inclusions required by section 702 and section 707(c) with respect to a partnership shall be based on the income, gain, loss, deduction, or credit of the partnership for any taxable year of the partnership ending within or with the taxable year of the partner.

(b) TAXABLE YEAR.—

(1) PARTNERSHIP'S TAXABLE YEAR.—

(A) PARTNERSHIP TREATED AS TAXPAYER.—The taxable year of a partnership shall be determined as though the partnership were a taxpayer.

more restriction. The Secretary can provide in the regulations that something is a partnership item only after he concludes that it's more appropriately determined at the partnership level than at the partner level.

What the majority is missing is that the Commissioner didn't expressly conclude it is more appropriate to determine outside basis at the partnership level than at the partner level. The Code doesn't say that a partnership item is defined by the certainty with which a factfinder can determine it from what he knows at the partnership level. [7] After all, *Petaluma II* taught us that even if something is determinable at the partnership level, it can still be more appropriately determined at the partner level.

## B.

The majority's attack on *Petaluma II* will succeed or fail, though, on the strength of its interpretation of the regulations defining partnership and affected items. Section 301.6231(a)(5)–1(b), Proced. & Admin. Regs., defines affected items, and provides that "[t]he basis of a partner's partnership interest [(i.e., outside basis)] is an affected item to the extent it is not a partnership item." One might reasonably read this as stating a general rule that outside basis is an affected item, but with a few exceptions. The majority, however, enthusiastically finds a great many instances where outside basis is a partnership item. Cataloging them all, one finds that the majority would hold outside basis to be a partnership item when

---

[7] The Code is actually clearer than Judge Wherry's elaborately detailed and cognitively challenging grammatical and syntactical analysis lets on. I believe Congress added the phrase "to the extent regulations prescribed by the Secretary provide that * * * such item is more appropriately determined at the partnership level than at the partner level" to section 6231(a)(3), so that the Secretary would not pervert and subvert the preceding part of section 6231(a)(3)'s definition—as the majority does today—in promulgating regulations listing what are partnership items. Congress wanted to kick the ladder out from under the Secretary if he went picking fruit that Congress didn't want picked at the partnership level. I would therefore hold that "any item required to be taken into account for the partnership's taxable year" under the provisions of the income tax code would be one the Secretary could reasonably find "more appropriately determined at the partnership level than at the partner level." And that means there will never be the situation like the one dreamed up by Judge Wherry in note 11 of his concurrence—it's more of a red herring than a Trojan horse. The "more appropriately determined" language clarifies the rest of section 6231(a)(3) and seems to foreclose possible deviations from the statute's plain language.

• outside-basis computations are made under the general rule of section 705(a), *see* op. Ct. pp. 112–114; [8]

• outside-basis computations are made under the alternative rule of section 705(b), *see* op. Ct. pp. 114–115; and, of course

• whenever the partnership is a sham.

Thus, the first problem with the majority's result: It's usually not a good reading when the exception swallows all but a bit of the tail of the general rule.

Stranger things have happened in tax law—but probably not here. The regulation itself lists one exception to the general rule that outside basis is an affected item: "Optional adjustments to the basis of partnership property pursuant to an election under section 754 (including necessary preliminary determinations, such as the determination of a transferee partner's basis in a partnership interest)." Sec. 301.6231(a)(3)–1(a)(3), Proced. & Admin. Regs. This makes sense. The reason outside basis is a partnership item when a partnership makes a section 754 election is that such a partnership itself needs to determine its partners' outside bases to redetermine the partnership's own inside basis for the "partnership's taxable year." [9]

This specific exception has, of course, nothing to do with this case because Tigers Eye never made a section 754 election. [10] The majority instead looks at the regulation's general discussion of contributions and distributions, section 301.6231(a)(3)–1(a)(4) and (c), Proced. & Admin. Regs., and finds there its proof that outside basis is a partnership item, at least when it can be determined exclusively from other partnership items.

But that's not exactly what the regulation says. Section 301.6231(a)(3)–1(a)(4), Proced. & Admin. Regs., goes like this:

---

[8] The majority acknowledges only one instance where outside basis is an affected item—when a partner buys his partnership interest from a third party. *See* op. Ct. pp. 117–118.

[9] "When a new partner acquires a partnership interest, he typically pays fair market value for that interest, which can result in discrepancies between his outside basis and his share of the partnership's inside basis. To help balance out those discrepancies, section 754 allows a partnership to elect to adjust the inside basis of partnership assets to reflect the new partner's different outside basis." *Kligfeld Holdings v. Commissioner*, 128 T.C. 192, 197 (2007); *see* secs. 743(b), 754.

[10] We noted in *Petaluma I* that outside basis can also be a partnership item when there is a tiered partnership—a partnership that owns an interest (i.e., has outside basis) in a second partnership. *See Petaluma I*, 131 T.C. at 99.

Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner:

  (i) Contributions to the partnership;
  (ii) Distributions from the partnership; and * * *

I acknowledge that section 301.6231(a)(3)–1(a)(4), Proced. & Admin. Regs., is less than a model of clarity—it doesn't just say that contributions to, and distributions from, a partnership are partnership items. It says "items relating to" them are—but only "*to the extent* that a determination of such items can be made from determinations that the partnership is required to make * * * for purposes of the partnership books and records or for purposes of furnishing information to a partner." (Emphasis added.)

In the very first paragraph of section 301.6231(a)(3)–1(a), Proced. & Admin. Regs., however, the regulation unequivocally states that all the items it lists as partnership items are "required to be taken into account for the taxable year of a partnership under subtitle A." We can't just ignore this language. That's why in *Hambrose Leasing 1984–5 Ltd. P'ship v. Commissioner*, 99 T.C. 298, 311 (1992), we held:

  While, at first blush, * * * [section 301.6231(a)(3)–1(a)(4), Proced. & Admin. Regs.] may seem broad enough to permit virtually any determination of an item in a partnership level proceeding so long as it is related, even remotely, to the partnership, an item is not a partnership item under this subparagraph unless required to be taken into account for the taxable year of the partnership. Sec. 6231(a)(3); sec. 301.6231(a)(3)–1(a), Proced. & Admin. Regs.

We also held that for something to be a partnership item under the regulation, it has to at least have an "effect on the partnership, its books and records, or [some] other aspect of the partnership." *Id.* Likewise, in *Dakotah Hills Offices Ltd. P'ship v. Commissioner*, T.C. Memo. 1996–35, we held:

[T]he determination of whether an item is a partnership item does not depend upon whether the item is determinable from information actually available at the partnership level. * * * The critical factor is whether the partnership was required to make a determination of that item. * * *

(citing by analogy *Dial USA, Inc. v. Commissioner*, 95 T.C. 1, 4 (1990)); *see also Olsen-Smith, Ltd. v. Commissioner*, T.C. Memo. 2005–174. [11]

In *Petaluma I* we did change course and relied on *Allen Family Foods, Inc. v. Commissioner*, T.C. Memo. 2000–327. We claimed in *Petaluma I* that *Allen Family Foods* supported the idea that "[s]ection 301.6231(a)(3)–1(c)(2) and (3), Proced. & Admin. Regs., provides that partnership items include determinations that relate to contributions and distributions to the extent that those determinations do not require information that is outside the Court's jurisdiction." *Petaluma I*, 131 T.C. at 99. We then reasoned that since

[o]utside basis is related to a partner's contributions and share of distributions[,] * * * [when] a partnership is disregarded for tax purposes * * *, the Court may determine that the partner's outside basis is zero without requiring a partner-level [factual] determination because there can be no adjusted basis in a disregarded partnership. * * * [*Id.* at 99–100.[12]]

*Allen Family Foods*, however, only repeated the language in the temporary regulation, and held that we lacked jurisdiction in a corporate-level proceeding to decide the amount of the shareholder's basis in an S corporation. *Allen Family Foods*, T.C. Memo. 2000–327. This is a strong hint that our reliance on *Allen Family Foods* in *Petaluma I* was seriously misplaced.

The majority, however, makes no mention of these pre-*Petaluma I* cases. And although I agree that a partnership must determine certain items—partnership items such as contributions and distributions—so that the *partner* can figure out his basis in the partnership, Tigers Eye itself was

---

[11] The majority goes to great lengths to try to distinguish *Dial USA, Inc. v. Commissioner*, 95 T.C. 1 (1990), where we held that a shareholder's basis in the stock of a corporation is not a subchapter S item that can be decided at the corporate level. The majority says that our past reliance on *Dial* to hold outside basis is an affected item is misplaced because these cases didn't examine the regulation defining "partnership items," and *Dial* involved our jurisdiction to determine subchapter S items at the corporate level. *See* op. Ct. pp. 119–120. The problem with its analysis, however, is that we did look at and rely on the Code and regulations to reach our conclusion that shareholder basis is not an item that can properly be decided in the subchapter S corporate proceeding. *See Dial*, 95 T.C. at 3–6. Nowhere in our analysis in *Dial* did we view the subchapter S regulations as modifying the TEFRA regulations, and we explicitly recognized that the TEFRA provisions "which govern the 'judicial determination of partnership items' and those that 'relate to partnership items'" were incorporated into the subchapter S provisions. *Id.* at 3. Because *Dial* actually analyzed the TEFRA regulations, our later cases that relied on *Dial* were not simply thoughtless extensions of the S corporation provisions to partnerships.

[12] See my dissent in *Thompson v. Commissioner*, 137 T.C. 220, 242 (2011), which discusses the types of affected items I believe are subject to deficiency procedures.

never required to determine its partners' outside bases, and its partners' outside bases had no effect on its taxable year. The majority even acknowledges as much. *See* op. Ct. pp. 106–107 ("Tigers Eye needed to provide that information to the option partners *so that they* could properly determine their bases in the distributed property." (Emphasis added.))

## C.

Odder still is the majority's invocation of *Chevron*. *See* op. Ct. pp. 124–126. Having misconstrued the regulation, the majority moves on to defend its validity—something which no one has challenged before. The most troubling part of the majority's analysis on this seemingly superfluous subject is its assertion that "the Secretary considered the treatment of partnership items in a detailed and reasoned fashion before making a final decision." *See* op. Ct. p. 125.

In explaining the regulations at the time of their publication, however, the Secretary gave no hint that he regarded outside basis as a partnership item under section 301.6231(a)(3)–1(a)(4) and (c), Proced. & Admin. Regs., absent a section 754 election. *See* 51 Fed. Reg. 13212, 13213 (Apr. 18, 1986). There's certainly nothing like the majority's analysis—that if contributions and distributions are partnership items, outside basis must be a partnership item too. Instead, the explanation straightforwardly reasons that where a partnership makes a section 754 election, "[t]he determination of the transferee partner's basis in his partnership interest is a partnership item *because that determination is necessary in order for the partnership to make certain partnership-level determinations* with respect to the transferee partner's basis in partnership property." *Id.* (emphasis added).

Even more tellingly, before our decision in *Petaluma I*, the Internal Revenue Manual (IRM) said that outside basis was generally an affected item:

[T]he amount of a partner's initial contribution to capital would be a fact developed at the partnership level, that would be the partnership item, but the utilization of that amount in the computation of basis and any disallowance of a loss at the partner level would be the affected item subject

to deficiency procedures (30-day or 90-day letter). [IRM pt. 4.31.2.2.14(7) (June 1, 2004).[13]]

The clarity of the old IRM on this point suggests that the majority's *Chevron* analysis actually serves to *undermine* the validity of the regulation as the majority construes it. For in section 6231(a)(3), Congress made it clear that the Secretary can't just make any item a partnership item—he can only make an item a "partnership item" if it is

• an item required to be taken into account for the taxable year of a partnership under any provision of the income tax code; and

• one that he determines in the regulations to be a partnership item and more appropriately determined at the partnership level.

The first of these requirements is the most glaring problem for the majority. Apart from peculiar cases like partnerships that make section 754 elections or partnerships that hold partnership interests in other partnerships, a partnership does not have to take outside basis into account for its own tax year. If the majority's reading of the regulation is correct, there really would be a problem with its validity because it would conflict with the requirement that an item be taken into account for the taxable year of a partnership. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842–843 (1984) (an agency "must give effect to the unambiguously expressed intent of Congress").

There would also be a problem because of the Code's other requirement. Section 6231(a)(3) tells the Secretary that he must determine that an item is more appropriately determined at the partnership level to list it as a partnership item in the regulations. Other than in the case of a partnership's section 754 election, there is no evidence in section 301.6231(a)(3)–1, Proced. & Admin. Regs., that the Secretary made this finding for outside basis. And I don't believe that

---

[13] The IRS originally took the same position in the Appeals Office section of the Manual. *See* IRM pt. 8.19.1.6.9.4(2)(F) (Apr. 1, 2004). That changed only after—and because of—our holding in *Petaluma I*. *See* IRM pt. 8.19.1.6.9.4(2)(F) (Feb. 10, 2009). I have no desire here to get into the probable future debate about the weight we give an agency's own construction of its regulations, or the specific weight we give the IRM. But the IRS's own initial interpretation of the regulation would seem to undermine the majority's view. The IRM's later adoption in one section of a contrary view simply brings to mind the old aphorism of administrative law that an agency's interpretation of a regulation that conflicts with its prior interpretation is "entitled to considerably less deference than a consistently held agency view." *E.g.*, *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994).

he could reasonably conclude that outside basis, as a general matter, is more appropriately determined at the partnership level than at the partner level. *See Petaluma II*, 591 F.3d at 655 (noting that nothing about the concept of outside basis indicates that it is more appropriately determined at the partnership level). This means that if the regulation did say what the majority says it does, it would be quite vulnerable to a *Chevron* challenge: Even if a statute is susceptible of more than one interpretation, an agency's interpretation is unreasonable if it doesn't comport with the statute's requirements. *See AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 388–392 (1999).

The majority never grapples with these problems, and certainly never pins them down.

## III.

The majority's challenge to *Petaluma II* is not limited to the question of whether outside basis is a partnership item. It also goes after *Petaluma II*'s analysis of our jurisdiction over penalties in partnership-level cases.

## A.

Section 6226(f) says that we have jurisdiction at the partnership level to determine "the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." The fundamental problem in defining our jurisdiction over penalties at the partnership level is that imposing a penalty requires an underpayment of tax from which the penalty can be computed. An underpayment is generally the difference between the correct income tax determined by the IRS and the amount stated by the taxpayer on his return. *See* sec. 6664(a). It's axiomatic that partners, not partnerships, pay tax. This makes it hard to distinguish penalties that relate to partnership items from penalties that don't, since penalties ultimately are calculated on underpayments, which isn't something partnership returns generate by themselves.

In *Petaluma II*, the D.C. Circuit interpreted section 6226(f)'s grant of jurisdiction much more narrowly than the majority does today. It declined to allow the finding that a partnership was a sham to confer on us jurisdiction at the

partnership level to determine penalties relating to outside basis, which it held to be an affected item. *Petaluma II*, 591 F.3d at 655–656. It also vacated our holding and told us to decide on remand whether the penalties "relate to an adjustment to a partnership item" and "could have been computed without partner-level proceedings." *Id.*

In *Petaluma III* we interpreted the D.C. Circuit's mandate to mean that "if the penalty does not relate directly to a numerical adjustment to a partnership item, it is beyond our jurisdiction." *Petaluma III*, 135 T.C. at 587.[14] We held that there were no such adjustments to which a penalty could apply—there were no partnership items flowing through to the partners' returns as nondeficiency computational adjustments, and the sham determination in that case only indirectly affected the outside basis determination at the partner level. *Id. Petaluma III* is controlling authority—we have the same Son-of-BOSS variety and this case is also appealable to the D.C. Circuit. Our decision today overrules *Petaluma III*.

### B.

Overruling *Petaluma III* on jurisdiction over penalties would be understandable if it were only a side effect of our reaffirmation of *Petaluma I* that outside basis is a partnership item. But the majority says that even if it is wrong about outside basis, we would still have jurisdiction to determine the applicability of penalties relating to it. The majority opines that "[i]n the case of a disregarded partnership, regardless of whether a disallowance of outside basis is at play and regardless of whether outside basis is a partnership item or an affected item, any adjustment at the partner level is preceded by one or more adjustments to partnership items, and a penalty is related to those partnership-level adjustments." *See* op. Ct. p. 142. This conclusion rests on the opinion's broad interpretation of "relates to" in section 6226(f), a construction that has been rejected by both the D.C. and Federal Circuits.

---

[14] In this case the Commissioner did assert penalties relating to adjustments to some of Tigers Eye's partnership items—$242,186 of partnership loss and $11,314 of "Other Deductions"—that *are* "capable of being 'computed without partnership-level deficiency proceedings.'" I agree with the majority that we have jurisdiction to determine the applicability of those penalties.

TEFRA doesn't define the term, so the majority adopts the broadest dictionary definition—requiring only a mere logical or causal connection—and cites the general rule that words are construed according to their ordinary and everyday meaning. But with a law as complicated as TEFRA, the context in which words are used matters. The words "relate", "related", and "relates" have different shades of meaning depending on the sense in which they are used. We should look to see if the individual words are colored by the context in which they are used, as well as the structure and evident purpose of the act. *See, e.g.*, *People of Puerto Rico v. Shell Co.*, 302 U.S. 253, 258 (1937) (statute's meaning should "be arrived at not only by a consideration of the words themselves, but by considering, as well, the context, the purposes of the law, and the circumstances under which the words were employed").

This counsels against a broad construction of "relates to." In TEFRA world, there's generally no partnership-level jurisdiction over affected items even though we know by definition that all affected items "relate to" partnership items— they couldn't be affected items if they weren't affected by determinations of partnership items. *See* sec. 6231(a)(5). But if we hold that all penalties relating to affected items are also "penalt[ies] * * * relate[d] to an adjustment to a partnership item," we would have to conclude Congress wanted this Court to determine the applicability of penalties for *all* affected item adjustments at the partnership level. Sec. 6226(f). This would be unreasonable because adjustments to the affected items themselves don't get determined until partner-level proceedings, and it's usually only in Wonderland, *see* Lewis Carroll, Alice's Adventures in Wonderland 109 (Oxford Univ. Press 2009) (1865), or in the more unpleasant judicial systems around the world that "penalty first—verdict afterwards" is the rule. [15] And, of course, even if Congress wanted the applicability of penalties related to affected items to be determined at the partnership level, doing so by making "the applicability of penalties relating to

---

[15] Or as we say in tax world, under section 7491(c) the Commissioner has the burden of producing evidence that there is an underpayment of tax where he thinks it appropriate to impose the relevant penalty.

partnership items"—with no mention of affected items—
seems an odd way of expressing it.

Note especially the Code's use of the word "adjustments"
instead of "determinations" in section 6226(f). We have usu-
ally interpreted "adjustment" to mean a numerical increase
or decrease. *See Southern v. Commissioner*, 87 T.C. 49, 55
(1986) (construing "adjustment" in section 702(a)(7)); *see also*
S. Rept. No. 105–33, at 254 (1997), 1997–4 C.B. 1081, 1334
("An adjustment determined to be correct would thus have
the effect of increasing the taxable income that is deemed to
have been reported on the taxpayer's return"); Staff of J.
Comm. on Taxation, General Explanation of the Tax Legisla-
tion Enacted in 1997, at 370 (J. Comm. Print 1997). All
adjustments are determinations, but not all determinations
are adjustments. This distinction helps explain the line that
the D.C. Circuit drew in *Petaluma II* between penalties that
"could have been assessed without partner-level computa-
tions" and penalties that could not. *Petaluma II*, 591 F.3d at
656. The majority implies that determining that a partner-
ship is a sham is an adjustment to a partnership item but
doesn't explain why. *See, e.g.*, op. Ct. pp. 135, 140. *Petaluma
II* agreed that the determination that a partnership is a
sham is a determination of a partnership item, but it did not
hold that it was an adjustment.

The majority, however, tries to get around this by rea-
soning that the penalties also relate to the adjustments to
contributions and distributions made in the FPAA. *See* op. Ct.
pp. 140–142. These *determinations* certainly were *adjust-
ments*—contributions and distributions were reduced to zero.
But do the penalties that the Commissioner asserts "relate
to" these adjustments? The Government made a very similar
argument in *Jade Trading, LLC v. United States*, 98 Fed. Cl.
453, 460 (2011) (*Jade Trading III*), *aff'd*, 451 Fed. Appx. 954
(Fed. Cir. 2012), contending that a finding that a partnership
was a sham permitted the application of penalties without
regard to the partners' outside bases because it caused Jade
Trading's inside basis in the spread transaction to be reduced
to zero. *Id.* But the court disagreed:

Defendant cannot convert what it characterizes as a determination that
Jade was a sham * * * into a wholly separate finding that something
other than the individual partners' outside bases justifies applying pen-

alties at the partnership level. As Plaintiffs persuasively argue, "the sham characterization in *Petaluma* may represent a legitimate 'partnership item' but the impact on the partner-specific 'outside basis' stands one step removed from the partnership proceeding." [Citation omitted.] The accuracy-related penalties this Court applied were all predicated on misstatements and erroneous reporting attributable to the * * * [partners'] inflated bases in Jade. * * * [*Id.* at 461.]

The Government also argued that misstating the basis to the partnership of property that the partners contributed (i.e., inside basis)—which undoubtedly is a partnership item, *see* sec. 301.6231(a)(3)–1(a)(4), Proced. & Admin. Regs.—also made the penalties based on misvaluation related to adjustments to partnership items. But the court rejected this argument too because the Government had not "demonstrated that any understatement of tax * * * resulted from the contribution." *Id.* And the court frowned upon the Government's attempt to "focus on these contributions in isolation * * * and then use these contributions, standing alone, to trigger penalties." *Id.*

I do agree with the majority that the amount of the underpayment of tax can't be determined at the partnership level—it's determined in a notice of computational adjustment or a notice of deficiency proceeding at the partner level. Yet unlike the majority, I believe that we have jurisdiction at the partnership level only over penalties that relate directly to numerical adjustments to partnership items. *See Petaluma III*, 135 T.C. at 587. More specifically, the penalty must relate to a partnership-item adjustment that seems capable of being summarily assessed as a computational adjustment.[16] *See Thompson v. Commissioner*, 137 T.C. 220, 242 (2011) (Holmes, J., dissenting) (explaining which computational adjustments I believe are subject to deficiency procedures and which ones aren't).

In conclusion, I believe that we shouldn't challenge the D.C. Circuit on the issue of our partnership-level jurisdiction over penalties any more than we should challenge it on the

---

[16] Judge Halpern's concurring opinion incorrectly compares this case to *106 Ltd. v. Commissioner*, 136 T.C. 67 (2011). *106 Ltd.* involved a nonliquidating distribution from a partnership and a different variety of Son-of-BOSS—one where the partnership itself, rather than the contributing partner, incorrectly valued the paired options that were contributed—taking the value of the long position but ignoring the offsetting short position—which, as a consequence, caused the partnership to grossly overstate the capital contributions and distributions it reported. *See* Halpern op. pp. 149–150.

issue of outside basis as a partnership item. [17] Of all the routines in judicial gymnastics, few have a higher degree of difficulty than the reverse benchslap, and we're trying for a combination double with our Opinion today.

I'll stand a safe distance off to one side, and respectfully dissent.

THORNTON and KROUPA, *JJ*., agree with part I of this dissent.

---

[17] I'll reiterate what I noted in *Thompson*: The Secretary should not view our Opinion as foreclosing the possibility that he could clear this area up much more efficiently through regulation than the Commissioner has been able to do through litigation. *Thompson v. Commissioner*, 137 T.C. at 244 (Holmes, J., dissenting).